UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

  v.                                    Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

      Defendants.

**ORDER**

Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "K-C") move, pursuant to Civil L.R. 7(h), for an order permitting K-C to inspect the entirety of Defendants' First Quality Baby Products, LLC, and First Quality Retail Sales, LLC (collectively "First Quality") modified process for manufacturing the refastenable training pants accused of infringement. The parties have scheduled an inspection for Monday, July 27, 2010. First Quality timely filed its brief in opposition after the close of business on July 26, 2010.

The sole issue presented in this non-dispositive motion is whether K-C should be allowed to inspect First Quality's entire process line or only portions thereof. K-C contends that a full inspection is necessary in order to determine whether First Quality is in contempt of this Court's preliminary injunction order (Dkt. 172) or whether First Quality's process modifications infringe any of the other patents K-C holds on the manufacturing process for refastenable training pants. (Mot., Dkt. 196 at 2.) (In all, K-C holds more than sixty patents relating to refastenable training

pant products, processes, and related technologies.) Given the history of this litigation, including this Court's findings that K-C has shown a likelihood of success on its allegations that First Quality has infringed on six of K-C's patents relating to the refastenable training pant product, K-C argues that an inspection of First Quality's entire manufacturing process is justified.

First Quality contends that K-C's inspection should be limited to those parts of its manufacturing process that relate to the specific patents at issue in the case. Any inspection beyond that point, it argues, would constitute a "fishing expedition" that could cause it substantial harm. Notwithstanding the Court's issuance of a protective order limiting the inspection to K-C's attorneys and outside experts, who are required to sign non-disclosure agreements, First Quality argues that allowing such access could result in inadvertent disclosure of its own confidential manufacturing methods to K-C and other competitors.

Parties to a lawsuit are entitled to "obtain discovery that is regarding any non-privileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ." Fed. R. Civ. P. 26(b)(1). Evidence is relevant in a discovery context if it is relevant to the subject matter of the litigation as Fed. R. Civ. P. 26(b)(1) states, not just to the particular issues presented in the pleadings. *See Eggleston v. Chicago Journeymen Plumbers*, 657 F.2d 890, 903 (7th Cir. 1981). The purpose of modern discovery rules is to promote fair and efficient resolution of disputes. (*Id.* at 892-93). Here K-C and First Quality have agreed to an inspection of First Quality's Pennsylvania plant on July 27, 2010. Allowing K-C to inspect the entire process line at this time promotes fairness and efficiency.

The fact that K-C has not alleged infringement of patents relating to all stages of the manufacturing process First Quality uses does not mean that infringement of other of K-C's patents is outside the scope of discovery. In effect, K-C has alleged that First Quality willfully copied the process disclosed in series of patents K-C obtained over several years relating to the production of refastenable training pants on a commercial scale in order to compete with K-C for a share of the huge consumer market for the product. In a previous hearing on K-C's motion for a preliminary injunction, K-C has established to this Court's satisfaction that it is likely to prevail on its claim that First Quality infringed four of its patents relating to the manufacturing process. (Indeed, to large extent, First Quality admitted infringement but argued that K-C's patents were invalid based on prior art.) Evidence that First Quality copied other aspects of K-C's patented process may be relevant to K-C's allegation that First Quality acted willfully. Furthermore, while there may be "more than one way to skin a cat," K-C has already presented substantial evidence that the design of a method of manufacturing refastenable training pants at the speed required for commercial success presented complex and unusual obstacles that required unique measures to overcome. In light of these considerations, the Court concludes that evidence of First Quality's entire manufacturing process may be relevant or lead to the discovery of relevant evidence.

At the Scheduling Conference on July 22, 2010 this Court reminded the parties that the inspection is subject to the protective order. First Quality expresses a concern that such orders are not perfect and that the independent experts may use the knowledge gained from inspecting First Quality's plant while consulting elsewhere. (Opp'n Br., Dkt. 202 at 3.) This Court weighs the potential harm to both First Quality and K-C. While risk of inadvertent disclosure cannot be totally eliminated, the Court is satisfied that the risk here is minimal. K-C's independent experts and

attorneys are bound by confidentiality agreements and are unlikely to subject themselves to liability sanctions, or damage their professional standing by breaching those agreements and disclosing information subject to this Court's order. On the other hand, without full disclosure, K-C is left without any practical means of confirming its allegations that First Quality has copied its manufacturing process:

> [T]he essential difficulty facing us grows out of the fact that we are here dealing with a method or process patent as distinguished from a product or composition patent. In the latter instances a plaintiff may sustain his burden of establishing infringement by evidence as to the physical item or its composition, but a far more difficult problem is encountered by a complainant alleging infringement as to a patented method of production. Short of clandestine exploration, no means of determining the methods followed at Addyston other than a visual inspection suggests itself. The usual problems encountered where parties who are direct commercial competitors are at odds regarding secret processes are present, but these are susceptible to solution by protective order.

*Dow Chemical Co. v. Monsanto*, 256 F. Supp, 315, 317-18 (S.D. Ohio 1966). Based on the allegations of the complaint and the evidence already presented in this matter, the Court is satisfied that K-C has not embarked on a fishing expedition. K-C has offered more than speculation to support its request. Accordingly, this Court **GRANTS** K-C's expedited non-dispositive motion for inspection of First Quality's manufacturing process.

**SO ORDERED** this __27th__ day of July, 2010.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge