UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, Inc., and ,
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

   v.                           Case No. 09-C-916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

        Defendants.

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

This patent infringement action is before the Court on a third motion for a preliminary injunction brought by Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC, (collectively "K-C"). In the underlying action K-C claims that Defendants First Quality Baby Products, LLC, and First Quality Retail Sales, LLC (collectively "First Quality") has infringed various K-C patents relating to refastenable training pants and the process used to manufacture them. K-C's first motion for a preliminary injunction sought to enjoin First Quality from manufacturing or selling its own brand of refastenable training pants. That motion was denied by the Court more than a year ago based on the Court's determination that First Quality had raised a substantial question as to the validity of K-C's training pants patents, U.S. Patent Nos. 6,849,067 ("the '067 patent") and 6,454,751 ("the '751 patent").

Shortly thereafter, K-C amended its complaint adding claims that First Quality had infringed on various process patents K-C held relating to the manufacture of refastenable training pants: U.S.

Patent Nos. 6,514,187 ("the '187 patent"), 6,776,316 ("the '316 patent"), 6,888,143 ("the '143 patent") and 7,156,939 ("the '939 patent"). Following a hearing, the Court granted K-C's new motion for a preliminary injunction and enjoined First Quality from making, using, selling or offering to sell in the United States, or importing into the United States the methods of manufacturing disposable training pants with refastenable side seams that infringe on the '187, '316, '143 and '939 patents.

On June 18, 2010 First Quality wrote K-C stating, "First Quality has implemented new manufacturing methods which permit First Quality to both comply with [the Court's] Order and to supply refastenable training pants to its customers." K-C was allowed to inspect First Quality's modified production process and concluded that it still infringed at least the '187 patent. On August 30, 2010, K-C filed a renewed motion for a preliminary injunction seeking to enjoin First Quality from manufacturing training pants with refastenable side seams that infringe on '187 patent. (Dkt 219.) After a two day hearing, the Court took the matter under advisement pending the completion of additional discovery First Quality had requested relating to its challenge to the validity of the '187 patent. First Quality completed its supplemental discovery, and post-hearing briefing was completed on November 2, 2010. In the meantime, however, further developments have occurred.

On November 1, 2010, First Quality advised the Court that it was no longer using the manufacturing process that was the subject of the September 20-21 hearing. First Quality stated that over the preceding weekend it had gone operational with changes in its manufacturing process that in its view rendered the pending motion for a preliminary injunction moot. K-C thereafter inspected First Quality's modified manufacturing process has confirmed to First Quality that it does not assert the '187 patent against First Quality's new process.

2

Then, on December 15, 2010, First Quality advised the Court that the United States Patent and Trademark Office ("PTO") had rendered a decision finding there were substantial new questions of patentability with respect to the '187 Patent and granting First Quality's Request for Inter Partes Reexamination. In an accompanying Office Action, the PTO rejected Claims 1-15 and 19-25 of the '187 Patent on 31 separate grounds, finding that these claims are obvious under 35 U.S.C. § 103 based on various prior art combinations. Specifically, the USPTO rejected all of the claims of the '187 Patent that K-C has asserted against First Quality and are the subject of the pending preliminary injunction motion, namely, Claims 1, 3-7, 9, 10 and 12.

Based on these more recent developments, the Court conducted a telephone conference with the parties on January 7, 2011, and discussed with them the import of the new developments on the pending motion and the previous order denying First Quality's motion to stay these proceedings to allow the PTO to complete the reexamination process. The Court advised that parties during the hearing that it had concluded that the action of the PTO did not warrant reconsidering its denial of First Quality's motion to stay the proceeding, and that it would issue a ruling on the pending motion for a preliminary injunction in short order. Having now considered all of these matters, the Court concludes that K-C's pending motion for a preliminary injunction is moot.

K-C offered four reasons for rejecting First Quality's argument that its third motion for a preliminary injunction was now moot as a result of First Quality's change in its manufacturing process. First, K-C argued that there is no guarantee that First Quality will not return to the allegedly infringing process if it is not enjoined from doing so. K-C notes that it requested First Quality to stipulate to the entry of such an order after First Quality advised it of the change, but that

First Quality refused. K-C argues that First Quality's refusal to stipulate, along with its conduct throughout the case, suggests that a preliminary injunction is still needed.

Second, K-C argued that its motion is not moot because it seeks to enjoin First Quality not only from using the allegedly infringing process but also from selling any of the product that was manufactured with it. K-C believes that First Quality has stock-piled product that it was able to manufacture during the pendency of these proceedings and should not be allowed to sell that product even if it is now using a non-infringing process to manufacture refastenable training pants. Denying its motion, K-C contends would allow First Quality "to continue to benefit from ongoing sales of the fruits of its prior infringing modified process that it currently has in inventory." (November 2, 2010 Cooperman letter at 2).

Third, K-C argues that First Quality is playing what amounts to a cat-and-mouse game. By again responding to K-C's efforts to enforce its patents by adopting yet another "new" process, First Quality is unfairly seeking to prevent enforcement of the ruling K-C has already won from the Court. Knowing that it takes time for K-C to inspect its new modified process and return to Court for another protracted hearing, K-C argues that First Quality is essentially playing games in a way that undermines the judicial process.

Finally, K-C argues that First Quality is likely in contempt of the Court's previous preliminary injunction and its conduct therefore may be sanctionable. A ruling by the Court on whether the modified process that is the subject of its motion infringes K-C's '187 patent will prevent First Quality from escaping the consequences of its previous contempt.

The Court finds none of K-C's arguments sufficient to keep its motion alive. K-C does not dispute First Quality's contention that its current manufacturing process does not infringe the '187

4

patent. Although it expresses concern that First Quality could return to the allegedly infringing process, First Quality advised the Court during the January 7 telephone hearing that the new process is more efficient and less wasteful than the allegedly infringing process and its engineers have made clear that, regardless of the Court's ruling, there is no reason to go back. In First Quality's words, it is "firmly committed" to its new process. (November 11, 2010 Underhill letter.) Under these circumstances, the mere possibility that First Quality might return to the allegedly infringing process is not enough to merit entry of a preliminary injunction. K-C does not need a preliminary injunction to protect it from that possibility. First Quality can be ordered to provide K-C and the Court thirty days advanced notice in the event it elects to return to the allegedly infringing process and, in that event, the Court will be able to issue a ruling. Based on First Quality's statement of its current position, this seems unlikely. First Quality's refusal to stipulate to entry of a preliminary injunction enjoining it from using a process it claims it no longer intends to use is understandable in view of the possible impact on its position in the market and in light of K-C's desire to also enjoin sales of existing product previously manufactured using that process.

Likewise, K-C's desire to enjoin sales of such product is not a sufficient reason to decide an issue that is otherwise moot. This Court's finding of irreparable harm underlying its earlier ruling granting K-C's motion for a preliminary injunction was based on that fact that if not enjoined First Quality would continue to infringe and erode market prices from K-C's product while the case was pending. If First Quality has a non-infringing process for competing with K-C in the market, concerns over irreparable harm shrink considerably. Sales of already existing product is not likely to have a significant effect on the market, and any harm that would result would be more easily

ascertainable. The alternative would be for the Court to order the product destroyed, which the Court would be unwilling to do even if K-C prevailed on the merits.

K-C's frustration over the manner in which it believes First Quality has been able to ignore the Court's orders and continue its infringing conduct by continuing to change its manufacturing process is understandable. But if, as now appears clear, First Quality's current manufacturing process does not infringe K-C's '187 patent, no lawful reason exists to enjoin it. In some sense it is ironic that K-C would complain that First Quality changed its process to one that no longer infringes its '187 patent. The doctrine of equivalents should prevent First Quality from making meaningless changes and claiming non-infringement. To some extent, K-C's frustration arises out of the nature of the process patent K-C seeks to enforce. The unfortunate fact (for K-C) is that where there is more than one way to skin a cat, or manufacture a refastenable training pant, and a large market for such a product, competitors are bound to continue to seek lawful ways of competing. Unless the new process infringes a valid patent, K-C is not entitled to an injunction barring First Quality from competing.

As to K-C's argument that it may seek a sanction against First Quality for contempt based on the allegedly infringing method that was the subject of its motion, the Court notes only that the current motion before it is for a preliminary injunction, not contempt. K-C is free to seek a finding of contempt against First Quality if it concludes the evidence supports such a ruling, but First Quality would no doubt be allowed to offer evidence far beyond what has been offered so far in response to such a motion. The fact that K-C may seek such relief is not a consideration in deciding whether its current motion for a preliminary injunction is moot.

In sum, because First Quality has changed its process for manufacturing refastenable training pants and is no longer using the allegedly infringing process to which K-C's motion is directed, the motion for a preliminary injunction is denied. The change renders K-C's motion essentially moot. To the extent K-C seeks to enjoin First Quality from selling existing inventory, the Court denies the motion because there K-C would not suffer irreparable harm from the sale of the limited amount of previously manufactured product under the changed circumstances. In the event First Quality elects to return to the allegedly infringing process that is the subject of K-C's motion, First Quality must give K-C and the Court thirty days advance notice so that K-C can renew its request and the Court can rule.

**SO ORDERED** this    7th    day of January, 2011.

                                                      s/ William C. Griesbach
                                                      William C. Griesbach
                                                      United States District Judge