# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

      v.                           Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

        Defendants.

---

## MEMORANDUM AND ORDER

---

Two related motions are presently before the Court in this patent case. First, K-C moves to strike First Quality's eighth affirmative defense and twenty-first counterclaim (inequitable conduct and unclean hands) to K-C's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). First Quality's defense and counterclaim are based on two theories: (1) K-C allegedly engaged in inequitable conduct by failing to submit to the U.S. Patent Officer ("PTO") statements K-C made to the European Patent Office ("EPO") in opposing a European patent application; and (2) a named inventor and a prosecuting attorney for K-C's '187 patent failed to disclose information about K-C machines then in use. First Quality also alleges unclean hands based on K-C's failure to produce certain documents during the discovery in this case. In support of its motion to strike and dismiss, K-C argues that First Quality has failed to satisfy the specific pleading requirements of inequitable conduct.

The second motion presently before the Court is First Quality's motion for leave to file a second amended answer and counterclaims to "remove any conceivable objection" to the purported legal and factual deficiencies in its unclean hands and inequitable conduct related counterclaims and defenses that formed the basis K-C's motion to strike.

It is more efficient for the Court to address the motion to amend before the motion to strike. For the reasons set forth herein First Quality's motion for leave to file a second amended answer and counterclaims (Dkt. 313) will be granted. K-C's motion to strike (Dkt. 303) is not entirely mooted by First Quality's second amended answer and counterclaim; the motion to strike will be denied in part and granted in part.

## BACKGROUND

K-C alleges that First Quality has infringed or infringes patents assigned to K-C. (Second Amended Complaint, Dkt. 230.) In its October 25, 2010 First Amended Answer to Plaintiffs' Second Amended Complaint, Affirmative Defenses, and Counterclaims, First Quality alleges that one of the asserted patents, U.S. Patent No. 6,514,187, ("the '187 patent") is unenforceable both due to inequitable conduct before the PTO, and due to unclean hands in the production of documents during discovery. (Dkt. 272, at Eighth Affirmative Defense ¶¶ 141-224; Twenty-first Counterclaim, ¶¶ 278-280). First Quality's inequitable conduct affirmative defense and declaratory judgment counterclaim stem from two general inequitable conduct theories: (i) "K-C" allegedly engaged in inequitable conduct by failing to submit to the PTO statements K-C made to the EPO in opposing European Patent No. 0755238 (see Dkt. 272, ¶¶ 188-89), and (ii) a named inventor (Mr. Popp) and a prosecuting attorney (Mr. Gage) failed to disclose information about K-C machines then in use.

(See *id.* at ¶ 145.) First Quality's First Amended Answer, Affirmative Defenses, and Counterclaims also alleges unclean hands based on K-C's litigation conduct related to production of documents during discovery in this case. (*Id.* at ¶¶ 207-224.)

# ANALYSIS

## I. First Quality's Motion for Leave to File a Second Amended Answer

Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has explicitly addressed the liberal standard that courts are to apply to motions to amend:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also McGee v. Kerr-Hickman Chrysler Plymouth, Inc.,* 93 F.3d 380, 385 (7th Cir.1996).

Amendments to pleadings were due by September 3, 2010. (Scheduling Order, Dkt. 205.) K-C filed its Second Amended Complaint on September 3, 2010. (Dkt. 230.) The parties stipulated to extend First Quality's response deadline until October 4, 2010. (Dkt. 238.) First Quality filed its Answer on October 4, 2010. (Dkt. 257.) On October 25, 2010 First Quality's filed its First Amended Answer to K-C's Second Amended Complaint. (Dkt. 272.) On November 12, 2010 K-C moved to strike and dismiss. (Dkt. 303.) On December 6, 2010 First Quality sought leave to file a second amended answer. (Dkts. 313-314.) K-C now opposes First Quality's motion for leave to amend. (Dkt. 322.)

3

First Quality seeks leave to amend in order to "remove any conceivable objection" to the purported legal and factual deficiencies in its unclean hands and inequitable conduct related counterclaims and defenses that formed the basis K-C's motion to strike and dismiss. (Mem. in Opp., Dkt. 315, at 13.)

First Quality contends that it pled its inequitable conduct defenses under Rule 9(b) immediately after it conducted sufficient discovery to learn the specific details required by the rule. (Mem. in Opp., Dkt. 315 at 14.)  According to First Quality, it was only upon deposing K-C's inventor (Mr. Popp) and prosecution counsel (Mr. Gage) in September and October of 2010 that it could plead inequitable conduct with sufficient detail to satisfy Rule 9(b).  (First Quality's Reply Br., Dkt. 332, at 5-6.)  K-C, in opposition, argues that the proposed amendment is futile, that it will be prejudiced, and that First Quality unduly delayed in raising its inequitable conduct defense. (Br. in Opp. to Mot. to Amend, Dkt. 322.)

A ninety day delay in a relatively complex patent case is not per se an unreasonable or undue delay.  Moreover it does appear that some new information and details came to light in the depositions of Messrs. Popp and Gage which warrant First Quality's amendment. *See Douglas Press, Inc. v. Tabco Inc.,* No. 00 C7338, 2004 WL 1144054, at *1 (N.D. Ill. May 17, 2004) ("Allegations of inequitable conduct are serious and we cannot fault [the defendant] for waiting for further evidence before filing such an affirmative defense, especially keeping in mind Rule 11.")

Granting the motion to amend is also proper because First Quality's proposed amended answer is not "futile." *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004) ("[a]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.")  First Quality's proposed amended answer does contain sufficient

allegations to state a claim of inequitable conduct. It pleads that Messrs. Popp and Gage knew the K-C "prior art" machine was material, knew they had a duty to disclose it to the PTO, and had no good faith explanation for failing to so disclose. (Dkt. 314, Ex. 2 at ¶¶ 149-201.)

In light of the liberal standard governing amendment of pleadings and the aforementioned factors, this Court will grant First Quality's motion to for Leave to File its Second Amended Answer and Counterclaims. (Dkt. 313.)


## II. K-C's Motion to Strike and Dismiss

The fact that this Court is granting First Quality's motion for leave to amend does not entirely moot K-C's motion to strike. The Court will analyze K-C's motion to strike in the context of First Quality's Proposed Second Amended Answer to Plaintiffs' Second Amended Complaint, Affirmative Defenses and Counterclaims. (Dkt. 314, Ex. 2.)

It is appropriate to lay out the controlling legal standards which, in this case, point in opposing directions. On one hand inequitable conduct must be plead with particularity; on the other hand motions to strike are disfavored.

### A. Heightened Pleading Standard for Inequitable Conduct

The Federal Circuit has suggested that inequitable conduct is simply a form of unclean hands. *See Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) ("Indeed, what we have termed "inequitable conduct" is no more than the unclean hands doctrine applied to particular conduct before the PTO."). To prove inequitable conduct, First Quality must establish by clear and convincing evidence that someone associated with filing and prosecution of the '187 patent ""(1) made an affirmative misrepresentation of material fact, failed

to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO].'" *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1356-66 (Fed. Cir. 2008) (quoting *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1363 (Fed. Cir. 2007)).

All too often inequitable conduct is charged as a matter of course in patent cases. *See Burlington Indus. Inc., v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("the habit of charging inequitable conduct in almost every major patent case has become an absolute plague"). Thus courts require parties charging inequitable conduct to plead it with particularity. Federal Rule of Civil Procedure Rule 9(b) requires any party pleading inequitable conduct to plead an explicit rather than implied factual basis for fraud. *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003). In patent cases Fed. R. Civ. P. 9(b) requires identification of the specific who, what, when, where, and how of the alleged material misrepresentation or omission committed before the PTO. *Exergen,* 575 F.3d at 1327. The pleadings also must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.*

### B. Motions to Strike Are Disfavored

Motions to strike, as both parties acknowledge, are "generally disfavored" and the court is instructed to view the challenged pleadings in a light most favorable to the non-moving party. *See Redwood v. Dobson,* 476 F.3d 462, 471 (7th Cir. Ill. 2007). "[I]n order to succeed on a Rule 12(f) motion to strike, the federal courts have established a standard under which it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceedings will

be prejudicial to the moving party." 5C Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1380, at 397, (2004).

### C. Eighth Affirmative Defense of Inequitable Conduct

#### 1. "Who" Pleading Requirement

In its motion to strike K-C argues that First Quality does not meet the heightened pleading standard for inequitable conduct because First Quality does not specifically state *who* failed to disclose specific material information to the PTO. (K-C Mem. in Supp., Dkt. 304 at 4.) But First Quality's Second Amended Answer does specify two individuals allegedly responsible for failing to disclose material to the PTO: the inventor Mr. Popp and K-C's in-house counsel Mr. Gage. (Dkt. 314, Ex. 2 at ¶¶ 143- 145, 151-152, 166-174, 178-181, 198-202). The parties dispute whether K-C had an obligation to disclose its own prior art machines to the PTO when applying for patents. But First Quality's Second Amended Answer specifically alleges that: "Popp and Gage knew of the highly-material K-C machines . . . knew the material should be cited to the PTO, but failed to do so. They have no explanation for this failure. They omitted the information with an intent to deceive the PTO." (*Id.* at ¶ 198.) Such allegations are sufficient to meet the "who" pleading requirement for statements related to prior art machines made to the PTO.

With regard to statements made before the EPO, it is unclear from First Quality's Second Amended Answer <u>who</u> at K-C allegedly knew of and failed to disclose the prior EPO statements to the PTO. That is, First Quality has failed to plead names of specific K-C employees who knew of statements made to the EPO and who nevertheless intentionally withheld such statements from the PTO. (See Dkt. 314, Ex. 2 at ¶¶ 195-196.) By not naming specific individuals who allegedly knew of statements made to the EPO and who failed to disclose such statements, First Quality has

failed, under Rule 9(b), to adequately plead inequitable conduct as it relates to the EPO statements. For these reasons First Quality will not be allowed to support its inequitable conduct counterclaim by referencing alleged failure to disclose EPO statements.

In sum, First Quality's inequitable conduct theory relating to K-C's prior art machines and the PTO will not be struck, but its references to non-disclosure of statements made before the EPO will be.

### 2. "What" and "Where" Pleading Requirements

Next K-C's motion to strike argues that First Quality has failed to satisfy the "what" and "where" pleading requirements of *Exergen.* 575 F.3d at 1329. The issue, specifically, is whether First Quality's Second Amended Answer sufficiently pleads materiality (of the allegedly non-disclosed information) or a specific person's knowledge of the material information.

K-C's "prior art" machine is apparently an actual working machine which First Quality argues looks more like the subject matter disclosed in the '187 patent than any other reference K-C cited to the PTO. (Mem. in Opp., Dkt. 315 at 7-8.) First Quality's Second Amended Answer does include statements detailing features found in the K-C machine which are sufficient to allege that the K-C machine is material – and not cumulative to – the references of record. First Quality's Answer alleges that obvious modifications to the machine and its process rendered the '187 patent claims invalid. (Dkt. 314, Ex 2. at ¶ 193.) First Quality also alleges that the K-C prior art machine was more relevant than the other prior art which K-C cited to the PTO. (*Id.* at ¶ 199q). As such, references to the K-C machine would not have been cumulative. *See Larson Mfg. Co. V. Aluminum Prods., Ltd.,* 559 F.3d 1317, 1327 (Fed. Cir. 2009). In sum, First Quality has sufficiently alleged

the "what" and "where" elements of inequitable conduct – namely, that disclosure of such a machine would be have been material.

### 3. Intent to Deceive

First Quality also adequately pleads an intent to mislead. Intent "may be inferred where a patent applicant knew, or should have known, that withheld information would be material to the PTO's consideration of the patent application" absent a "credible reason for withholding the information." *Monsanto Co. v. Bayer Bioscience N.V.,* 514 F.3d 1229, 1241 (Fed. Cir. 2008). First Quality has alleged that Messrs. Popp and Gage intended to deceive the PTO. (Second Amended Answer, Dkt. 314, Ex. 2 at ¶ 145, ¶¶ 197-200.) According to First Quality, K-C, as a matter of corporate practice, does not cite its own machines in patent applications before the PTO whenever K-C deems the machines secret. (*Id.* ¶ 202.) First Quality also alleges that Popp and Gage knew that the K-C machine was prior art and knew they had a duty to disclose material prior art to the PTO. (*Id.* at ¶¶ 151-168.) Finally First Quality alleges that there is a lack of a good faith explanation from Popp and Gage for not notifying the PTO of the "prior art" machine. (*Id.* at ¶ 197.) Accepting First Quality's factual statements at face value, First Quality has adequately plead an intent to mislead. First Quality's allegations are not so unrelated to their claims as to be unworthy of any consideration. Because First Quality's Second Amended Answer adequately pleads an intent to deceive a motion to strike is not warranted.

In sum, the eighth affirmative defense of inequitable conduct before the PTO will not be struck – except as related to the EPO statements detailed above – because First Quality has identified the "who", "what", "where", and "intent to deceive" factors in compliance with Fed. R. Civ. P. 9(b).

### D. First Quality's Twenty First Counterclaim and Paragraphs 207-224

K-C moves to dismiss First Quality's twenty-first counterclaim for a declaratory judgment of unenforceablity (Dkt. 314, Ex. 2 at ¶¶ 289-292) on the ground that an allegation of unclean hands due to litigation misconduct cannot, as a matter of law, form the basis for a declaratory judgment counterclaim of unenforceablity of a patent. (Br. in Supp., Dkt. 304, at 13.)

First Quality alleges that "K-C's conduct in this litigation also evidences that they intended to conceal the highly material K-C prior art machines from the PTO, as well as from this Court." (Dkt. 314, Ex. 2 at ¶ 217.) In opposing K-C's motion to strike the litigation misconduct theory, First Quality draws a distinction between two types of unenforceablity findings: a finding of inequitable conduct which prevents the patent from ever being asserted by "any party" and a finding of unclean hands which "bars only the offending party" from enforcing the patent against the accused. (*Id.* at 13.) First Quality's distinction is accurate. *Aptix Corp. v. Quickturn Design Systems, Inc.* 269 F.3d 1369, 1376 (Fed. Cir. 2001) ("the remedies for litigation misconduct differ from the remedies for misconduct in acquisition of a property right. While inequitable conduct before the PTO renders the patent unenforceable by any party, the unclean hands doctrine bars only the offending party.") But this distinction does not undercut K-C's main point: alleged litigation misconduct is not sufficient to support a counterclaim of unenforceablity of a patent. Indeed the main case cited by both parties, *Aptix Corp. v. Quickturn Design Systems, Inc.,* states unambiguously:

> Nor does the doctrine of unclean hands provide a suitable basis for the trial court's judgment, as this equitable doctrine is not a source of power to punish. In declaring

the '069 patent unenforceable based solely on misconduct during litigation, the trial court clearly exceeded the bounds of *Keystone I* and the doctrine of unclean hands.

269 F.3d 1369, 1378 (Fed. Cir. 2001) (internal citations omitted); *See also In re Gabapentin Patent Litigation,* 649 F. Supp. 2d 340, 348 (D.N.J. 2009) (dismissing declaratory relief counterclaim based on unclean hands affirmative defense that alleged litigation misconduct); *X-It Products, L.L.C. v. Walter Kidde Portable Equipment, Inc.,* 155 F. Supp. 2d 577, 601 (E.D. Va. 2001) (striking unclean hands defense to the extent based on litigation misconduct; holding that the "appropriate remedy is . . . a motion to compel and/or a motion for sanctions").

Thus to the extent that First Quality intends to support its twenty-first counterclaim with allegations of litigation misconduct, it will be struck as a matter of law. It is not unreasonable for a party to insist that claims having no basis in law be excised as early as possible so as to minimize unnecessary legal research and discovery. It is, after all, the purpose of the rules under which this procedural dispute arises "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

K-C also moved to strike paragraphs 207 to 224 of First Quality's First Amended Answer, Affirmative Defenses, and Counterclaims – the paragraphs in which First Quality attempts to present a factual basis for its litigation misconduct theory. Because the Court is granting First Quality's motion to file a Second Amended Answer, Affirmative Defenses, and Counterclaims, and the paragraphs have been slightly re-numbered, the Court interprets K-C motion to strike as attacking paragraphs 217 to 235 of First Quality's Second of Amended Answer.

First Quality asserts that the paragraphs in question – which describe K-C's alleged concealment of facts and circumstances surrounding the design and commercial use of the K-C "prior art" machine – support both its unclean hands theory and "an inference of an intent to deceive

11

the PTO." (*Id.* at ¶ 235.) If the paragraphs related only to the unclean hands based on litigation misconduct theory, striking them might be proper. However, First Quality claims the paragraphs are also relevant to whether there was an intent to deceive the PTO. Intent to deceive must be shown as part of First Quality's eighth affirmative defense of inequitable conduct. While K-C may ultimately be correct that litigation misconduct is irrelevant to an intent to deceive the PTO (indeed litigation misconduct, if any, occurred well after representations were made to the PTO), I am reluctant at this point to strike paragraphs 217-235 from the First Quality's Second Amended Answer because K-C has not shown that the paragraphs are "so unrelated" to First Quality's affirmative defense as to "be unworthy of any consideration." *See* 5C Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1380 (2004).

## CONCLUSION

Accordingly and for the reasons set forth above, First Quality's motion for leave to file its Second Amended Answer and Counterclaims (Dkt. 313) is **granted**. K-C's motion to strike (Dkt. 303) is **denied** in all respects except that the Court **grants** K-C's motion to strike paragraphs 195-196 from First Quality's Second Amended Complaint relating to non-disclosure of EPO statements, and **grants** K-C's motion to strike First Quality's twenty-first affirmative defense to the extent that First Quality supports it with references to litigation misconduct.

**SO ORDERED** this ___15th___ day of February, 2011.

  s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
