UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

  v.                                                                Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

      Defendants.

---

**ORDER**

---

Defendants' First Quality Baby Products, LLC, and First Quality Retail Sales, LLC (collectively "First Quality") move, pursuant to Civil L.R. 7(h), for an order compelling Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "K-C") to produce the following: (1) documents relating to K-C's "Orion" project; (2) laboratory notebooks for the forty inventors of the asserted patents in suit; (3) the inventor's documents relating to K-C's research and development efforts for refastenable training pants; and (4) documents related to K-C's prior art products and methods and inspection of such methods. (Dkt. 357.)

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . ." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The scope of relevancy under Rule 26 is broad. "Relevant information need not be admissible at the trial

if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.; see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350-51, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (holding that relevant information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case").

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1)-(4). The party objecting to a discovery request bears the burden of showing why the request is improper. *Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447, 450 (N.D. Ill. 2006); *see also Sherman Park Community Ass'n v. Wauwatosa Realty Co.,* 486 F. Supp. 838, 845 (E.D. Wis. 1980). In ruling on a discovery motion, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation omitted).

With this standard in mind the Court considers First Quality's motion to compel with respect to each of the four categories of information it seeks.

**1. Orion Documents**

First Quality moves to compel production of documents related to K-C's multi-year , multi-million dollar Orion project, K-C's a code name for its pre-fastened, refastenable diaper pants product sold as the Huggies Convertibles Diaper-Pant. K-C has already produced some documents related to the Orion project. According to First Quality the produced documents suggest that the Orion diapers are invalidating prior art under 35 U.S.C. § 102(a) and/or (b). It cites a 1998

2

"Marketing Research" memorandum K-C produced that discloses the fact that mothers were provided Orion diapers for "use tests" as early as 1998. First Quality contends that such use tests suggest that there was public knowledge and use prior to the filing dates of the asserted patents. K-C points out, however, that it conducted such consumer testing subject to confidentiality and, therefore, the 1998 "use tests" do not make Orion prior art. *Cf. Eolas Technologies Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1334-1335 (Fed. Cir. 2005) (Inventor's demonstration of invention to potential buyer without confidentiality agreements constituted "public use," for purpose of determining whether invention was prior art.) Discovery of documents related to the Orien project are therefore not discoverable on this basis.

First Quality also supports its motion to compel Orion documents by arguing that such documents would be relevant to the obviousness of the "refastenable pant" claimed in its patents. In general "near simultaneous invention by two or more equally talented inventors working independently . . . may or may not be an indication of obviousness when considered in light of all the circumstances." *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrik Co.,* 730 F.2d 1452, 1460 (Fed. Cir. 1984). K-C argues that the Orion product cannot be proof of obviousness because it was developed *by K-C* instead of by an independent inventor. K-C also argues that the Orion products are different from the refastenable pants claimed in the patents in suit. K-C contends that because the Orion product was designed as a hybrid between a diaper and a training pant, the Orion product is not an actual diaper and therefore cannot explain whether prior art diapers functioned like pants. Finally, K-C argues that the burden for it to gather tens of thousands of documents requested outweighs any potential benefit of the discovery because of the lack of importance to the issues in the case.

3

First Quality has failed to demonstrate how the extensive discovery it seeks concerning K-C's Orion project could possibly bear on the issue of whether any of the patents in suit might be invalid on the ground of obviousness. K-C has already produced some documents about the project and a sample of the product itself. Whatever arguments First Quality wishes to offer on the question of obviousness or the similarity between disposable diapers and training pants will not be appreciably assisted by granting it further discovery of the Orien project. First Quality's motion to compel K-C to produce documents relating to its Orion project is therefore denied.

**2. Inventor Notebooks**

First Quality also seeks laboratory notebooks for each named inventor on the asserted patents. It states that K-C has only produced such notebooks for 16 of the 40 inventors. Moreover First Quality complains that K-C has only produced selected pages from the inventors' notebooks. But this is precisely what First Quality's request for production asked for: notebooks "concerning the conception and reduction to practice (actual and constructive) of the alleged invention of the Patents-in-suit." (Flaherty Ex. A, First Quality's Third Set of Requests for Production at No. 43.) First Quality has not asked for, and is not entitled to, production of notebook pages related to *other* projects. In the present motion to compel First Quality now asks for all notebook pages that "relate to any aspect of the claims at issue, irrespective of whether they relate to refastenable training pants." (Br. in Sup., Dkt. 357 at 4.)

K-C will not be compelled to produce pages of inventor notebooks which are unrelated to the patents in issue simply because such pages were authored by the named inventors. Moreover such notebooks contain highly sensitive research and development information, some of which occurred *after* the dates of the patents-in-suit. In sum, K-C has already produced responsive pages

4

of inventor notebooks in an organized, identifiable manner and further production of inventor notebooks will not be compelled.

### 3. Inventor Files

In its motion to compel First Quality also seeks documents from the files of the forty inventors relating to their research, development, manufacture, and commercialization of products and processes arising out of the asserted patents. First Quality contends that K-C improperly limited its search to only ten of the forty inventors because First Quality had only noticed ten inventors for deposition. But a review of the parties' correspondence clarifies the issue: K-C did perform a reasonable search for documents from *all* named inventors. (Resp. Br., Dkt. 365 at 3.) The fact that K-C later went back and conducted an *additional* search for documents related to the ten witnesses does not show that K-C is withholding documents related to the other 30 inventors. Indeed, K-C had already searched for documents related to such inventors. Consequently First Quality's motion to compel with respect to inventor files will be denied.

### 4. Prior Art Samples and Processes

The final section of First Quality's motion to compel relates to its requests: (1) for samples of K-C's prior art products; (2) to inspect K-C's prior art processes used to make these products; and (3) for documents related to this prior art.

First Quality has requested samples in ten categories. In five of the categories K-C states that it is in the process of performing a search. Because fact discovery is set to close in less than three months in this case, K-C should proceed with reasonable diligence to complete this search in order to ensure the timely exchange of any such discovery. In another four of the ten product categories K-C has informed First Quality that it is not aware of prior K-C products that fall within

5

such categories. For purposes of this motion to compel one category is disputed: the production of all prior K-C products that were "pre-fastened or refastenable." K-C argues that this request is overbroad and unduly burdensome because it will be required to produce samples of every diaper made by K-C from the early 1980s to 2003 and every adult incontinence garment produced from 1998 to 2003 where such diapers and garments include refastenable tape or hook/loop fasteners. K-C's position is persuasive. First Quality's invalidity contentions do not hint at relying on any K-C prior art product other than training pants and, as such, the burden of production will likely outweigh the possible benefit of discovery. *See* Fed. R. Civ. P. 26(B)(2)(C)(iii).

First Quality also moves to inspect K-C's prior art processes used to make K-C's prior art products. K-C states it has not located any prior art processes that are still in use and available for inspection. K-C has, however, produced documents to show K-C's processes for the categories of prior art products identified by First Quality to the extent such documents exist.

First Quality seeks documents relating to K-C's first sale, first offer for sale, first public use, first public demonstration, first public disclosure, and first consumer test for the prior art products and processes. Such information is related to this case. *See* 35 U.S.C. § 102(a), (b) (prior art includes products and processes that were previously "known or used by others in this country" or "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.") However, K-C has already produced the responsive documents to this request with respect to its refastenable training pant project related to the patents in suit. Production of such documents related to every prior K-C product would be overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, First Quality's expedited non-dispositive motion to compel (Dkt. 357) is **denied**.

**SO ORDERED** this   7th   day of April, 2011.

                                                     s/ William C. Griesbach
                                                     William C. Griesbach
                                                     United States District Judge