UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| Kimberly-Clark Worldwide, Inc. and <br> Kimberly-Clark Global Sales, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> First Quality Baby Products, LLC and <br> First Quality Retail Services, LLC, <br><br> Defendants. | Civil Action No. 09-C-916 <br><br> Judge Griesbach |

**K-C'S OPPOSITION TO FIRST QUALITY'S MOTION [ECF NO 371] FOR PARTIAL RECONSIDERATION OF THE COURT'S ORDER DENYING FIRST QUALITY'S MOTION TO COMPEL**

**I.  INTRODUCTION**

First Quality seeks reconsideration of the portion of the Court's Order relating to "Prior Art Samples and Products," which denied First Quality's motion to compel broad discovery relating to alleged prior art products. In denying First Quality's motion, the Court correctly found: "K-C's position is persuasive. First Quality's invalidity contentions do not hint at relying on any K-C prior art product other than training pants and, as such, the burden of production will likely outweigh the possible benefit of discovery." (*See* ECF 369, Order at 6). Nothing in First Quality's motion compels a different conclusion, and the motion should be denied.

First, First Quality has failed to establish this Court committed a manifest error of law or fact, and it presents no new evidence to support reconsideration. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party"). First Quality has merely repackaged its failed arguments.

1

First Quality argues that this Court committed a manifest error of law by failing to grasp the concept of prior art that may be relevant to obviousness. However, the Court plainly understands concepts of prior art and obviousness and did not commit a manifest error of law in denying First Quality's motion to compel. Instead, the Court correctly balanced First Quality's need for the discovery, which First Quality did not establish, versus the extraordinary burden on K-C to produce the discovery sought.

Second, First Quality also failed to present new evidence to support reconsideration, and its assertions that this Court made errors of fact are readily rebutted. In particular, for 9 of the 10 categories First Quality says are at issue, K-C either has no information or has already made available samples of the prior products of which it is aware and thus there is no further discovery needed.

The tenth category, "pre-fastened or refastenable," is the most burdensome on K-C to produce because it covers every refastenable diaper and every pre-fastened adult incontinence product manufactured since the 1980s. Tellingly, First Quality does not dispute the enormous breadth of its request and the significant burden that it seeks to impose on K-C. Nor has First Quality presented any new evidence of the benefits it purports may come about from this burdensome discovery. Indeed, the parties do not dispute that refastenable and pre-fastened articles existed prior to the patents-in-suit, and First Quality has yet to identify what may be in the alleged Prior Art Samples and Products that is not already disclosed in other prior art items, such as old patents.

Finally, First Quality does not bother to refute the Court's correct balancing of the possible limited benefits arising from this category against the significant burden that would be imposed

2

on K-C. First Quality has therefore presented nothing that should change this Court's prior analysis and ruling. Accordingly, the Court should deny First Quality's motion.

## II. THE COURT SHOULD REJECT FQ'S MOTION BECAUSE IT FAILS TO MEET THE THRESHOLD FOR RECONSIDERATION

A motion for reconsideration serves a limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D. Ill.1976), *aff'd* 736 F .2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan,* 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Such motions are disfavored and should be "rare." *See Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990).

Here, First Quality is merely disappointed with this Court's determination that the burden on K-C of locating and producing a broad class of prior art will outweigh the speculative benefits to First Quality. (*See* ECF 369, Order at 6). It wants the proverbial second bite at the apple, which is inappropriate here. Because it recognizes that disappointment with this Court's decision is not enough to warrant reconsideration, First Quality has attempted to create a so called "manifest legal error" where none exists.

In particular, First Quality's assertion that this Court has failed to grasp the fundamental patent law concept of obviousness under *KSR Int'l Co. v Teleflex* has no merit. Rather, it is First Quality that commits legal error in its reading of *KSR* and the erroneous assertion that this Court's "denial of First Quality's request for the Other Prior Art is contrary to Supreme Court precedent." (*See* ECF 372, FQ Memo at 2). The Supreme Court's *KSR* decision did not instruct

3

district courts to abandon their practice of evaluating the merits of, and burdens of discovery. *See KSR Int'l Co. v Teleflex*, 550 U.S. 398 (2007). This includes analysis under Fed. R. Civ. P. 26(b)(2)(C)(iii), because the burden and expense of discovery outweighs its theoretical benefit.

Moreover, while the reconsideration is initially framed as an alleged legal error, even First Quality abandons this pretense - and undercuts its primary ground for reconsideration - when it highlights this Court's proper legal understanding of the scope of relevancy under Fed. R. Civ. P. 26. (*See* ECF 372 at 3). Indeed, First Quality's motion implicitly acknowledges this Court must have already considered both the relative relevance and speculative benefits of the sought-after discovery with the substantial burden and expense that the discovery would impose on K-C. First Quality has failed to present anything that could change that determination.

In summary, there is no discernable error in the Court's analysis, let alone the "wholesale disregard, misapplication, or failure to recognize controlling precedent" that First Quality must show to warrant reconsideration. *See Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000). In other words, the Court performed the proper analysis; First Quality is just disappointed with the result, and the so-called manifest legal error is simply a ploy by which First Quality seeks to rehash old arguments. Accordingly, this Court should reject First Quality's motion at the very least because it presents no manifest errors of law or fact in need of correction.

### III. K-C HAS ALREADY SEARCHED NUMEROUS CATEGORIES AND PROVIDED FQ WITH ACCESS TO PRODUCT SAMPLES

In its prior Order, this Court considered 10 categories of prior products in three groups, and properly determined that the burden on K-C to produce outweighed any supposed benefit from such a production. Moreover, because no samples exist or K-C has already produced available samples and documents relating to 9 of the 10 categories, a dispute remains only with respect to

a single category: the "pre-fastened or refastenable" prior products.[1] But because First Quality's indiscriminate, across-the-board request for reconsideration mentions some but not all of these categories, K-C will address all groupings for the sake of completeness:

The first group comprises categories where K-C stated that it was not aware of prior K-C products that fell within the categories. (*See* ECF 369, Order at 5-6). In other words, for these categories, K-C has nothing to produce because it is not aware of any prior K-C products.

First Quality nevertheless asserts – incorrectly – that the Court was laboring under a factual misconception sufficient to cause a "manifest injustice" and therefore warrant reconsideration. But there is no manifest factual error; First Quality has simply misconstrued K-C's statement. (*See* ECF 356, Comack Ex. H, at 3). In particular, KC did not limit its representation that it was "not aware of any prior products" to just training pants. *Id.* Put another way, in its consideration of the categories raised by First Quality, K-C has investigated both training pants products and alleged "Other Prior Art" products. Accordingly, this Court committed no error in its Order denying First Quality's motion to compel, because there was no erroneous conclusion of fact. And so there is now nothing for the Court to reconsider.

For another group of categories, this Court ordered that K-C should proceed diligently to complete searches and arrange exchange of product samples. (*See* ECF 369, Order at 5). K-C has since provided First Quality with access to numerous samples identified during K-C's search of these categories. (*See* Decl. Lerdal, Ex. A). Accordingly, this group of categories also presents no issue for reconsideration. First Quality makes no specific mention of these categories in its briefing and First Quality has failed to make any showing whatsoever that the Court committed a manifest legal or factual error with its treatment of this group.

---

[1] For the sake of completeness, both FIDO and ORION projects and products were considered separately and are not at issue in this discovery dispute.

In summary, with the one exception of "pre-fastened or refastenable," all of the categories of prior products sought by First Quality either (1) do not exist or (2) samples found by K-C have already been made available to First Quality.

## IV. THE LIKELY BENEFIT OF PRODUCING THE FINAL CATEGORY IS OUTWEIGHED BY THE SUBSTANTIAL BURDEN PRODUCTION WILL IMPOSE ON K-C.

For the purposes of this motion, only one category of products remains at issue, "pre-fastened or refastenable." Yet of the 10 categories of prior products requested by First Quality, this category presents the highest burden of production, and the least hope of containing relevant, non-cumulative information as it includes a large number of prior products that are least similar to the training pant patents and products at issue.

First Quality's sole justification for seeking this wide ranging discovery is to develop and prove its invalidity defenses. But First Quality's "mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions." *See Tolliver v. Fed. Republic of Nigeria*, 265 F. Supp. 2d 873, 880 (W.D. Mich. 2003).

First Quality's argument that it has "hinted" to K-C to the effect that First Quality will rely on any good prior art it finds is simply irrelevant to the underlying assessment of benefit and burden that has already been decided by this Court. (*See* ECF 372, at 4-5). In particular, First Quality has failed to present any new justification or evidence to warrant reconsideration. Indeed, since it filed its present motion for reconsideration, First Quality has served its Fifth Supplemental Non-Infringement and Invalidity Contentions and First Quality still does not hint at relying on any K-C prior art product other than training pants. Moreover, First Quality has not pointed to some manifest error in the Court's analysis of likely benefit under Fed. R. Civ. Pro.

26(b)(2)(C)(iii). Accordingly, First Quality's motion is just rehashing prior arguments and this Court should deny the motion for reconsideration.

First Quality does not dispute the enormous breadth of its request and therefore the significant burden that it seeks to impose on K-C. And because First Quality does not dispute the magnitude of its request, it has conceded that responding will require K-C to produce samples of, and look for documents for, every diaper made by K-C from the early 1980s to 2003 and every adult incontinence garment produced from 1998 to 2003 where such diapers and garments include refastenable tape and or hook/loop fasteners or bonded side seams. The burden for K-C to gather samples and/or documents related to every diaper and adult incontinence garment is very substantial.

First Quality also fails to address the fact that K-C attempted to limit the "pre-fastened or refastenable" category to a reasonable subset of samples (*see* ECF 356, Comack Ex. H, at 4) and that First Quality rejected K-C's proposed compromise without any reasonable explanation. It is telling that in this reconsideration, First Quality has again made no attempt to narrow its request for this final category when it already has access to numerous samples identified by K-C as relating to the other categories of prior products.

First Quality's persistence with this indiscriminate reconsideration motion on all 10 categories is, however, characteristic of its "scorched earth" discovery strategy where absolutely no stone should remain unturned, irrespective of the limited benefits and the significant time and costs burdens imposed on its opponent.[2]

---

[2] First Quality even makes the specious argument that because K-C has visited its plant (to inspect the accused infringing process directly at issue), this should have a bearing on allowing FQ to inspect K-C's sites. Not only is First Quality's argument misleading and irrelevant, First Quality cannot be heard to say that site visits and inspections present "no burden at all." In particular, First Quality protested vigorously when K-C sought to visit its sites to establish

With respect to "Prior Processes," First Quality's motion again fails to show any grounds for reconsideration. K-C has produced documents sufficient to show prior K-C processes for all of the categories identified in First Quality's motion – including processes for products other than training pants – to the extent they exist. Indeed, First Quality is aware that K-C has produced this information, because – in part – it was at issue during K-C's third motion for a preliminary injunction. (*See* ECF 357, FQ Motion, at 2 n. 3). With respect to alleged prior processes, First Quality again ignores K-C's correspondence. There are no such processes to inspect. K-C has not located any old processes that are still in use and available for inspection. (ECF 356, Comack, Ex. D, at 5).

Finally, First Quality's request for documents relating to first sale, first offer for sale, first public use, first public demonstration, first public disclosure, and first consumer test for the purported Prior Art Products and processes is another example of First Quality's overreaching when it comes to discovery in this case. K-C has produced sufficient similar documentation related to the pre-FIDO product. However, First Quality still insists it needs documents for every K-C product made since the 1980s. The request is plainly overbroad and unduly burdensome. Fed. R. Civ. P. 26(b)(2)(C)(iii). Once again, First Quality is simply disappointed with the Court's original decision and wants the proverbial – but impermissible – second bite at the apple.

## V. CONCLUSION

For all of these reasons and those set forth in the Court's original Order, this Court should reject First Quality's motion. First Quality fails to present any manifest error of law or fact nor

---

infringement when First Quality failed to produce needed documentary or video evidence of its processes, stating that the inspection would be "highly intrusive and unduly burdensome." *See* Decl. Lerdal Ex. B, First Quality's Objections and Response to K-C's First Request for an Expedited Inspection of Premises dated March 4, 2010, Response to Request No. 1, at p. 2.

does it present any new evidence that would warrant reconsideration. In particular, First Quality has failed to address the Court's analysis which properly balanced the limited benefits likely to arise from this production against the very significant burden that would be imposed on K-C. The burden for K-C to gather samples and/or documents related to every diaper and adult incontinence garment product outweighs any theoretical benefit of the discovery because their existence as prior art is not in dispute. *See* Fed.R.Civ.P. 26(b)(2)(C)(iii). Instead, First Quality has rehashed the arguments from its former motion because it is disappointed with the Court's decision. First Quality has therefore presented nothing that would change this Court's prior analysis and ruling.

For these reasons, the Court should deny First Quality's motion.

Dated: May 27, 2011                                    Respectfully submitted,


By: /s/ Thomas J. Lerdal
Daniel T. Flaherty
GODFREY & KAHN, SC
100 West Lawrence Street
P.O. Box 2728
Appleton, Wisconsin 54912-2728
Telephone: (920) 830-2800
Facsimile: (920) 830-3530
*dflaherty@gklaw.com*

Anthony S. Baish
GODFREY & KAHN, SC
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
*tbaish@gklaw.com*

Marc S. Cooperman
J. Pieter van Es
Matthew P. Becker
Aimee B. Kolz

9

Michael L. Krashin
Thomas J. Lerdal
Katie L. Becker
BANNER & WITCOFF, LTD.
10 South Wacker Drive – Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001
*mcooperman@bannerwitcoff.com*
*pvanes@bannerwitcoff.com*
*mbecker@ bannerwitcoff.com*
*akolz@bannerwitcoff.com*
*mkrashin@bannerwitcoff.com*
*tlerdal@bannerwitcoff.com*
*kbecker@ bannerwitcoff.com*

**Attorneys for Plaintiffs**
**Kimberly-Clark Worldwide, Inc. and**
**Kimberly-Clark Global Sales, LLC**