UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

v.                                                  Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

      Defendants.

---

**ORDER**

---

Defendants First Quality Baby Products, LLC, and First Quality Retail Sales, LLC (collectively "First Quality") move, pursuant to Civil L.R. 7(h), for an order compelling Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "K-C") to provide 30(b)(6) witnesses. (Dkt. 389.)  In particular, First Quality seeks Fed. R. Civ. P. 30(b)(6) witnesses capable of testifying about thirteen documents produced by K-C that relate to price elasticity and market research.

Fed. R. Civ. P. 30(b)(6) permits a party to name as a deponent "a public or private corporation" such as K-C.  The rule further requires the named organization to designate an agent to testify on the organization's behalf.  Fed. R. Civ. P. 30(b)(6).  Moreover, the "persons designated [by the given organization] must testify about information known or reasonably available to the organization."  *Id.*  The rule requires the party seeking information to "describe with reasonable particularity the matters for examination."  *Id.*

Here First Quality argues that K-C has failed to produce a witness to testify about thirteen so-called "Market Documents." First Quality contends these documents relate to four topics First Quality identified in its 30(b)(6) notice: Topic 52 (demand), Topic 57 (the training pants market), Topic 65 (pricing strategy), and Topic 87 (authentication).

First Quality's 30(b)(6) Notice of Topic 52 asked for a witness to testify as to:

> The demand, market, and market share for nonrefastenable disposable training pants, disposable diapers, and nonrefastenable youth pants, including as compared to refastenable training pants; and the circumstances under which nonrefastenable products are substitutes for refastenable training pants. This topic includes but is not limited to conversations with retailers (e.g., Wal-Mart, Walgreen, Rite Aid, Target) concerning their desire for refastenable or nonrefastenable private label training pants.

(K-C's Objections First Quality's Notice of 30(b)(6) Deposition.) K-C objected to this topic as being overbroad. As for Topic 57 First Quality sought a knowledgeable deponent on:

> The United States markets for training pants and any products responsive to First Quality's Interrogatory Nos. 22 and 27, the products included in such markets, the competitors in such markets and their market shares, including but not limited to K-C's market share.

(*Id.*) Topic 65, related to pricing, requests a witness to testify regarding:

> Pricing strategy and pricing decisions for each K-C training pant and K-C product responsive to First Quality's Interrogatory Nos. 22 and 27, from 2003 to present, including without limitation:
>     a. how K-C has determined pricing when a competitor has introduced a new private label or branded training pant product.
>     b. K-C's reasons for offering/proposing certain prices for its private label training pant product to retailers.

(*Id.*) Finally, Topic 87 asks for a K-C deponent able to provide "[t]he identity, location and authenticity of documents and other tangible things relating to the categories set forth in paragraphs 1 through 85 above." (*Id.*)

First Quality contends that K-C must produce a witness knowledgeable on price elasticity and market research studies. There is no dispute that these topics are at least tangentially related the market for refastenable training pants. But the issue now before the Court is whether First Quality's 30(b)(6) notice described with sufficient particularity the matters it expected K-C corporate witnesses to be able to testify about.

Price elasticity, in economics, relates to how consumer demand – and corresponding sales volume – changes in response to changes in price. Say for example, a consumer learns that the price of name brand training pants for their child has increased by 20% per package, the consumer's price elasticity will determine whether the consumer still buys the same amount of training pants or decides to substitute regular diapers or store brand product for the now relatively more expensive training pants.

K-C argues that First Quality did not specifically include issues of price elasticity in the 30(b)(6) notice of matters for examination. That is, K-C contends that First Quality failed to describe with "reasonable particularity" the topics First Quality wanted K-C deponents to be prepared to discuss. Indeed, no mention of price elasticity or market research studies is made in the four topics identified by First Quality. While K-C's witnesses were apparently prepared to discuss the training pant market in general, First Quality contends that they were not adequately prepared to discuss documents related to price elasticity, a subject First Quality insists is highly relevant to aspects of K-C's lost profits claim.

In this patent case K-C produced tens of thousands of documents; it is unreasonable to expect a witness to be prepared to discuss thirteen particular documents without First Quality specifically describing the areas of likely deposition questions. The purpose of a 30(b)(6) notice

3

is to allow the corporation responsible for producing witnesses to produce appropriately knowledgeable witnesses for the likely topics of inquiry. Here First Quality's 30(b)(6) notice does not entitle First Quality to a K-C employee prepared to discuss each and every aspect of the complex $900 million per year training pant market. Further, several of the price elasticity documents are from 1999; these old documents are simply not relevant to the market for training pants now at issue between the parties.

Finally the parties dispute whether K-C should produce witnesses to explain certain Market Documents that were created for K-C by third party market research firms such as the Nielsen Company. While such third party firms are undisputedly in the best position to answer First Quality's questions about the methodology of market studies, First Quality argues that K-C must provide its *own* witness to testify as to why the documents were created, how K-C used the documents and findings, and any involvement K-C had in the creation of the documents. But during June 16 and 17, 2011 depositions, two K-C employees did provide just this sort of testimony, giving detailed answers regarding why the documents were created, K-C's involvement in the creation of the documents, and how the documents were used by K-C.

In sum I conclude that K-C has reasonably complied with its responsibilities under First Quality's Fed. R. Civ. P 30(b)(6) notice. K-C has made available a number of witnesses who were knowledgeable on the topics First Quality identified including Robert Thibault, K-C's president of North America Baby & Child Care, Peter Swain, marketing director for Pull-Ups brand, and Elizabeth Metz, K-C's Senior Brand Manager for Corporate Brand. Designated Rule 30(b)(6) witnesses need not be the "most knowledgeable witness[es]," but need only be competent to testify about information "known or reasonably available to the corporation." *See, e.g., Centagon, Inc. v.*

*Bd. of Dirs. of 1212 Lake Shore Dr. Condo. Ass'n,* 2002 WL 356483, at *7 (N.D. Ill. Mar. 5, 2002). The rule of reason applies to deciding if the selected Rule 30(b)(6) witness is capable of testifying about the relevant issues. *See, e.g., Costa v. County of Burlington,* 254 F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligations to prepare its 30(b)(6) witness."). Finally, to the extent price elasticity and market research studies are relevant to damages in this action, First Quality has obtained key documents from K-C and certainly has access to expert witnesses. For the reasons set forth above, First Quality's expedited non-dispositive motion to compel (Dkt. 389) is **denied.**

  **SO ORDERED** this  24th  day of June, 2011.

                s/ William C. Griesbach
                William C. Griesbach
                United States District Judge