# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

  v.                                                  Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

      Defendants.

## ORDER

Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "K-C") move, pursuant to Civil L.R. 7(h), for an order compelling Defendants First Quality Baby Products, LLC, and First Quality Retail Sales, LLC (collectively "First Quality") to provide sales evaluation files relating to products accused of infringement. (Dkt. 396.) K-C contends that First Quality's sales evaluation files may lead to admissible evidence relating to K-C's damages claims for a reasonable royalty and for lost profits due to price erosion.

The impetus for this discovery dispute came during a recent deposition when First Quality's Director of Finance, Kerry Couch, revealed that he maintains sales evaluation files on training pants and diapers. K-C argues it is entitled to the files – which include information First Quality considers in setting prices – under K-C's Request for Production No. 79 which seeks "documents and things reflecting any basis for pricing each of the Accused Products, including documents and things reflecting pricing research, strategy, and pricing decisions."

In calculating a reasonable royalty courts consider, among other things, the "infringer's anticipated profit from the use of the patented invention." *Trans-World Manuf. Corp. V. Al Nyman & Sons. Inc.,* 750 F.2d 1552, 1568 (Fed. Cir. 1984)(citing *Georgia Pacific v. United States Plywood Corp.,* 316 F. Supp. 1116, 1121 (S.D.N.Y. 1970).) First Quality's sales evaluation files contain contribution margin analysis (the profitability measure First Quality uses in setting its prices). Because First Quality's sales evaluation files contain information related to its profit, it logically follows that First Quality's sales evaluation files should be produced as they may aid in any calculation of reasonable royalties.

K-C also argues that the sales evaluation files could be relevant to the calculation of lost profits due to price erosion. *See Minnesota Mining and Manufacturing Co., v. Johnson & Johnson Orthopaedics Inc.,* 976 F.2d 1559, 1578-79 (Fed. Cir. 1992) (affirming price erosion damages where two companies "engaged in vigorous price competition over equivalent products which caused a steady decline in the price" of the product).

According to First Quality, the information K-C seeks is overbroad and unnecessary. (Dkt. 422.) First Quality argues that its sales evaluation files are unnecessary for determination of a reasonable royalty because it has already produced documents reflecting its actual pricing, sales, and margins for training pants. Thus, First Quality insists, the sales evaluation files would be cumulative. First Quality also contends that the requested discovery is overbroad. Not only do the sales evaluation files relate to both training pants and diapers, but the temporal scope of the sales evaluation files span four years – from 2008 to present.

To resolve this dispute I turn to K-C's stated purpose in seeking the sales evaluation files. It is well-settled that in calculating reasonable royalties Courts imagine a "hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa,*

2

*Inc.,* 594 F.3d 860, 868 (Fed. Cir. 2010). First Quality suggests that the four years of sales evaluation files are not relevant to a calculation of reasonable royalties because "K-C is unable even to identify the time period in which a hypothetical negotiation would have occurred." (First Quality Resp. Br., Dkt. 422 at 1.) But no authority requires K-C to identify *when* a hypothetical negotiation would have taken place. Indeed, courts can and do consider information available as of the date of a hypothetical negotiation *and* "events and facts that occurred thereafter." *Fromson v. Wester Litho Plate and Supply Co.,* 853 F.2d 1568, 1575-76 (Fed. Cir. 1988) (citing *Sinclair Refining Co. v. Jenkins Petrolum Process Co.,* 289 U.S. 698, 698 (1933). The sales evaluation files can be relevant to a calculation of royalties despite the fact that they span a four-year period.

I do not agree with First Quality's argument that only K-C's prices are relevant to a calculation of price erosion. If First Quality's sales evaluation files show that First Quality engaged in vigorous price competition with K-C, such that K-C was forced to lower its prices relative to First Quality's prices, the sales evaluation files are relevant to a calculation of price erosion. To determine whether there is "vigorous price competition" between two companies a court must necessarily analyze the prices set by both companies and their respective market shares. *See Minnesota Mining,* 976 F.2d at 578-79. For this reason the prices set by both K-C and First Quality for training pants are relevant to price erosion.

For the reasons set forth above, K-C's expedited non-dispositive motion to compel (Dkt. 396) is **granted** and First Quality is ordered to produce Mr. Couch's sales evaluation files to the extent they relate to training pants**.**

**SO ORDERED** this ___28th___ day of July, 2011.

    s/ William C. Griesbach
William C. Griesbach
United States District Judge

3