UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

   Plaintiffs,

 v.              Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC, and
FIRST QUALITY RETAIL SALES, LLC,

   Defendants.

---

**ORDER**

---

  Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "K-C") move to compel Defendants First Quality Baby Products, LLC, and First Quality Retail Sales, LLC (collectively "First Quality") to produce documents "being improperly withheld from K-C." (Plt. Mot. Compel, ECF 402.)  Through discovery, K-C has requested documents from First Quality related to interactions between First Quality and Fameccanica.  In particular, K-C alleges that First Quality is wrongfully withholding "all emails, reports, technical documentation, and other tangible things generated as part of collaborative efforts between First Quality and Fameccanica in defending against K-C's assertion of its patents." (Mem. in Supp. at 3, ECF 410.) K-C also seeks "charts, photographs, videos, technical documentation, diagrams, and e-mails." (*Id.*)  For the reasons set forth herein, the motion will be granted.

  First Quality contends that the charts, photographs, videos, technical documentation, diagrams, and emails (hereinafter "documents") are protected by a number of privileges, namely the

attorney-client privilege, the work product doctrine, and the common interest privilege (also known as the "community of interest privilege.") The common interest privilege First Quality asserts is not an independent privilege in its own right but an extension of existing privileges. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007). In other words, if already privileged information is shared between commonly interested parties represented by counsel, the underlying privilege is not destroyed merely because the information is shared. But of course the mere fact that information is shared between parties with a common interest does not mean it is entitled to a privilege — the document must be protected by some other, independent, privilege. First Quality argues that the documents should not be compelled because they are subject to two underlying privileges: attorney-client and work product.

The party relying on the attorney-client privilege or work product doctrine bears the burden of establishing that it applies. *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534, 539 (N.D. Ill. 2000). A blanket claim of privilege is insupportable; the claim of privilege must be made and sustained on a "case-by-case or question-by-question basis." *United States v. First State Bank*, 691 F.2d 332, 335 (7th Cir. 1982). The scope of the privilege should be "strictly confined within the narrowest possible scope limits." 8 John Henry Wigmore, EVIDENCE IN TRIALS AT COMMON LAW § 2291 (John T. McNaughton rev. 1961); *United States v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964); *In re Shapiro*, 381 F. Supp. 21 (N.D. Ill.1974).

First Quality's first asserted privilege, attorney-client, attaches only where the communication at issue was made: "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *BDO Seidman, LLP*, 492 F.3d 806 at 815. Ultimately, courts will examine whether the document in question

reveals, directly or indirectly, the substance of a confidential attorney-client communication. *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D. Ill.1980).

First Quality contends that the withheld documents are privileged because many of them were sent to various parties, including counsel, and were labeled "Subject to common interest and confidentiality agreements between FQ and Fameccanica." Merely including attorneys on communication, however, is not enough to meet the burden of proving that the communication was made "in connection with the provision of legal services" and/or "in the context of an attorney-client relationship." The key inquiry is not just *who*, but *why*. While First Quality asserts that these documents were made "to aid counsel in providing legal advice regarding the development of [its] defenses" this blanket claim is too broad to meet its burden of proof. As aforementioned, since the privilege is a barrier to discovery, the scope of the privilege should be strictly confined within its narrowest limits. *First State Bank*, 691 F.2d at 335. By purporting to extend the privilege to such charts, photographs, videos, technical documentation, diagrams, and emails sent by non-attorneys to other non-attorneys, with no real assertions that these documents were to aid attorneys in their provision of legal services, First Quality has overreached these narrow limits and consequently the documents cannot be protected by the attorney-client privilege.

First Quality also argues that these documents are protected by the work product doctrine. The work product doctrine is somewhat broader than the attorney-client privilege and protects materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed. R. Civ. P. 26(b)(3). "Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which

were generated in the ordinary course of business, are discoverable." *Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 140 (N.D. Ill. 1993).

First Quality asserts that the documents in question reflect the work product of First Quality and Fameccanica on their joint development of First Quality's defenses. By examining the log of documents, however, it becomes clear that First Quality is asserting work product solely on the date of communication: September 21, 2009, shortly before K-C actually filed suit. Furthermore, in both their form and their description, these types of documents seem to refer to the ordinary course of First Quality's business, rather than material prepared in anticipation of litigation. This is insufficient to meet the burden required to assert the work product privilege. *Transcap Assoc., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 2009 WL 1543857, at 3 (N.D. Ill. June 3, 2009) (work product protection "does not extend to documents prepared for business purposes."); *see also Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir.1996) ("The mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the work product privilege; the privilege is not that broad." (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983))). Nothing, other than the boilerplate language of the log, indicates that the documents were actually prepared at the direction of counsel and some of the documents (notably "technical documentation" and "diagrams") do not even make this boilerplate assertion. (First Quality's Log of Documents Withheld Pursuant to the Common Interest Privilege, Exhibit C at ¶¶ 4,5.) First Quality has failed to demonstrate that the documents were actually created in anticipation of litigation and has therefore not met its burden in order to protect them under the work product doctrine.

Finally, since First Quality has not met its burden of proving that the withheld materials are "otherwise privileged" under attorney-client or work product doctrines, I need not reach the issue of the application of the common interest doctrine. *See BDO Seidman, LLP*, 492 F.3d at 816.

Accordingly and for the reasons set forth, K-C's motion to compel, Docket 402, is **GRANTED**.

**SO ORDERED** this   9th   day of August, 2011.

                                                      s/ William C. Griesbach
                                                      William C. Griesbach
                                                      United States District Judge