UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| Kimberly-Clark Worldwide, Inc. and <br> Kimberly-Clark Global Sales, LLC, <br>     Plaintiffs, <br>  v. <br> First Quality Baby Products, LLC, <br> First Quality Retail Services, LLC, and <br> First Quality Consumer Products, LLC, <br>     Defendants. | Civil Action No. 09-C-0916 <br> Civil Action No. 10-C-1118 <br><br> Judge William C. Griesbach |

**K-C'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT THE '221 AND '316 PATENTS ARE NOT INVALID AS OBVIOUS IN LIGHT OF K-C'S TRADE SECRET PROCESSES**

  K-C submits this reply in support of its Motion for Summary Judgment that the '221 and '316 Patents are Not Invalid as Obvious in Light of K-C's Trade Secret Processes (Dkt #601).

**Table of Contents**

I. FQ Concedes There Is No Statutory Basis for K-C's Trade Secret Processes to Be Found to Be "Prior Art" Under Section 103 ................................................................................... 1

II. FQ's "Commercial Exploitation" Cases Are Distinguishable and Provide No Statutory Basis to Conclude K-C's Trade Secret Processes Are "Prior Art" ..................................... 2

III. *Dippin' Dots* Does Not Help the Analysis Because It Is a "Public Use" Case .................. 4

IV. FQ's Unfounded Attack on K-C Reflects the Weakness of FQ's Position ........................ 6

V. K-C Has No "Burden" to Establish Its Prior Processes Were Trade Secrets ..................... 7

VI. Conclusion ........................................................................................................................ 9

# Table of Authorities

**Cases**

*Adenta GmbH v. OrthoArm, Inc.*,
   501 F.3d 1364 (Fed. Cir. 2007) ................................................................................ 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................... 8

*Dippin' Dots, Inc. v. Mosey*,
   476 F.3d 1337 (Fed. Cir. 2007) ......................................................................... 3, 5, 6

*Egbert v. Lippmann*,
   104 U.S. 333 (1881) ................................................................................................... 6

*General Mills, Inc. v. Kraft Foods Global, Inc.*,
   487 F.3d 1368 (Fed. Cir. 2007) ................................................................................ 3

*In re Caveney*,
   761 F.2d 671 (Fed. Cir. 1985) .................................................................................. 2

*In re Kollar*,
   286 F.3d 1326 (Fed. Cir. 2007) ................................................................................ 2

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) ................................................................................ 3

*Johnson v. Shinseki*,
   2010 WL 1287037 (E.D. Wis. Mar. 29, 2010) ................................................. 3, 7, 8

*Metallizing Eng. Co. v. Kenyon Bearing & Auto Parts Co.*,
   153 F.2d 516 (2d Cir. 1946) .................................................................................. 3, 4

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*,
   298 F.3d 1290 (Fed. Cir. 2002) ................................................................................ 5

*Novo Nordisk A/S v. Caraco Pharm. Labs. Ltd.*,
   601 F.3d 1359 (Fed. Cir. 2010) ................................................................................ 2

*Rockwell Intern. Corp. v. U.S.*,
   147 F.3d 1358 (Fed. Cir. 1998) ................................................................................ 9

*Schneiker v. Fortis Ins. Co.*,
   200 F.3d 1055 (7th Cir. 2000) .................................................................................. 7

*Special Devices, Inc. v. OEA, Inc.*,
   270 F.3d 1353 (Fed. Cir. 2001) ................................................................................ 2

*TP Labs., Inc. v. Professional Positioners, Inc.*,
   724 F.2d 965 (Fed. Cir. 1984) ............................................................................. 2, 6

*U.S. Gypsum Co. v. LaFarge North America, Inc.*,
   508 F. Supp. 2d 601 (N.D. Ill. 2007) ........................................................................ 8

*WL Gore & Associates, Inc. v. Garlock, Inc.*,
  721 F.2d 1540 (Fed. Cir. 1983) .............................................................................................. 6

*Woodland Trust v. Flowertree Nursery Inc.*,
  148 F.3d 1368 (Fed. Cir. 1988) .............................................................................................. 2

**Statutes**

35 U.S.C § 102(b) ................................................................................................................. 1, 2, 3

**Other Authorities**

Leahy-Smith America Invents Act,
  H.R. 1249, 112th Cong. § 102(a) (2011 (enacted) (effective September 16, 2012) ................... 4

**Rules**

Civil Local Rule 56(b)(2)(B)(ii) (E.D. Wis.) .................................................................................. 7

In its opposition ("FQ Br."), FQ ignores the proper legal analysis of the statutory interpretation issue presented by K-C's motion. In its place FQ substitutes (1) inaccurate descriptions of Federal Circuit precedent, (2) mischaracterizations of K-C's arguments, and (3) manufactured facts. The Court should reject FQ's unprincipled attempt to avoid summary judgment. For the reasons stated in K-C's Opening Brief ("K-C Br.") and below, the Court should conclude that, as a matter of law, K-C's Trade Secret Processes are not "prior art" under Section 103 of the Patent Statute, and therefore, grant summary judgment to K-C that the '221 and '316 patents are not obvious in light of those processes.

### I. FQ Concedes There Is No Statutory Basis for K-C's Trade Secret Processes to Be Found to Be "Prior Art" Under Section 103

K-C's own prior work (*e.g.*, its Trade Secret Processes) cannot be "prior art" under Section 103 unless there is a *statutory basis* into which that work falls. In particular, none of the relevant statutory language defining prior art describes K-C's Trade Secret Processes. *See* 35 U.S.C § 102(b). The processes were not in "public use" because K-C kept them secret. And the processes were not "on sale"; rather products made from the process were sold. (K-C Br. 3-4). Rather than addressing the statutory interpretation analysis, as K-C did in its Opening Brief, FQ ignores it. FQ's silence on this important point is telling.

As K-C previously pointed out, none of the relevant statutory language defining prior art describes K-C's Trade Secret Processes. *See* 35 U.S.C § 102(b). The processes were not in "public use" because K-C kept them secret. And the processes were not "on sale"; rather products made from the process were sold. (K-C Br. 3-4).

Recognizing that K-C's Trade Secret Processes are not prior art under the statute, FQ skips the statute altogether and jumps immediately to case law. This is, of course, improper as statutory construction begins with the language of the statute. *Novo Nordisk A/S v. Caraco*

1

*Pharm. Labs. Ltd.*, 601 F.3d 1359, 1364 (Fed. Cir. 2010).  Moreover, as described below, the cases on which FQ relies are unhelpful as they do not address the issue before the Court.

> II. **FQ's "Commercial Exploitation" Cases Are Distinguishable and Provide No Statutory Basis to Conclude K-C's Trade Secret Processes Are "Prior Art"**

Citing to a number of inapplicable cases, FQ argues that a patentee's "commercial exploitation" of a secret process somehow renders that process "*statutory* prior art."  (FQ Br. 5-6) (emphasis added).  First, the argument simply makes no sense.  The relevant statute, Section 102(b), nowhere includes the phrase "commercial exploitation."  35 U.S.C § 102(b).  Rather it refers to the specific acts of "public use" and "on sale" as creating prior art.  *Id.*

Second, FQ's list of cases referring to commercial exploitation does not change what the Patent Statute says and what it doesn't say.  Additionally, those cases are inapposite: each involved a patentee seeking to patent the *identical* process that was previously used in secret, and where the invalidity argument at issue was anticipation under Section 102, rather than obviousness under Section 103 as here.  *See In re Caveney*, 761 F.2d 671, 673 (Fed. Cir. 1985) (appeal from the USPTO Board of Appeals sustaining the rejection of claims under the on-sale bar under 35 U.S.C. § 102(b)); *In re Kollar*, 286 F.3d 1326, 1328 (Fed. Cir. 2007) (appeal from the final decision holding the claims to be unpatentable under the on-sale bar of 35 U.S.C. § 102(b).); *Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1353-54 (Fed. Cir. 2001) (appeal from a summary judgment that patent was invalid under the on-sale bar under 35 U.S.C. § 102(b)); *Woodland Trust v. Flowertree Nursery Inc.*, 148 F.3d 1368, 1369, 1373 (Fed. Cir. 1988) (appeal of holding that patent was invalid based on prior knowledge and use by others under § 102(a)); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 966 (Fed. Cir. 1984) (appeal from judgment that held patent invalid under 35 U.S.C. § 102(b) on the ground that a public use occurred); *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1377 (Fed. Cir.

2

2005) (appeal from a summary judgment that patent was invalid because of public use under 35 U.S.C. § 102(b)).[1]

In contrast to those Section 102 anticipation cases, here K-C has patented processes that differ from its prior Trade Secret Processes. FQ does not dispute this and, indeed, FQ has raised no Section 102 anticipation defenses based on K-C's Trade Secret Processes. (FQ Response to K-C's Statement of Facts ("FQ SOF"), p.2, ¶ 4, Dkt #719).[2] Rather, by raising its obviousness defense under Section 103, FQ acknowledges that there are differences between K-C's patented processes and its Trade Secret Processes. (FQ SOF, p.2, ¶ 3).

Moreover, as explained previously (K-C Br. 5-6), FQ's Section 102 cases and their commercial exploitation theory are premised on the non-statutory "forfeiture" policy first announced by Judge Hand in the *Metallizing* case in 1946, another anticipation case. *Metallizing Eng. Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516 (2d Cir. 1946). Again, FQ does not dispute that the cases it is relying on are founded upon that forfeiture policy or that those cases are anticipation cases and do not address obviousness under Section 103.

As K-C pointed out in its Opening Brief, *Metallizing* and its underlying policy have been questioned, and, in any event, should not be expanded to Section 103. Forfeitures are generally disfavored under the law. *See General Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1374-75 (Fed. Cir. 2007) ("We have taken a similarly dim view of purported forfeitures of patent rights, as have other courts."). Further, there is no sound policy reason, and FQ offers none, to

---

[1] *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007) is similarly a public use case under 35 U.S.C. § 102(b) as discussed infra Section III.
[2] FQ does not dispute K-C's statement of fact at ¶ 4, and cites to no record evidence in support of its objection. Therefore the Court should deem this fact as admitted. *See Johnson v. Shinseki*, No. 08-C-471, 2010 WL 1287037, at *2 (E.D. Wis. Mar. 29, 2010) ("To the extent that an objection to a proposed finding of fact fails to cite specific evidentiary support, the objection has no weight.").

3

expand this questionable "forfeiture" doctrine of the anticipation cases to Section 103 cases such as this one. (K-C Br. 8). In all events, because the forfeiture theory creates a policy-based *non-statutory* bar for secret processes, expansion of the theory to the obviousness analysis is prohibited by the requirement that all Section 103 obviousness "prior art" have a clear *statutory basis*. *See* F. Andrew Ubel, "Who's on First?—The Trade Secret Prior User or a Subsequent Patentee," 76 J. PAT. & TRADEMARK OFF. SOC"Y 401, 416 n.48 (1994) (criticizing *Metallizing* as creating a "non-statutory bar").

FQ again does not dispute that Congress's recent amendment to the Patent Statute further repudiates the theories underlying these "secret process" cases upon which FQ relies. *See* Leahy-Smith America Invents Act, H.R. 1249, 112th Cong. § 102(a) (2011 (enacted) (effective September 16, 2012). Moreover, contrary to FQ's argument (FQ Br. 7), K-C is not arguing that the new America Invents Act ("AIA") directly changes what constitutes statutory prior art for this case. Rather, Congress's clarification in the AIA that prior art will mean only knowledge "available to the public," in combination with the relevant commentary about this revision makes clear that the policies upon which the secret process cases were founded are unfound. In light of Congress's decision to negate the secret process case law, the Court should certainly not now expand the policies underlying those cases to Section 103 as urged by FQ.

### III. *Dippin' Dots* Does Not Help the Analysis Because It Is a "Public Use" Case

FQ's heavy reliance on *Dippin' Dots* is misplaced. It is a case involving a public use that was statutory prior art under Section 102(b), not a case as this one involving a non-statutory secret use. The case did not address or resolve the legal issue presented here concerning whether a patentee's prior *secret* process is properly considered "prior art" under Section 103, even though Section 102(b) does not define such a secret use as prior art.

4

To be clear, nowhere in the CAFC decision is the prior process described as "secret." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007). Nor is it described as secret in any of the appellate briefing. If it were secret it undoubtedly would have been described as so.

Rather, the process in *Dippin' Dots* is consistently described as being practiced in public. This is reflected in the repeated references to the process being practiced "at Festival Market" – a mall in Lexington, Kentucky. *Id.* at 1341 ("Jones testified that at Festival Market he only practiced the first three steps of the claimed method, not the storing, bringing, or serving steps."); ("The attorney who prosecuted the '156 patent, Warren Schickli, testified that he considered the sales to have been experimental since the process as practiced at Festival Market could not be feasibly commercially exploited.").

In an improper effort to overcome the plain reading of the facts of *Dippin' Dots*, FQ theorizes that although the patentee practiced the prior process in public at Festival Market, the process must not have been practiced "openly." (FQ Br. 5). There is simply no record evidence supporting this interpretation of the case and FQ cites to none. Rather, it is simply an unjustified effort by FQ to contort the facts to try and re-characterize *Dippin' Dots* as a "secret" use case like the present case. The Court should reject FQ's mischaracterization of the case and the facts.

Furthermore, even if the *Dippin' Dots* patentee practiced the invention at Festival Market in a way that hid it from public view (as theorized by FQ), the case law is clear that *this would still constitute a "public use"* under Section 102(b), and not a secret use as here. "It is not public knowledge of his invention that precludes the inventor from obtaining a patent for it, but a public use or sale of it." *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002) quoting *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 970 (Fed. Cir. 1984). Where there is no obligation of secrecy, a use of an invention in public that is not visible

is still a public use.  *See, e.g., Egbert v. Lippmann*, 104 U.S. 333, 336 (1881) (spring sewn into a corset and worn in public, though not visible to the public, was a public use).  This is yet another reason to reject FQ's unsupported theory.

Finally, and contrary to FQ's argument, the Federal Circuit's discussion of the resulting "product" in *Dippin' Dots* is perfectly consistent with the "public use" analysis there.  The Federal Circuit considers whether a product produced from practicing a *non-secret* process was commercially sold as evidence tending to show that the process was, in fact, in "public use" under Section 102(b).  *See WL Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548-49 (Fed. Cir. 1983) ("The nonsecret use of a claimed process in the usual course of producing articles for commercial purposes is a public use . . . and there was no evidence that any different process was used to produce the articles shipped to Export.").  FQ's effort to re-write *Dippin' Dots* is unsupportable and should be disregarded.

**IV.      FQ's Unfounded Attack on K-C Reflects the Weakness of FQ's Position**

Recognizing that neither the statutory language nor precedent support its argument, FQ turns to colorful accusations in the hope of staving off summary judgment.  Its charge that K-C somehow seeks to "abuse" the patent system is devoid of merit and foundation, and is merely a distraction from the legal analysis before the Court.

In particular, FQ's allegation that, after using its Trade Secret Processes for many years "K-C then filed the '221 and '316 patents to cover certain aspects of its prior processes" (FQ Br. 6; FQ SOF, p.3, ¶ 3) is simply false.  It is undisputed that K-C's Trade Secret Processes were used to manufacture permanently bonded (*i.e.* non-refastenable) training pants.  (FQ SOF p.1, ¶ 1).  In contrast, the '221 and '316 patents are directed to certain processes for making refastenable training pants.  (Decl. of Schmidt, Ex. 2, '221 Patent, *e.g.*, col. 1, ll. 8-10, col. 14, ll.

45-47, *Dkt #*701; Second Decl. of Flaherty, Ex. A, '316 Patent, *e.g.*, col. 1, ll. 5-9, col. 5, ll. 56-60).

FQ's allegation is also frivolous and a blatant violation of this Court's Local Rules which require a party to cite the specific portion(s) of the record that supports each factual paragraph in its statement of facts. Civil Local Rule 56(b)(2)(B)(ii) (E.D. Wis.). Flaunting this rule, FQ made these unfounded accusations in its statement of facts and cited *nothing* in support. (FQ SOF, p.3, ¶ 3). In other words, FQ could find no evidence supporting its accusation. Yet this did not stop FQ from making this serious and unsupported allegation.

Because FQ's allegation is untrue, unsupported, and in violation of this Court's Rules, the Court should give it no weight and should ignore it.[3] *See Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1057 (7th Cir. 2000) (commenting on the Local Rules: "We also do not take into account any facts proposed by Ms. Schneiker that are unsupported by references to materials in the record . . . .") (internal citations omitted).

## V. K-C Has No "Burden" to Establish Its Prior Processes Were Trade Secrets

FQ has also misstated the parties' burdens with respect to demonstrating that K-C's processes are not prior art under Section 103. Of course, as the accused infringer, FQ ultimately bears the burden of proving invalidity by clear and convincing evidence. *See Adenta GmbH v.*

---

[3] The Court should similarly ignore FQ's proposed statements of disputed facts at ¶¶ 4 and 5 (FQ SOF, p. 3). Those statements allege that certain unidentified aspects of K-C's Trade Secret Processes are "virtually identical" to aspects of the '221 patent, again without proper evidentiary support. The only evidence to which FQ cites are two drawings of equipment to which FQ's attorneys have added coloring and labels. FQ cites to no testimony or evidence of any kind concerning any alleged similarities. Indeed, there are significant differences between the equipment as previously explained by Mr. Popp in deposition. (K-C Response to FQ SOF ¶¶ 4-5; Second Decl. of Flaherty, Ex. B, Oct. 4, 2010 Deposition of Robert Popp, 65:2-67:11, 62:2-21). Because FQ's cited evidence does not support the proposed facts, these paragraphs also violate the Local Rules and should be ignored. *See Johnson v. Shinseki,* 2010 WL 1287037, at *2 (excluding proposed facts for which the evidentiary citation does not support the finding).

*OrthoArm, Inc.*, 501 F.3d 1364 (Fed. Cir. 2007) ("The burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence."). In the context of this summary judgment motion, K-C has put forth admissible evidence that its prior processes were practiced in secret.[4] Indeed this evidence is unrebutted and corroborated by FQ's own witnesses. (K-C SOF p.2, ¶ 2, *Dkt #*603).[5]

To avoid summary judgment, FQ must therefore put forth admissible evidence to dispute this and upon which a reasonable jury could find that K-C's prior processes were not practiced in secret. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). FQ has wholly failed to do this. It is quite telling that, despite deposing numerous K-C employees and ex-employees,[6] FQ cannot point to a single shred of evidence placing the secrecy of K-C's manufacturing facility in doubt. Instead, FQ provides only attorney argument. And again, FQ has cited to no record evidence in response. (FQ SOF, p.1, ¶ 2, *Dkt #*719). There is, therefore, no genuine dispute as to whether K-C's prior process was secret and the Court should deem K-C's statement as undisputed for purposes of this motion. *See Johnson v. Shinseki,* No. 08-C-471, 2010 WL 1287037, at *2 (E.D. Wis. Mar. 29, 2010) ("To the extent that an objection to a proposed finding

---

[4] FQ again misstates the issue before the court when it mixes Wisconsin state law into the analysis. The issue here is not whether a reasonable jury could find that K-C's prior processes constitute "trade secrets" under Wisconsin state law as FQ argues. (FQ Br. 7-8). Rather, it is whether a reasonable jury could find that K-C's prior processes were practiced in such a public manner that they could be found to have been in public use or on-sale under Section 102(b).

[5] FQ's argument that K-C's testimonial evidence and testimonial corroboration must further be corroborated by documents is simply contrary to the law. *See, e.g., U.S. Gypsum Co. v. LaFarge North America, Inc.,* 508 F. Supp. 2d 601, 625-26 (N.D. Ill. 2007) (granting summary judgment based solely on testimony where opposing party failed to offer any evidence in response).

[6] Indeed FQ's current director of product development, Susan O'Connell, is a former K-C employee who confirmed the level of K-C's secrecy and confidentiality concerning its manufacturing processes. (K-C Response to FQ SOF ¶ 7; Transcript of Mar. 26, 2010 Preliminary Injunction Hearing, 325:6-326:23, ECF No. 148).

of fact fails to cite specific evidentiary support, the objection has no weight. . . Similarly, arguments have no place in proposed findings of fact or responses to such findings.").[7]

## VI. Conclusion

For the reasons above and those set forth in its Opening Brief, K-C requests that the Court conclude that, as a matter of law, K-C's Trade Secret Processes are not "prior art" under Section 103 of the Patent Statute, and therefore, grant summary judgment to K-C that the '221 and '316 patents are not obvious in light of those processes.

Dated: February 10, 2012

By: *s/ Daniel T. Flaherty*
Daniel T. Flaherty
GODFREY & KAHN, SC
100 West Lawrence Street
P.O. Box 2728
Appleton, WI 54912-2728
Phone: (920) 830-2800
Fax: (920) 830-3530
*dflaherty@gklaw.com*

Anthony S. Baish
GODFREY & KAHN, SC
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
*tbaish@gklaw.com*

Marc S. Cooperman
J. Pieter van Es
Matthew P. Becker
Aimee B. Kolz

---

[7] FQ again has the law wrong concerning "all doubts" allegedly being resolved in its favor. (FQ Br. 8). Under Rule 56 the Court should draw all *reasonable* inferences *based on the underlying evidence* in favor of the non-movant. *Rockwell Intern. Corp. v. U.S.*, 147 F.3d 1358, 1361 (Fed. Cir. 1998) ("In determining the propriety of summary judgment . . . the evidence must be viewed favorably to the nonmovant, with doubts resolved and reasonable inferences drawn in the nonmovant's favor."). Here, FQ has cited no evidence from which to infer that K-C's prior processes were not secret. (FQ SOF p.1, ¶ 2, *Dkt #*719). To the contrary, all of the evidence establishes that K-C's Trade Secret Processes were practiced in secret. Therefore, it would be improper to draw any inference concerning secrecy in favor of FQ.

9
Case 1:09-cv-00916-WCG   Filed 02/10/12   Page 13 of 14   Document 744

Michael L. Krashin
Katie L. Becker
BANNER & WITCOFF, LTD.
10 South Wacker Drive – Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001
*mcooperman@bannerwitcoff.com*
*pvanes@bannerwitcoff.com*
*mbecker@ bannerwitcoff.com*
*akolz@bannerwitcoff.com*
*mkrashin@bannerwitcoff.com*
*kbecker@ bannerwitcoff.com*

**Attorneys for Plaintiffs
Kimberly-Clark Worldwide, Inc. and
Kimberly-Clark Global Sales, LLC**