UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, INC., and
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

   v.                                             Case No. 09-C-916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SALES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS LLC,

        Defendants.

**DECISION AND ORDER GRANTING FIRST QUALITY'S MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY OF CLAIM 4 OF THE '751 PATENT**

      Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (K-C) sued Defendants First Quality Baby Products, LLC, First Quality Retail Sales, LLC and First Quality Consumer Products LLC (First Quality) for infringement of various K-C patents relating to disposable training pants and the process used to manufacture and assemble them. At issue here is U.S. Patent No. 6,454,751 (the '751 Patent), entitled "Absorbent Articles Having Hinged Fasteners." K-C alleges that First Quality infringed the '751 patent by manufacturing and selling to retailers First Quality's own training pant product covered by one or more of its claims. Presently before the Court is First Quality's motion for summary judgment (ECF No. 532) in which it seeks a determination that Claim 4 of the '751 patent is invalid. For the reasons set forth below, First Quality's motion will be granted. In addition, K-C's related motion for summary judgment of infringement of the '751 patent by First Quality (ECF No. 588) will be denied.

**BACKGROUND**

The '751 Patent relates to "absorbent articles which are adapted to contain body exudates." ('751 Patent col. 1, lns. 5-6.) More specifically, it pertains to pant-like disposable absorbent articles, such as young children's training pants, that have refastenable seams so that they can be easily checked for wetness and removed if an accident occurs. (*Id.* at col. 1, lns. 6-9.) In discussing the background of the invention, the specification notes that disposable training pants for children going through the toilet training stage of development had proved a desirable and useful product. Disposable training pants met the desire of such children to move beyond diapers, which they associated with babies. Disposable training pants have the look and feel of underwear and can be donned by the child "pulling them up" like underwear, as opposed to placing the child on his back in order to fasten the article around him. At the same time, disposable training pants offered the convenience to parents of not having to clean articles of clothing, and sometimes the surrounding area, following the inevitable accidents that occur when a child is first learning to use the toilet. (*Id.* at col. 1, lns. 10-40.)

The '751 Patent, like one of the other patents at issue in this case, sought to add to the convenience of the product by adding fastening components to the seams so that the article could be easily taken apart, inspected, and put back together. If an accident did occur, the fastening components allowed easier removal of the article with less mess than would otherwise result. (*Id.* at col. 1, lns. 30-55.) To achieve this result, the Patent specified "a fastening system that can be repeatedly fastened, unfastened and refastened" such as one using hook and loop fastening elements, *e.g.*, Velcro®. (*Id.* at col. 1, lns. 50-53.) The '751 Patent highlighted what it called its "hinged fasteners", which were intended to allow easy movement or bending conforming with the child's

movement in the hinged area. (*Id.* at col. 1, lns. 55-60.) The hinge consisted of a break in the fastening element so as to increase the flexibility of the material at that particular location. (*Id.* at col. 3, lns. 37-46.)

K-C filed the application for the '751 Patent on November 22, 1999 and the Patent issued on September 24, 2002. (Blevins Decl. Ex. 2, ECF No. 536-2.) Claim 4 of the '751 Patent, which is the specific claim K-C alleges that First Quality's training pants infringes, reads as follows:[1]

> 4. A *disposable absorbent pant* defining a longitudinal axis, front and back longitudinally spaced waist regions, and a crotch region which extends between and interconnects the front and back waist regions, the absorbent pant comprising:
> a liquid permeable bodyside liner;
> a liquid impermeable outer cover bonded to the bodyside liner;
> an absorbent assembly disposed between the bodyside liner and the outer cover;
> *elastomeric side panels bonded to the outer cover in at least the back waist region*;
> a pair of first fastening components disposed on the elastomeric side panels in the back waist region; and
> a pair of second fastening components disposed in the front waist region; wherein:
> the first and second fastening components comprise mechanical fastening elements that are adopted to releasably engage one another to define mating pairs of fasteners and form a waist opening and a pair of leg openings;
> *each of the first and second fastening components has* an inner end edge disposed toward on of the leg openings, an opposite outer end edge disposed toward the waist opening, a length dimension that is generally parallel to the longitudinal axis, a width dimension, *a length-to-width ratio of about 5 or greater*; and
> at least one fastening component of each mating pair of fasteners has at least one hinge area that transversely bisects the at least one fastening component, and *the hinge area is offset* along the length dimension closer to the inner end edge than the outer end edge.

('751 Patent col 17, ln. 43 to col. 18, ln. 11.)

---

[1] The relevant portions of Claim 4 that are the subject of First Quality's motion for summary judgment of invalidity are highlighted for clarity.

3

In its motion for summary judgment, First Quality argues that Claim 4 of the '751 Patent is invalid as anticipated under 35 U.S.C. § 102(b) because every limitation is disclosed in International Patent Application Publication No. WO 97/46197 to Kling et al. (Kling). (Blevin Decl. Ex. 8, ECF No. 536-8.) In addition, or alternatively, First Quality contends that Claim 4 of the '751 Patent is invalid as obvious under 35 U.S.C. § 103(a) over Kling in view of United Kingdom Application Publication No. GB 2,303,045 to Johansson et al.

**LEGAL STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322 (1986). In determining whether to order a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the nonmoving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

## ANALYSIS

Under 35 U.S.C. § 102(b), a patent is anticipated if it was "patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent." Anticipation analysis follows two steps: 1) claim construction and 2) a comparison of the construed claim to the prior art. *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). For a claim to be anticipated, the prior art reference must "describe all of the elements and limitations of the claim in a single reference, and enable one of skill in the field of the invention to make and use the claimed invention." *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1372 (Fed. Cir. 2002) (citing *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378-79 (Fed. Cir. 2001); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989)). Anticipation is a question of fact, and the challenger of the patent's validity has the burden of proving anticipation by clear and convincing evidence. *See Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). I have already construed Claim 4 of the '751 patent (Claim Constr. Order, Jan. 2011, ECF No. 334); therefore, the only remaining issue for analysis is whether Kling describes all the elements and limitations of Claim 4 in a single reference, enabling a person of ordinary skill in the art to make and use the claimed invention.

First Quality argues that Kling anticipates Claim 4 of the '751 patent. Conversely, K-C asserts that Kling does not disclose three elements of Claim 4: a "disposable absorbent pant," "elastomeric side panels," and a fastening component having "a length-to-width ratio of about 5 or

5

greater."[2] The parties agree that Kling was published on December 11, 1997, more than a year before the '751 patent was filed. Thus, Kling satisfies § 102(b)'s definition for prior art.

**1. Disposable Absorbent Pant**

While Claim 4 requires a "disposable absorbent pant," K-C counters that Kling discloses a "disposable diaper." However, Kling is much broader than what K-C's narrower characterization admits. Kling describes "an absorbent article, *such as* a diaper, an incontinence guard or like article, that includes gripping means." (Kling p.1, lns. 1-2 (emphasis added).) Kling goes on to add that "[b]y diaper is meant preferably disposable diapers and openable and re-closable pant diapers and by incontinence guard is meant diapers intended primarily for older children or for adults." (Kling p.1, lns. 28-31.) Kling satisfies Claim 4's requirement of a "disposable absorbent pant" since the prior art reference clearly contemplates application to disposable absorbent *"article[s],"* which includes pants that operate as an incontinence guard for older children. Kling, contrary to K-C's attempt to narrow its scope, is not limited to diapers. Thus, Kling anticipates this element of Claim 4 of the '751 Patent.

**2. Elastomeric Side Panels**

Claim 4 also discloses "elastomeric side panels bonded to the outer cover in at least the back waist region." Figure 1 and the Abstract of Kling disclose elastic side panels as well. Kling

---

[2] First Quality also asserts that the "hinge offset limitation" of Claim 4 of the '751 patent is anticipated by Kling. (*See* First Quality Br. in Supp. of SJ 26-27, ECF No. 533.) The Court does not address this element because K-C has impliedly conceded this point by not addressing the issue in its response brief. The only elements K-C disputes are disclosed by Kling are the disposable absorbent pant, the elastomeric side panels, and the length-to-width ratio elements. (K-C Br. in Opp'n 8-16, ECF No. 575.)

6

Case 1:09-cv-00916-WCG   Filed 09/12/12   Page 6 of 11   Document 803

includes an "elastic pants layer" extending outward from the edges of the "outer material . . . and the barrier layer" so as to "form four corner portions." (Kling p. 13, lns. 20-25 & Fig. 1.) While K-C does not dispute that Kling discloses an elastic material like that included in Claim 4 of the '751 patent, K-C instead focuses on Kling's disclosure of panels. Essentially, K-C argues that Kling's four corner portions are not separate and distinct panels, but are "an integral continuation" of the elastic pants layer that "extend[s] across the entire diaper." (K-C Br. in Opp'n 8, ECF No. 575.) The '751 patent, K-C contends in contrast, discloses side panels that are separately formed structures from the "entire outer cover." (*Id.* at 10.) Furthermore, K-C argues that the structure of the elastic pants layer of Kling cannot be separated into individual panels because the "functionality of the Kling diaper depends upon its unitary construction of an elastic pants layer that spans across the entire area of the diaper." (*See* Butterworth Decl., Ex. A ¶¶ 205-06, ECF No. 578.)

The significance of this line of argument is grounded in the case of *California Medical Products, Inc. v. Tecnol Medical Products, Inc.*, 921 F. Supp. 1219 (D. Del. 1995). That case concerned a patent covering a medical cervical collar used to immobilize a patient's neck, the claims of which called for a collar formed entirely of a single neck encircling band. *Id.* at 1249. A prior art patent disclosed a multiple-piece neck encircling band. *Id.* The *California* court rejected a claim of anticipation because the prior art was structurally different from the patent at issue. *Id.* at 1250.

Here, K-C's reliance on *California* is misguided. First, Claim 4 of the '751 patent does not include a limitation that each side panel must be separate and distinct and cannot comprise a unitary construction like that taught in Kling. Second, Kling teaches an alternative construction whereby the elastic pants layer can "comprise two separate layers" that are then joined or bonded to the

7

barrier layer running the length of the absorbent body portion of the article. In this construction, Kling discloses an elastic pants layer consisting of two separate side panels running the length of the article that is bonded to the outer cover, which would necessarily include the back waist region.

Mr. Butterworth's declaration that the functionality of the Kling diaper depends on its unitary construction may very well be correct; however, Butterworth does not address Kling's alternative method of construction in his declaration. K-C makes reference to a limited portion of Butterworth's deposition testimony in support of its argument that the alternative method of construction of the Kling diaper described in the abstract really is just describing an alternative method of attachment of a single elastic pants layer, not two separate elastic side panels. Kling describes its alternative construction as follows: "Alternatively, it is feasible that those parts of the elastic pants layer 12 shown in Figure 1 that extend laterally outside the barrier layer 9 may comprise *two separate layers* which have been joined between the side-edge parts of the outer material and the barrier layer on respective long sides of the absorbent body 10." (Kling p. 14, lns. 25-31 (emphasis added).) This language is sufficiently broad to indicate a construction of two separate elastic side panels that are bonded to the barrier layer running the length of the absorbent body. Kling thus teaches the construction of an elastomeric side panel that is bonded to the outer cover of the article.

**3. Fastening Element Length-to-Width Ratio Limitation**

Claim 4 includes a limitation where "each of the first and second fastening components has . . . a length-to-width ratio of about 5 or greater." First Quality provides support in its brief that Kling discloses fastening components with a length to width ratio of about 5 or greater. (First

8

Quality Br. in Supp. of SJ 25 (citing Blevins Decl. ¶ 81; Kling Figs. 3 & 7).) K-C does not offer argument that the length-to-width ratio of the fastening elements in Kling is not about 5 or greater, but rather argues that First Quality's expert inappropriately relied upon the figures in Kling to arrive at his conclusion. K-C points to various cases standing for the proposition that patent drawings not drawn to scale may not be used to show particular sizes "if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000); *see also Nysrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005); *Application of Wright*, 569 F.2d 1124, 1127 (CCPA 1977).

It is true that Kling nowhere states that the figures are drawn to scale or that the length-to-width ratio of the fastening elements is about 5 or greater. However, the specification in Kling is not completely silent on the issue of the size and dimensions of the fastening elements. Kling discloses that the gripping means have "essentially the same size and shape" as the fastening elements. (Kling p. 17, lns. 18-19.) The shape of the gripping means is "generally rectangular and elongated" and is sized so as to be "elongated in the longitudinal direction of the diaper." (Kling p. 8, ln. 2 to p. 16, ln. 36.) Because the specification is not silent regarding the general size and dimensions of the fastening elements, First Quality's expert may rely on the figures of Kling to arrive at his conclusion that Kling discloses a length-to-width ratio of the fastening elements of about 5 or greater. *See Hitachi Koki Co. v. Dudas*, 556 F. Supp. 2d 41, 48-49 (D.D.C. 2008). The specification language of the size and shape of the fastening elements in Kling is sufficiently broad to encompass the size and shape limitation of the '751 patent.

Moreover, K-C does not argue that the length-to-width ratio limitation of the '751 patent is somehow crucial to the claimed invention. Therefore, even if the specific length-to-width ratio

9

limitation is not explicitly disclosed by Kling, that Kling does not include a ratio limitation solely limited to about 5 or greater does not preclude anticipation. *See In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990) ("The law is replete with cases in which the difference between the claimed invention and the prior art is some range or other variable within the claims. . . . These cases have consistently held that in such a situation, the applicant must show that the particular range is *critical*, generally by showing that the claimed range achieves unexpected results relative to the prior art range." (citations omitted)); *see also, e.g., Gardner v. TEC Sys., Inc.*, 725 F.2d 1338, (Fed. Cir. 1984). K-C does not make any showing that the length-to-width ratio of the fastening element of the '751 patent is somehow critical in that the claimed ratio achieves unexpected results relative to the prior art's generally stated range. Kling's general size and dimension of its fastening elements as that of a rectangular shape running the length of the panel is broad enough to encompass the '751 patent ratio limitation, thus anticipating this element.

Because Kling is prior art that discloses each and every element of the '751 patent, Kling anticipates the patent rendering it invalid under 35 U.S.C. § 102(b). Moreover, insofar as K-C alleges infringement of the '751 patent by First Quality, these claims fail as a matter of law in light of my conclusions regarding the validity of the '751 patent. Therefore, K-C's motion for summary judgment that First Quality is infringing the '751 patent must be denied.

## CONCLUSION

As discussed above, the '751 Patent is invalid because it is anticipated by prior art, the Kling patent. First Quality's motion for summary judgment of invalidity (ECF No. 532) of the '751 Patent

10

is therefore GRANTED. K-C's motion for summary judgment of infringement (ECF No. 588) of the '751 Patent is DENIED.

Dated this     12th     day of September, 2012.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge