# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, INC.,
and KIMBERLY-CLARK GLOBAL SALES, LLC,

          Plaintiffs,

      v.                                    Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

          Defendants.

---

## DECISION AND ORDER GRANTING FIRST QUALITY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CLAIMS 8-10 OF THE '067 PATENT

---

Plaintiffs Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC (K-C) sued Defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC (First Quality) for infringement of various K-C patents related to disposable absorbent training pants and the process used to manufacture and assemble these training pant products. Before me now is First Quality's motion for summary judgment (ECF No. 555) on its affirmative defense that Claims 8-10 of U.S. Patent No. 6,849,067 (the '067 Patent) are invalid as obvious under 35 U.S.C. § 103(a). For the reasons set forth below, First Quality's motion will be granted. K-C's related motion for summary judgment (ECF No. 611) on its claim that First Quality's product infringes the '067 Patent will be denied as moot.

**BACKGROUND**

Training pants are intended to transition young children from diapers to underwear and to help them with their toilet training. K-C introduced its Pull-Ups® disposable training pants to the market in 1989. Disposable training pants differ from disposable diapers in that they have the appearance of underwear that can be pulled on while the child is standing, unlike an article that must be fastened around the child while he or she is lying down. This is believed to give the child a sense that he or she is no longer a baby and increases motivation for toilet training. At the same time, because they are simply thrown away when accidents occur, disposable training pants offer the convenience of disposable diapers.

K-C's original Pull-Ups® training pants are described in U.S. Patent No. 4,940,464 to Van Gompel, which is owned by K-C. (Van Gompel Patent, ECF No. 558-2.) Van Gompel claimed a disposable incontinence garment or training pant consisting of an absorbable assembly comprised of a liquid-impervious outer cover, a liquid-pervious liner, and an absorbent medium in between. (*Id.* col. 1 lns. 9-12, col. 2 lns. 14-18.) Extending out from the ends of this assembly were front and back stretchable or elastomeric side-panels that were permanently bonded together to form a waist opening and a pair of leg openings. (*Id.* Abstract.) An elastic or other gathering means around the waist and leg openings, along with the elastic side-panels insured that the training pants fit snugly around the waist and crotch area. (*Id.*) Figure 2 in Van Gompel, shown below, provides an illustration of this type of article:



FIG. 2

2

In 2003, K-C introduced to the market a disposable training pant with refastenable side-seams called Pull-Ups® training pants with Easy Open Sides. This product practices the invention claimed in K-C's '067 Patent, entitled "Absorbent Articles With Refastenable Side Seams," which is the subject of First Quality's current summary judgment motion. The '067 Patent has an application date of November 22, 1999, and was issued on February 1, 2005. The primary difference between K-C's original Pull-Ups® training pants and the newer Easy Open Pull-Ups® is that the newer version features seams with hook and loop fastening elements (*i.e.*, Velcro®) along the sides of the training pants as worn by the child. This allows several advantages. When convenient, the training pants can be placed on the child like a diaper without completely removing the child's outer clothing or shoes. ('067 Patent col. 1, lns. 44-48, ECF No. 559-2.) The refastenable seams allow the parent or custodian to easily open the training pants to check for wetness or soiling, and then to close them back up if none is found. In the event of an accident, the refastenable seams also allow for easier removal of the training pants with less risk of a mess. ('067 Patent col. 2, lns. 39-46, ECF No. 559-2.) The following figure from the title page of the '067 Patent shows a disposable training pant that incorporates the refastenable seams:



3

First Quality contends that Claims 8-10 of the '067 Patent, which set forth the refastenable seams, are invalid as obvious in light of K-C's original Pull-Ups® training pant and U.S. Patent No. 4,610,680 to LaFleur (LaFleur). LaFleur was filed on April 29, 1985, and issued on September 9, 1986, and thus constitutes prior art. (LaFleur Patent, Molee Decl. Ex. 15, ECF No. 559-7.) LaFleur discloses a disposable training pant with "overlapping flaps which can be secured to each other by hook and pile fastening straps." (LaFleur Patent, Abstract, ECF No. 559-7.) The problem LaFleur addresses is the difficulty of removing training pants after they become soiled: "In particular, once a garment has become soiled, removal of the garment can substantially increase the spread of soilage, especially since the garment must be pulled over the child's legs." (LaFleur Patent col. 1, lns. 34-37, ECF No. 559-7.) LaFleur purports to solve this problem through several iterations of an openable training pant, thus obviating the need to remove the article by pulling it down over the child's legs. The iteration relevant to our purposes here is LaFleur's disclosure of refastenable seams on the sides of the article, contained in Claims 14-17.

Although LaFleur does not disclose the elastic side-panels that were present in K-C's original Pull-Ups® and are included in independent Claim 8 of the '067 Patent, First Quality contends that combining the two would have been obvious to anyone skilled in the art at the time the application for the '067 Patent was filed. First Quality argues that "because there is no genuine issue of material fact that the combination of the original Pull-Ups with the refastenable seams of the LaFleur Patent was obvious, and that this combination teaches each and every limitation of the asserted claims, summary judgment of invalidity of all asserted claims is warranted." (First Quality's Br. in Supp. of Mot. for S.J. on '067 Patent at 2, ECF No. 556.)

4

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322 (1986). In determining whether to order a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the nonmoving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### A. Patent Validity and Obviousness

A patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on the following underlying factual determinations: "(1) the scope and content of the prior art, (2) the differences

5

between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). Obviousness must be assessed at the time the invention was made and the Court must avoid engaging in hindsight analysis. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 676 F.3d 1063, 1073 (Fed. Cir. 2012) (citing *Ortho-McNeil Pharm., Inc. v. Mylan Labs, Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008)). Once a patent is issued, it is presumed valid, and proof of obviousness needed to overcome this presumption must be clear and convincing. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007). The burden is especially difficult where the patent challenger "attempts to rely on prior art that was before the patent examiner during prosecution." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004).

A patent challenger may assert, as First Quality attempts to do here, that a patent is obvious because a person of ordinary skill in the art could have combined several prior art references to arrive at the claimed invention. In this circumstance, prior to the Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), a party seeking to invalidate a patent as obvious was required to demonstrate that a person of ordinary skill in the art "would have had motivation to combine the prior art references and would have had a reasonable expectation of success in doing so." *Wyers*, 616 F.3d at 1238. *KSR*, however, changed this approach.

> *KSR* . . . instructs courts to take a more "expansive and flexible approach" in determining whether a patented invention was obvious at the time it was made. 550 U.S. at 415, 127 S.Ct. 1727. In particular, the Court emphasized the role of "common sense": "[r]igid preventative rules that deny factfinders recourse to

6

common sense ... are neither necessary under our case law nor consistent with it."
*Id.* at 421, 127 S.Ct. 1727.

*Wyers*, 616 F.3d at 1238. The role of expert testimony regarding motivation to combine, although helpful, and in some cases necessary, is not required to support a determination of obviousness where the technology is "easily understandable." *Id.* at 1240 (citing *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1330 (Fed. Cir. 2009)). Moreover, in appropriate cases, expert testimony regarding motivation to combine, even if present, "will not necessarily create a genuine issue of material fact." *Id.* at 1239 (citing *KSR*, 550 U.S. at 427). "[I]n cases where the content of the prior art, the scope of the patent claim, the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427. Thus, in the appropriate case where the technology is easily understandable and the content of prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, the determination of obviousness may include "recourse to logic, judgment, and common sense, in lieu of expert testimony." *Wyers*, 616 F.3d at 1239 (citing *Perfect Web*, 587 F.3d at 1329; *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009)).

In regard to the subject matter of the '067 Patent at issue here, the parties agree and the Court has found that a person of ordinary skill in the art "is a person with two-to-four years of work experience in product design and testing of disposable absorbent articles such as diapers, training pants, and incontinence briefs." (Order Denying Prelim. Inj. ¶ 28, ECF No. 66.) A person of ordinary skill in the art is attributed with knowledge of relevant prior art. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1318 (Fed. Cir. 2009); *Std. Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454

7

(Fed. Cir. 1985). A patent claiming the "combination of elements of prior art" is likely invalid under 35 U.S.C. § 103(a) as obvious if a person of ordinary skill in the art can "implement a predictable variation" of those elements. *See KSR*, 550 U.S. at 417. A patent "composed of several elements is not proved obvious merely by demonstrating that each of its elements was . . . known in the art," but rather is obvious if "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *Id.* at 419-20. The Supreme Court, in *KSR*, elaborates further:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination [is] obvious to try might show that it was obvious under § 103.

*Id.* at 421. These background principles inform the following analysis of whether the '067 Patent is obvious based upon the original non-refastenable Pull-Ups® pants in view of LaFleur.

## B. Obviousness in View of Prior Art

The fundamental dispute between the parties is whether the LaFleur Patent, in view of K-C's original non-refastenable Pull-Ups® pant, makes obvious the following language of Claim 8 of the '067 Patent: a "pair of refastenable seams extending from the waist opening to each leg opening, each seam disposed between an elastomeric front side panel and an elastomeric back side panel." ('067 Patent Claim 8, ECF No. 559-2.) As stated before, the original Pull-Ups® pants disclose a pair of elastic side panels that feature a bonded seam extending from the waist opening to each leg opening. The obviousness analysis then must focus on whether LaFleur, or any of the other prior art First Quality has cited, discloses a refastenable seam substantially extending from the waist

8

opening to each leg opening, and whether the substitution of the bonded seam contained in the original non-refastenable Pull-Ups® pants with a refastenable seam taught in LaFleur or any other prior art would have been obvious to a person of ordinary skill in the art.

### 1. The Prior Art

LaFleur features a refastenable seam that extends from the waist opening to each leg opening. (LaFleur Patent fig. 5, ECF No. 559-7.) The real question of course is how a person of ordinary skill in the art would understand the entirety of LaFleur's claim language and specifications, including the embodiments. LaFleur describes a training pant that, in one embodiment of the invention, "includes overlapping flaps which can be secured to each other by hook and pile fastening straps." (LaFleur Patent Abstract, ECF No. 559-7.) The overlapping straps "can extend along the sides of the [training pant] between the waist band and each leg band." Claims 14-16 of LaFleur are particularly pertinent to the issue raised here. Claim 14 discloses a "training pant" comprising:

> means for selectively separating said panty member, by separating said waist opening and both said leg bands, said means comprising means for separating said panty member along a first line extending from said waist opening to one of said two leg bands and means for separating said panty member along a second line extending from said waist opening to the other of said leg bands.

(LaFleur Patent Claim 14, ECF No. 559-7.) Claim 15 is dependent on Claim 14 and instructs that "each bifurcating means comprises a first flap portion having an edge at each opposite end, a second flap portion having an edge at each opposite end, and means for detachably securing said edges of said first and second flap portions." (*Id*. Claim 15.) Claim 16 is dependent on 15 and continues that the means "for detachably securing comprises hook and pile fastening means for selectively securing said edges together." (*Id.* Claim 16.)

9

This claim language makes clear that the claimed invention features a pair of overlapping flaps that, with fastening elements, can be secured together to form a seam extending from the waist to the leg opening on each respective side of the article. K-C argues, however, that there is a genuine issue of material fact as to whether the refastenable element in the seam, as taught in LaFleur, actually extends from the waist opening to each leg opening. Relying on the report of its technical expert, G. A. M. Butterworth, K-C argues that the fastening element could be a configuration wherein the fastening elements are only located at the top waist portion and the lower leg opening portion of the seam, with a gap in between. K-C argues that the specification language and claims are silent as to whether the fastening element located on the seam extends, as an unbroken continuous element, from the waist to the leg openings. K-C thus contends there is a genuine issue of material fact as to what LaFleur teaches.

An expert cannot be used to manufacture an issue of fact as to what the prior art teaches when that prior art is clear on its face. Figure 5 of LaFleur, shown here, clearly depicts a refastenable side seam on a disposable training pant. The seam extends the full length between the waist and leg openings. The lower portion of the seam is  partially opened to reveal the hook and pile fastening strips. Nothing in the figure or anywhere else in the specification provides any basis for Butterworth's suggestion that the seam is not continuous as it appears. Indeed, the description of Figure 5 confirms that the seam is continuous and unbroken. The description reads:

10

The overlapping flap portions are sealed together by mating, hook and pile, fastening strips 52 and 54 as previously discussed with respect to FIGS. 3 and 4. As a result, the entire front flap portion 61 of the garment member 60 can be detached from the rear flap portion 63 of the garment member 60 at each side in order to remove the garment when desired.

(LeFleur Patent col. 4, lns. 26-33, ECF No. 559-7.) Figures 3 and 4, both of which are referenced in the description of Figure 5 as illustrating the fastening strips, highlight features of Figure 2, all three of which are shown below.



The seam on the training pant depicted in Figure 3, a side view of which is shown in Figure 4, is continuous and unbroken. This fact is also confirmed in the patent's description of Figures 3:

Referring now to FIG. 3, a resealable garment 10 according to the present invention is formed from a panty member 50 having overlapping flap portions which can be sealed to form a completely enclosed waist band 14 and the leg bands 18 and 20. In the preferred embodiment, the overlapping flap portions of a member 50 are connected by mating, hook and pile fastening strips, such as velcro fastening strips, aligned substantially along the lines 34 and 38, or 34 and 39, as shown in FIG. 2. The fastening strips 52 and 54 provide secure attachment of the overlapping edges of the panty member 50, whereby the waist opening 16 and the leg openings 22 and 24 remain completely enclosed while the garment is being worn.

(LaFleur Patent col. 3, lns. 54-67, ECF No. 559-7.) Further confirmation of the fact that the seam is continuous and unbroken can be seen in the description of Figure 4, which reads: "Referring to FIG. 4, the hook and pile fastening strips 52 and 54 are shown mated together to form a single

11

adhesive layer." (LeFleur Patent col. 4, lns. 5-7, ECF No. 559-7.) Since LaFleur indicates that the fastening strips in Figure 5 work in the same way there as discussed in Figures 3 and 4, it follows that the fastening strips in Figure 5 form continuous and unbroken seams from the waist opening to the leg openings.

In light of the clear and unequivocal depiction in LaFleur of "a pair of refastenable seams extending from the waist opening to each leg opening" ('067 Patent Claim 8, ECF No. 559-2), I conclude that there is no genuine dispute of fact that this feature was disclosed in the prior art with which one skilled in the art would have been familiar. No reasonable jury could find that LaFleur does not teach a refastenable seam extending substantially the length from the waist opening to each respective leg opening. *See Anderson*, 477 U.S. at 249. I therefore turn to whether combining such a refastenable seam to K-C's original Pull-Ups® training pants product would have been obvious to such a person.

## 2. Motivation to Combine

The technology involved in this case, refastenable seams composed of hook and loop fasteners, is not "especially complex" necessitating the opinion of experts. Rather, this is the type of subject matter that the Supreme Court in *KSR* deemed appropriate for summary judgment based on recourse to logic, judgment, and common sense. *See, e.g., KSR*, 550 U.S. at 427 (adjustable vehicle pedal assembly), *Wyers*, 616 F.3d at 1423 (hitch pin locks); *Perfect Web*, 587 F.3d at 1330 (method of managing bulk email distribution); *Ball Aerosol*, 555 F.3d at 993 (candle holder apparatus). Having determined that there are no genuine issues of material fact in dispute regarding the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art, I now consider whether the '067 Patent is obvious in view of logic, judgment, and common sense.

12

I conclude that replacing the bonded seam of K-C's original non-refastenable Pull-Ups® training pants with the refastenable hook and loop seam with overlapping flaps taught in LaFleur would have been obvious to a person with ordinary skill in the art to try. *See KSR*, 550 U.S. at 421.

It is significant that both LaFleur and the '067 Patent sought to address the same problem posed by training pants with permanently bonded seams: the difficulty of removing the pants in the event of an accident or opening them in order to determine if removal was needed. (*Compare* '067 Patent col. 2, lns. 39-46, ECF No. 559-2 *with* LaFleur Patent col. 2, lns. 10-17, ECF No. 559-7.) It is also significant that the solution offered by both patents is the same: a refastenable seam comprised of a hook and loop fastening system extending from the waist opening to each respective leg opening. Although K-C's expert offers the opinion that a person of ordinary skill in the art would not have had motivation to combine LaFleur with K-C's non-refastenable Pull-Ups® training pant, his conclusions are not sufficient to create a genuine issue of material fact, especially in light of a clear example in the prior art of such a person doing just that.

Furthermore, the problem posed by non-refastenable Pull-Ups® training pants was well known by those in the field: namely that bonded seams prevented easy removal of the article except over the child's legs, increasing the risk of spreading soilage. This is exactly the problem that LaFleur sought to address. There are only a finite and limited number of predictable solutions to this problem, one of which was the refastenable seam offered by LaFleur. Logic and common sense would, indeed did, provide the motive to a person of ordinary skill in the art to add a refastenable seam to a disposable training pant.

K-C argues that adding refastenable side-seams to its Pull-Ups® disposable training pants would not have been obvious to one skilled in the art because both Van Gompel and LeFleur teach

13

against doing so. A reference may teach away "when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurely*, 27 F.3d 551, 553 (Fed. Cir. 1994). Generally, a reference may teach away "if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *Id.* A patent does not become nonobvious simply because the product is said to be "inferior to some other product for the same use." *Id.* A reference does not teach away "if it merely expresses a general preference for an alternative invention but does not 'criticize, discredit, or otherwise discourage' investigation into the invention claimed." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2009) (quoting *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004)).

In terms of Van Gompel, K-C argues that the reference teaches away, explaining that a "suitable training pant must be a garment having closed sides so that a child can raise and lower the garment as necessary without requiring the aid of a parent." (Van Gompel Patent col. 1, lns. 42-45, ECF No. 558-2.) K-C also points out that Van Gompel omits any mention of a refastenable seam. That Van Gompel does not include reference to a refastenable seam is a nonstarter as an omission is not the same thing as criticism, discouragement, or discrediting. And although I expressed agreement with K-C's contention that Van Gompel taught away from a refastenable side-seam in my decision denying K-C's motion for a preliminary injunction, upon further consideration, I conclude this is not the case. It is true that Van Gompel teaches closed sides, but the closed sides reference simply emphasizes that the article should function more like an undergarment (*i.e.*, underwear) in order to allow a child to pull on and off the article as needed. Closed sides are not the

14

same as permanently sealed sides. Van Gompel does not suggest that an article with refastenable seams cannot also have closed sides. And to the extent that Van Gompel teaches that training pants must have closed sides, K-C followed that teaching in its manufacturing and marketing of its Pull-Ups® with Easy-Open Sides by developing a process that manufactures and packages its product with the sides pre-fastened so that they have the appearance of training pants, as opposed to diapers, when purchased by the consumer.

K-C also suggests that Van Gompel teaches away because it teaches the use of a bonded butt-type of seam. The implication is that replacing the bonded butt-type of seam taught in Van Gompel with a refastening component comprising a hook and loop fastener taught in LaFleur would be impractical as the seam could come apart too easily and the hooks would be more likely to come in contact with the wearer's skin, causing irritation. Thus, a person of ordinary skill in the art would be discouraged from developing a refastenable seam like that taught in the '067 Patent. These arguments are unavailing. As First Quality points out, they do not rely on a combination of Van Gompel with LaFleur, but rather they solely rely upon a combination of K-C's non-refastenable Pull-Ups® training pants with LaFleur. The product itself does not teach away and, in any event, LaFleur by itself teaches the combination by suggesting the use of a refastenable seam rather than a bonded seam. For these reasons Van Gompel does not teach away from refastenable seams.

K-C also argues that LaFleur teaches away from combining a refastenable seam with its original Pull-Ups®. K-C bases this argument on the fact that LaFleur "describes the use of elastic around the openings of the garment but nowhere suggests that the garment material itself should be elastic." (K-C Opp'n to First Quality Mot. for S.J. at 14, n.5, ECF No. 665.) "By disclosing refastenable seams only on non-elastomeric materials," K-C argues, "LaFleur teaches away from

using such seams on elastomeric side panels." (*Id.*) But the fact that LaFleur does not have elastomeric side panels does not mean it teaches away from combining refastenable seams with such material; it simply means LaFleur does not itself teach both refastenable seams and elastomeric side panels. If it did, K-C's '067 Patent would be invalid as anticipated by LaFleur, rather than merely obvious in light of its original non-refastenable Pull-Ups® and LaFleur. The absence of any mention of elastomeric side panels in LaFleur has no bearing on whether adding refastenable seams to K-C's original Pull-Ups® was obvious.

K-C next argues that even if one skilled in the art would have thought to add refastenable seams, he would not have placed them between the side panels. Instead, K-C argues, "the skilled artisan would have placed them elsewhere, such as on the front of the garment. (*Id.* at 17.) But LaFleur shows refastenable seams between the side panels. (*See* LaFleur Patent, fig. 5, ECF No. 559-7.) In fact, if a main purpose of the invention is to allow easier removal without making a mess, then placement of the refastenable seams on the sides so that the training pants can be opened like a diaper is clearly preferable to placement elsewhere. Not only LaFleur, but disposable diapers in general would suggest that if refastenable seams were to be added, the most appropriate place would be on the sides.

K-C's remaining arguments that adding refastenable seams to a disposable training pant was not obvious to one skilled in the art are likewise unpersuasive. K-C argues, again on the basis of its expert's opinion, that a person of ordinary skill would not have replaced a bonded seam with Velcro® because of the cost of Velcro® relative to the overall cost of manufacturing a garment. If a skilled artisan would have done so, K-C asserts, he or she would have used the least amount possible. Such a person would not have maximized the amount of Velcro® needed by adding seams

16

that extended the entire distance from the waist to the leg openings.  In addition, K-C argues that Velcro® in the 1990s was a comparatively stiff material that would not have seemed suitable for forming a seam.

K-C's argument that a skilled artisan would not have replaced permanent seams with Velcro® because of its expense goes to the question of the economic feasibility of the product, however, and not the technical feasibility.  The distinction is crucial:

> [T]he fact that the two disclosed apparatus would not be combined by businessmen for economic reasons is not the same as saying that it could not be done because skilled persons in the art felt that there was some technological incompatibility that prevented their combination.  Only the latter fact is telling on the issue of nonobviousness.

*Orthopedic Equip., Inc. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983); *see also KSR*, 550 U.S. at 417 (cautioning against rewarding obvious variations precipitated by "design incentives and other market forces"); *Joy Tech., Inc. v. Manbeck*, 751 F. Supp. 225, 232 (D.D.C. 1990), *aff'd*, 959 F.2d 226 (Fed. Cir. 1992) (experts' expressed skepticism was entitled to little weight as evidence of nonobviousness because it "was directed to economic and commercial factors, not the technical merit of [the claimed invention]").  An invention may be obvious in light of the prior art, even though it may not appear to be economically viable at the moment.  More importantly, K-C's argument that no one skilled in the art would have considered replacing the permanent seams of a disposable training pant with Velcro® fastening strips is conclusively refuted by the fact that LaFleur did just that.  What K-C claims one skilled in the art would not do is one of the embodiments clearly depicted in LaFleur.

Based on the foregoing analysis, I conclude that both the original non-refastenable Pull-Ups® training pants and LaFleur are in the same field of endeavor as the '067 Patent.  The combination

of elements of the original Pull-Ups® training pants and LaFleur make the '067 Patent obvious because a person of ordinary skill in the art could implement a predictable substitution of the bonded seam taught in the original Pull-Ups® pants with the refastenable seam taught in LaFleur. Because I conclude that the '067 Patent is obvious in light of LaFleur and K-C's original Pull-Ups® training pant, I find no need to determine whether the other examples of prior art cited by First Quality provide further support for obviousness. Before reaching an ultimate conclusion of obviousness, however, I must consider any countervailing objective factors weighing against a finding of obviousness.

## C. Objective Factors Weighing Against Obviousness

In determining whether a claimed invention is obvious, the Court must consider secondary considerations "such as commercial success of the invention, satisfying a long-felt need, failure of others to find a solution to the problem at hand, and copying of the invention by others" *Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1572 (Fed. Cir. 1996). Such secondary considerations do not control the question of obviousness, however. *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988), *cert. denied*, 493 U.S. 814 (1989). Where the undisputed evidence establishes a strong case for obviousness based upon the primary considerations, summary judgment is appropriate even in the face of secondary considerations that favor the patent holder. *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991); *see also KSR*, 550 U.S. at 427 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."). This is especially the case

18

where, as here, the favorable secondary considerations, to the extent they exist, appear more likely due to factors other than the nonobviousness of the invention.

### 1. Commercial Success & Industry Skepticism

Commercial success is a factor that may weigh against a conclusion of obviousness; however, factors attributable to commercial success other than the novelty of the claimed invention, such as superior business acumen or advertising, are not relevant to obviousness or nonobviousness. *See Solder Removal Co. v. U.S. Intern. Trade Comm'n*, 582 F.2d 628, 637 (CCPA 1978); *Saf-Gard Prod., Inc. v. Serv. Parts, Inc.* 532 F.2d 1266, 1272-73 (9th Cir. 1976). "A nexus must be established between the merits of the claimed invention and evidence of commercial success before that evidence may become relevant to the issue of obviousness." *Solder*, 582 F.2d at 637. K-C contends that it is entitled to a presumption of the required nexus because it has demonstrated the commercial success of its refastenable Pull-Ups® marked with the '067 Patent. (*See* K-C Opp'n to First Quality Mot. for S.J. at 20-21, ECF No. 665.) However, this presumption can only be established where "the marketed product embodies the claimed features, and is coextensive with them." *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). Or, in the case where the patent is not coextensive with the commercially successful product, "the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold." *See Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392-93 (Fed. Cir. 1988).

K-C has come forward with sufficient evidence establishing a nexus between the refastenable seam taught in the '067 Patent and the commercial success of K-C's training pant. (*See* Nov. 16, 2009 Tr. 62:3-63:4, ECF No. 63; Thibault Decl. ¶¶ 16-18, 23-24, ECF No. 11.) Regardless of the

19

established nexus between the commercial success of K-C's training pant and the '067 Patent, however, "the asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J.T. Eaton*, 106 F.3d at 1571 (citing *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) (claims held obvious despite purported showing of commercial success when patentee failed to show that "such commercial success as its marketed system enjoyed was due to anything disclosed in the patent in suit which was not readily available in the prior art")); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) (commercial success is irrelevant if feature driving success is already known in the prior art).

In the case of K-C's refastenable training pant, the use of a refastenable seam to solve the problem presented by non-refastenable training pants was obvious in view of LaFleur; what was not obvious was that K-C would be able to successfully market the product and manufacture it on the scale and at a cost that would make it successful. The commercial success K-C achieved with its Pull-Ups® training pants with Easy Open Sides is not inconsistent with a finding that it would have been obvious to one skilled in the art to add refastenable seams to its original Pull-Ups® product. K-C's commercial success is easily explained by the fact that it was the first to develop a process for mass producing and pre-assembling its refastenable training pants and by the demand created for its new product by its successful marketing effort. It therefore follows that K-C's commercial success is not sufficient to overcome the prima facie showing of obviousness due to the refastenable seam feature known in the prior art.

K-C also argues that skepticism in the industry about the marketability of a refastenable training pant supports a finding of nonobviousness. But as noted above, given the obviousness of

20

the invention, the skepticism seems more likely due to doubts about the economic feasibility of developing a new consumer product based on the invention than the technical feasibility of the invention itself. Indeed, K-C has described the obstacles it faced in designing the machines needed to manufacture its training pants at a rate and cost that would allow it to succeed in the consumer market in connection with the process patents that are also at issue in the case. (Tr. of Hr'g on Mot. for Prelim. Inj. March 25, 2010, P & P Agent. 81:5 - 82:17, 89:1-7, 90:5-17, ECF No. 147.) No doubt, K-C took a significant risk in developing its Pull-Ups® training pants with Easy Open Sides, given the capital investment required to develop a process for manufacturing the product on a commercial scale and the uncertainty of how they would be received in the market. But patent law rewards technical innovation that is not obvious, not commercial risk-taking that is not in the service of such innovation. *See KSR*, 550 U.S. at 427 ("[A]s progress beginning from higher levels of achievement is expected in the normal course, the results of ordinary innovation are not the subject of exclusive rights under the patent laws. Were it otherwise patents might stifle, rather than promote, the progress of useful arts."). Skepticism over whether a product will be commercially successful is of little weight to the question of obviousness. *See Joy Tech.*, 751 F. Supp. 231-32 (evidence of skepticism directed to economic and commercial factors, as opposed to technical merit, does not carry substantial weight), superceded on other grounds as stated in *Teles AG v. Kappos*, 846 F. Supp. 2d 102, 109-10 (D.D.C. Mar. 5, 2012). This argument relates again to the nonobviousness of the commercial success of K-C's refastenable training pants as opposed to the obviousness of the technical innovation of the training pants. Thus, K-C's evidence of skepticism does not weigh in favor of nonobviousness.

21

## 2. Industry Acquiescence

K-C's evidence of acquiescence is too insubstantial to be given substantial weight. Industry acquiescence may give rise to an inference of validity of a patent for the reason that "the failure of others in the industry to infringe the patent or to challenge it in court raises an inference that those who are skilled in the relevant art and who have an economic incentive to challenge the patent have examined it and determined that it is valid." *Jenn-Air Corp. v. Modern Maid Co.*, 499 F. Supp. 320, 324 (D.C. Del. 1980). Circumstantial evidence, such as requests for licences, may support an inference that a patent is valid. *Id.*

K-C offers evidence that five companies have approached K-C for licences. However, K-C does not offer evidence that any of those inquiries related specifically to the '067 Patent. The only evidence K-C offers is testimony of general inquiries related to the "easy-open side family of patents." (Thibault Dep. 45:18, ECF No. 667-2.) Generalized inquiries about licencing without more is insufficient to raise an inference of the validity of the '067 Patent. *See Jenn-Air*, 499 F. Supp. at 326 (stating that inquiries about licences alone are insufficient to support inference of validity because "competitors may have recently made preliminary inquiries and are now in the process of examining the patent and the market to determine the costs and benefits of entering the market and subjecting themselves to litigation."). K-C's refastenable Pull-Ups® pant is marked with more than 10 patents of which the '067 Patent is included. (*See* Schmidt Decl. Ex. I, ECF No. 558-9.) Here, evidence of generalized inquiries of potential licences of patents in the "easy-open side family of patents" is too speculative to support an inference that those skilled in the art have specifically examined the '067 Patent and determined that it is valid. Therefore, K-C's evidence of inquiries for licences is not of substantial weight to overcome the primary evidence of obviousness.

22

Even if the evidence of industry acquiescence was stronger, the result would not change. Again, there can be industry acquiescence for reasons other than the belief on the part of competitors that the patent at issue is valid. Litigation over the validity of a patent is expensive and time-consuming, especially when the patent is owned by a company with the resources of K-C. Further, in order to offer its own brand of refastenable training pants, a competitor would have to do more than finance a successful challenge to the validity of the patent. Such a competitor would also have to invest the time and resources required to design and construct the machinery needed to manufacture and package the product at a volume, rate and cost necessary to allow it to compete with K-C's product in the consumer market. There are only a limited number of companies with the resources and expertise to undertake such an investment. The fact that only one (First Quality) has done so is hardly evidence that the industry is convinced the '067 Patent is valid.

### 3. Long Felt but Unresolved Need & Failure of Others

K-C's arguments in regard to the factors indicating long felt but unresolved need and failure of others again confuses the distinction between resolving a problem through technical innovation and successfully marketing that innovation to consumers. Evidence of failure of others may carry "significant weight in an obviousness inquiry." *Cyclobenzaprine*, 676 F.3d at 1081. The inference of failure of others is similar to the rationale for industry acquiescence: failure of others to develop the claimed invention supports the inference that the invention is nonobvious. K-C points out that its refastenable training pants are the first to be successfully produced on a commercial scale. Because LaFleur was never commercially adopted, K-C argues LaFleur's lack of commercial success is evidence of failure. But this argument is a non sequitur. LaFleur itself is indication of success

23

on the technical merits of a refastenable seam. The lack of commercial adoption on a mass scale of the innovation disclosed in LaFleur does not undermine LaFleur's success on the technical merits.

K-C also contends that the fact that Tyco (First Quality's predecessor) considered making a refastenable training pant, but later abandoned its efforts, is also evidence of failure of others. (*See* Joyce Email Ex. 12, ECF No. 667-4.) This evidence is not sufficient to support an inference that the claimed innovation of the '067 Patent is nonobvious. The only thing this evidence supports is that Tyco *considered* a refastenable training pants design, but decided to cancel its development project. The evidence does not show that Tyco failed, on the technical merits, to design a refastenable seam on the side. It equally may be true that Tyco determined not to move beyond initial planning stages for business reasons unrelated to the technical difficulty of designing refastenable training pants.

Lastly, K-C argues that its refastenable training pants filled an unresolved need, namely training pants that could be removed without increasing the spread of soilage. But the disposable training pants market only came into existence less than thirty years ago, and by that time LaFleur had already resolved the problem the '067 Patent addresses. Moreover, K-C has offered no evidence that there existed, prior to the appearance of its Pull-Ups® brand training pants with the Easy Open Sides, an unresolved need for which consumers were anxiously awaiting an answer. The fact that K-C's product was so successful, as suggested above, is more readily attributable to its successful marketing program than any long-felt but unresolved need.

### 4. Copying & Praise by Others

K-C also highlights a design concept comparison spreadsheet arguing that this evidence supports a finding that First Quality copied K-C's training pants design and thus, the evidence shows

Case 1:09-cv-00916-WCG   Filed 09/29/12   Page 24 of 26   Document 804

nonobviousness. (Product Comparisons Ex. 17, ECF No. 667-8.) While this evidence of copying can support an inference of nonobviousness, this evidence does not serve to outweigh the strong primary evidence that a refastenable training pant design was known in the prior art as exemplified by LaFleur. *See Bush Indus., Inc. v. O'Sullivan Indus., Inc.*, 772 F. Supp. 1442, 1458 (D. Del. 1991) (citing *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768-69 (Fed. Cir. 1988)). There is strong evidence that the refastenable feature itself is obvious because a person of ordinary skill in the art could have predictably substituted the bonded seam of K-C's original Pull-Ups® training pants for the refastenable seam taught in LaFleur. The solution to the problem of spreading soilage for training pants was clearly presented in LaFleur: refastenable seams at the sides. Although First Quality may have copied K-C's training pants design, this evidence does not support nonobviousness in light of the prior art. K-C's arguments regarding evidence of praise by others fails for the same reason in that K'C's evidence of praise also cannot overcome the strong evidence of obviousness illustrated by the prior art.

Because non-refastenable Pull-Ups® training pants and LaFleur are prior art, and the subject matter of the '067 Patent when viewed as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made, the '067 Patent is invalid pursuant to 35 U.S.C. § 103(a). Insofar as K-C alleges infringement of the '067 Patent by First Quality, these claims fail as a matter of law in light of my conclusions regarding the validity of the '067 Patent. Therefore, K-C's motion for summary judgment of infringement of the '067 Patent must be denied.

## D. K-C's Motion for Leave to File a Sur-Reply

K-C filed a motion (ECF No. 799) for leave to file a sur-reply to First Quality's supplementation of its motion for summary judgment of invalidity of the '067 Patent on the ground

that First Quality raises new arguments in its reply brief (ECF No. 798) and First Quality makes factual and legal misrepresentations K-C wishes to correct. K-C's motion primarily relates to arguments concerning the '376 Publication and whether it renders the '067 Patent obvious in light of Van Gompel. Because I conclude that the '067 Patent is obvious in view of K-C's original non-refastenable Pull-Ups® training pants and LaFleur, and do not ground my decision on the '376 Publication, K-C's arguments are largely irrelevant. K-C's motion is granted insofar as I have considered K-C's arguments for the basis of this opinion.

## CONCLUSION

For the foregoing reasons, the '067 Patent is invalid as obvious under 35 U.S.C. § 103(a) in view of K-C's non-refastenable Pull-Ups® training pants over LaFleur. First Quality's motion for summary judgment of invalidity (ECF No. 555) of the '067 Patent is therefore GRANTED. K-C's related motion for summary judgment of infringement (ECF No. 611) of the '067 Patent is DENIED as moot. In addition, K-C's motion for leave to file a sur-reply in opposition (ECF No. 799) is GRANTED and the Clerk shall detach and efile the sur-reply.

Dated this   28th   day of September, 2012.


                                        s/ William C. Griesbach
                                        William C. Griesbach
                                        United States District Judge

26