UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK, INC. and
KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

    v.                                                                  Case No. 09-C-916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

      Defendants.

**DECISION AND ORDER GRANTING FIRST QUALITY'S MOTION
FOR SUMMARY JUDGMENT ON '119 PATENT**

Plaintiffs Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC (K-C) sued Defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC (First Quality) for infringement of various K-C patents related to disposable absorbent training pants and the process used to manufacture and assemble these training pant products. Before me now are three motions related to K-C's U.S. Patent No. 6,307,119 (the '119 Patent). K-C filed a motion for summary judgment that Claims 18, 19, 20, 29, and 31 of the '119 Patent are not anticipated by prior art (ECF No. 596) and a motion for summary judgment of infringement of the '119 Patent by First Quality (ECF No. 592). First Quality in turn filed a motion for summary judgment that the aforementioned claims of the '119 Patent are anticipated by prior art (ECF No. 622). For the reasons set forth below, First Quality's motion will

be granted. Further, K-C's related motions for summary judgment of First Quality's infringement and that the claims of the '119 Patent are not anticipated will be denied.

**BACKGROUND**

The '119 Patent, filed on June 15, 1999, concerns absorbent articles that include a wetness indicator. The claimed invention discloses a permanent character graphic that does not change and an active object graphic that can either appear, disappear, or change color when coming in contact with liquid. In addition, the invention discloses a "visual segmentation element" that serves to separate into two zones the permanent graphics and the active object graphics. In other words, there is some visual feature of the article that clearly separates the active object graphics and the permanent graphics. The visual segmentation element may be composed of a graphic, material, or structure that serves as a visual marker separating the permanent graphics from the active object graphic. Thus, conceivably, something as simple as a line stitched of black thread could serve as the visual segmentation element separating the permanent graphics from the active graphics. Claim 18 is representative of the enumerated claims at issue, and the primary limitation relevant to this decision is highlighted below:

> An absorbent article comprising:
> an outer cover having an interior surface and an opposite exterior surface;
> an absorbent assembly disposed on the interior surface;
> a permanent character graphic disposed on the outer cover;
> an active object graphic disposed on the outer cover;
> **a visual segmentation element disposed between the permanent character graphic and the active object graphic**;
> wherein the absorbent article defines a longitudinal centerline and the permanent character graphic and the active object graphic are longitudinally separated by about 20 millimeters or more.

('119 Patent, ECF No. 595-6 (emphasis added).)

First Quality contends that three prior art references anticipate the '119 Patent: the Timmons Patent, the Walgreens Diaper, and the Levy Patent. All three prior art references disclose absorbent articles with a wetness indicator. The Timmons Patent uses printed graphics of blocks with various letters of the alphabet printed on the respective faces of the blocks. (Timmons Patent fig. 5, ECF No. 599-4.) The letters are active object graphics that disappear when coming in contact with liquid whereas the block graphic outline is permanent. (*Id.* col. 3 lns 41–46, ECF No. 559-4.) The Timmons Patent is not solely limited to the use of alphabet blocks, but contemplates the use of a "variety of decorative patterns" with a portion of the pattern comprising a permanent graphic element and another portion comprising an active element. (*Id.* col. 3, lns. 57-61, ECF No. 599-4.) The graphic element may be dispersed across the entire article or only in limited areas. (*Id.* col. 6, lns. 19-26.)

The Walgreens Diaper, first sold around August 1994, discloses an absorbent article similar in many respects to the Timmons Patent. Walgreens contains permanent balloon graphic outlines dispersed across the body of the article. (Kolz. Decl. Ex. E, ECF. No. 599-5.) Each balloon contains a smiley face on the inside of each balloon outline. (K-C Resp. SOF ¶¶ 99-107, ECF No. 699.) The smiley face graphic is the active object while the balloon graphic outline is permanent. These smiley face graphics disappear when coming in contact with liquid. In addition, there is a so-called plastic "landing strip" near the waist of the article. On this "landing strip" are solid colored balloons that do not contain an active object graphic. The "landing strip" extends a short distance from the waist of the article, but not to the center of the diaper. (*Id.*)

Lastly is EP App. Pub 0148115 (the Levy Patent), which was published on July 10, 1985. (Levy Patent, ECF No. 599-6.) The Levy Patent discloses a graphic of Mickey Mouse. (*Id.* fig 4.)

A significant portion of the Mickey Mouse graphic is permanent, but his left arm is an active object graphic. (K-C Resp. SOF ¶¶ 108-19, ECF No. 699.) When the article is dry, Mickey Mouse has his right arm on his right hip and his left arm in a raised position over his head. (*See* Levy Patent fig. 4, ECF No. 599-6.) Upon becoming wet, the raised left arm disappears while a new left arm appears in a new position on his left hip. (*Id.* fig. 3.) In addition, Mickey Mouse's facial expression changes from a happy face to a sad face upon becoming wet. (*Id.* figs. 3 & 4.) Thus, the changing features of Mickey Mouse serve as a wetness indicator. (K-C Resp. SOF ¶¶ 120, ECF No. 699.)

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322 (1986). In determining whether to order a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the nonmoving party, there is no genuine

issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

Under 35 U.S.C. § 102(b), a patent is anticipated if it was "described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent." Anticipation analysis follows two steps: 1) claim construction and 2) a comparison of the construed claim to the prior art. *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). For a claim to be anticipated, the prior art reference must "describe all of the elements and limitations of the claim in a single reference, and enable one of skill in the field of the invention to make and use the claimed invention." *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1372 (Fed. Cir. 2002) (citing *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378-79 (Fed. Cir. 2001); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989)). Anticipation is a question of fact, and the challenger of the patent's validity has the burden of proving anticipation by clear and convincing evidence. *See Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). The burden is especially difficult where the patent challenger "attempts to rely on prior art that was before the patent examiner during prosecution." *Glaxo*, 376 F.3d at 1348.

The Timmons and Levy Patents were before the patent examiner during prosecution. (Becker Decl. Ex. F, ECF No. 595-6.) I have construed the pertinent claims at issue (ECF No. 334) and the following chart illustrates my construction of the claim language pertinent to this decision.

5

| Claim No. | Claim Language | Court Construction |
|---|---|---|
| 18, 19, 20, 29, 31 | visual segmentation element | visually distinguishable feature that separates the exterior of the absorbent article into two or more zones, and in particular into at least one training zone including the active object graphics and at least one character zone including the permanent character graphics |
| 18, 19, 20, 29, 31 | a visual segmentation element disposed between the permanent character graphic and the active object graphic | visually distinguishable feature that separates the exterior of the absorbent article into two or more zones, and in particular into at least one training zone including the active objects and at least one character zone including the permanent character graphics, disposed between the permanent character graphic and the active object graphic |

The parties agree that Levy Patent contains each and every limitation contained in the '119 Patent with the exception of the visual segmentation element.[1] Thus, the only issue relevant to K-C and First Quality's motions regarding anticipation is whether the prior art references, the Timmons Patent, the Walgreens Diaper, or the Levy Patent, discloses the "visual segmentation element" limitation of the '119 Patent.

First Quality argues that the only difference between the prior art and the '119 Patent is the printed graphic elements, and therefore the printed matter doctrine applies. Under the printed matter doctrine, printed matter on its own is not considered "manufacture" and thus does not fit within the statutory classes of patented subject matter. *See* 1-1 CHISUM ON PATENTS § 1.02[4] (2012). As is

---

[1] First Quality argues that Timmons, Walgreens, and Levy contain each and every claim limitation whereas K-C argues that Timmons and Walgreens do not disclose the "visual segmentation element" as well as a permanent character graphic as the term was construed in my claim construction order. (K-C Br. in Opp'n 8, ECF No. 698). K-C, however, does not dispute that the Levy Patent discloses each limitation of the '119 Patent with the exception of the "visual segmentation element."

common in many areas of the law, there is an exception to this ban on patenting print matter. The exception relates to situations where there is some functional relationship between the printed matter and the substrate material of the product. *See e.g., In re Gulack*, 703 F.2d 1381 (Fed. Cir. 1983) (holding that numbers printed on circular band were patentable because printed numbers exploited circular nature of band to achieve its educational purpose).

The early case of *In re Miller*, 418 F.2d 1392 (CCPA 1969), presents a simple illustration of the application of this exception. The patented subject matter in *Miller* concerned a measuring cup and measuring spoon. The measuring cup displayed a series of printed marks on the article to indicate various measurements familiar to cooks (*i.e.*, 1 cup, ½ cup, etc.). *See id.* at 809-11. The claimed innovation related to the cup's "false" display of various measurements. For example, if a cook wanted to make a half recipe for a cake, they could use a cup designated for a half recipe. *Id.* at 810 fig. 2. The measurement indicated on the cup for "2 Cups" would, in reality, be volumetrically equivalent to 1 cup. *Id.* at 810. In this sense the printed data was usefully "false" since the cook would not need to make any measurement conversion on his or her own. *Id.* at 813. Therefore, the printed matter on the cup had a functional relationship to the utility of the product and was patentable. *Id.*

In the present matter, the '119 Patent discloses an absorbent article with a wetness indicator. As is readily illustrated by Timmons, Walgreens, and Levy, these types of articles featuring a wetness indicator were well known in the prior art. Certainly, there is a functional relationship between the printed graphics and the substrate which is the indication of wetness. *See Gulack*, 703 F.2d at 1386. But unless the '119 Patent discloses a novel, unobvious functional relationship between the printed graphics and the substrate that was not present in the prior art, then it must be

7

anticipated. First Quality argues that the '119 Patent does not disclose a new and unobvious functional relationship beyond the wetness indicator that was already present in the prior art and therefore the '119 Patent is anticipated. K-C's central argument, in contrast, is that the visual segmentation element is not subject to the printed matter doctrine. If it is subject to the doctrine, K-C asserts that the limitation serves as the novel and unobvious functional relationship between the print and the prior art, falling under the exception enunciated in *Gulack*. For our purposes here, there are two questions to consider: 1) whether the visual segmentation element, if it is composed of a structure or material, can still be considered printed matter subject to the printed matter doctrine, and 2) if it is, whether the visual segmentation element discloses a new and unobvious functional relationship between the printed matter and the substrate.

### 1. Printed Matter

Fundamentally, K-C's first argument hinges on a technical application of the rules regarding anticipation, namely that each and every limitation of the '119 Patent must be present in a single prior art reference to be anticipated. To this end, K-C points out that the visual segmentation element is not limited solely to the use of graphic printed matter, but can also be composed of any structure or material that serves to form a visually distinguishable feature. CHISUM ON PATENTS notes that "the printed matter rule and its exception extend beyond printed information to information recorded in any substrate or medium." 1-1 CHISUM ON PATENTS § 1.02[4] (2012) (citing *In re Lowry*, 32 F.3d 1579 (Fed. Cir. 1994); *In re Jones*, 373 F.2d 1007 (CCPA 1967); *Ex parte Jenny*, 130 USPQ 318 (Pat. Off. Bd. App. 1960)). The visual segmentation element, whether comprised of a graphic, a material, or a structure, serves an informational purpose which is to provide a visual separation between the permanent graphics and the active object graphics. The

8

arrangement of the visual objects into two or more zones is an informational device that only has a meaning useful and intelligible to the human mind. *See In re Lowry*, 32 F.3d at 1583 (printed matter is that which is "useful and intelligible only to the human mind"). K-C's argument that the visual segmentation element cannot be considered printed matter because it is not solely limited to print invites a narrow and erroneous conception of what can be considered "printed matter" under the printed matter doctrine. As noted above, the printed matter rule extends "beyond printed information" to information recorded in "any substrate or medium." *See also King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1278-79 (Fed. Cir. 2010) ("Although . . . 'printed matter' cases involved the addition of printed matter, such as written instructions, to a known product, we see no principled reason for limiting their reasoning to that specific factual context."). The visual segmentation element, whether it is comprised of a structure or material, is visual information recorded in a substrate and is functionally equivalent to printed matter. The principle reasoning of the printed matter doctrine therefore applies to the facts of this case. *See id.*; 1-1 CHISUM ON PATENTS § 1.02[4].

**2. New and Unobvious Functional Relationship between Print and Substrate**

Having determined that the visual segmentation element is subject to the printed matter doctrine, the next question is whether there "exists any new and unobvious functional relationship between the printed matter and the substrate." *In re Gulack*, 703 F.2d at 1386. Here again, *Miller* is helpful. The patent in *Miller* did not claim the invention of a measuring cup, but claimed an innovative measuring cup, containing new, functional measurement conversions useful for cooks. The '119 Patent discloses another absorbent article with a wetness indicator, which as exemplified by Timmons, Walgreens, and Levy, is not new. K-C argues that the visual segmentation element

9

provides a distinguishing feature that is novel and unobvious because it serves a new functional interactive and educational purpose as a training tool. (K-C Br. in Opp'n 14-15.) Without the visual segmentation element and the graphics, the training pants cannot serve its training purpose, allowing a caregiver to communicate with a child about why the graphics have changed. In other words, the educative and interactive function of the article is a wetness indicator which allows a caregiver to explain to a child why the graphics have changed.

In comparison, the Levy Patent illustrates a graphic of Mickey Mouse that visually changes upon becoming wet. There is the same educative and interactive function of a wetness indicator illustrated by communication of visual information that allows for interaction between a caregiver and a child about why the graphic has changed. The '119 Patent claims clearly disclose an absorbent article featuring a permanent graphic and an active object graphic, which are all present in the prior art reference of Levy. The most that can be said for the '119 Patent is that it dictates a particular arrangement of the permanent and active object graphics, providing for a clear separation of the two graphic types into distinct zones. However, the '119 Patent is still not conveying any new functionality beyond a wetness indicator which was already present in each prior art reference. Levy further discloses a functional relationship between the permanent and active graphics and the substrate, which is that of a wetness indicator.

In addition, K-C contends that the '119 Patent discloses a functional relationship between the permanent graphics, the active graphics, and the visual segmentation element, which is an interactive training tool. K-C's arguments about the functional interactive training tool provided by the visual segmentation element, although they may be correct, do not serve to distinguish it from the prior art. The Levy Patent also provides the visual tool of a wetness indicator, illustrated by the

Mickey Mouse character, that can serve as an interactive training aid for children. Unlike the measuring cup in *Miller*, the '119 Patent offers no new functional utility that was not already present in Levy. Moreover, K-C offers no evidence or argument about how the visual segmentation element is functionally separate from the same functional training aid offered by Levy. Because there is no limitation contained in the '119 Patent serving to distinguish it from Levy, it is anticipated.

Thus, Claims 18, 19, 20, 29, and 31 are anticipated by the prior art and are invalid under 35 U.S.C. § 102(b). Moreover, insofar as K-C alleges infringement of the '119 patent by First Quality, these claims fail as a matter of law in light of my conclusions regarding the validity of the '119 patent. Therefore, K-C's motion for summary judgment that First Quality is infringing the '119 patent must be denied.

## CONCLUSION

For the reasons stated above, the '119 Patent is invalid because it is anticipated by the Levy Patent. First Quality's motion (ECF No. 622) for summary judgment of invalidity of the '119 Patent is therefore GRANTED and K-C's related motion (ECF No. 596) for summary judgment that the '119 Patent is not anticipated is DENIED. In addition, K-C's motion (ECF No. 592) for summary judgment of infringement of the '119 Patent is DENIED.

Dated this   28th   day of September, 2012.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge