# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, INC., and
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

    v.                                      Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

        Defendants.

## DECISION AND ORDER DENYING FIRST QUALITY'S MOTION FOR SUMMARY JUDGMENT ON VALIDITY OF '939 PATENT

Plaintiffs Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC (K-C) sued Defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC (First Quality) for infringement of various K-C patents related to disposable absorbent training pants with refastenable side seams and the process used to manufacture and assemble them. Before me now is First Quality's motion for summary judgment (ECF No. 537) that Claims 12, 13, 19, 29, and 30 of U.S. Patent No. 7,156,939 (the '939 Patent) are invalid as anticipated under 35 U.S.C. § 102 and obvious under 35 U.S.C. § 103. For the following reasons, First Quality's motion will be denied.

### BACKGROUND

The '939 Patent discloses "a method and apparatus for securing engagement between fastening components of a pre-fastened garment upon initial assembly thereof." ('939 Patent,

Abstract, ECF No. 573-2.) The fastening components of a disposable garment, such as a child's training pant, are attached to the front and back side panels during manufacture. The fastening components are engaged, and the training pant is pre-fastened in the course of the manufacturing/assembly process. The specific process disclosed in the '939 Patent is concerned with strengthening the seam created by the engagement of the fastening components. The fastening components of such garments are typically hook and loop fasteners, such as VELCRO®, which are brought together to form an engagement seam. The '939 Patent teaches a method of tensioning the assembled article so as to generate a sheer stress at the seam and thereby promote increased engagement between the fastening components so as to enhance the strength of the seam. Figure 24 from the '939 Patent, partially shown below, depicts one embodiment of the process.



A prefastened training pant is shown between upper and lower vacuum conveyors 732, 734 with the front and back side panels 34, 134 pulled taut while being tucked between the front and back waist regions of the training pants. The tucking blade 744 contacts the back side panel 134

2

as the training pant is conveyed past the station which exerts a shear stress on the engagement seam 88. The specification explains: "As a result, oppositely directed pulling forces, as indicated by the direction arrows, are applied to the fastening components 82, 84 to generate shear stresses at the engagement seam." ('939 Patent col. 35 lns. 26-29.) The application of shear stresses in this manner is believed to "increase the engagement strength between fastening components . . . ." ('939 Patent col. 1 lns. 51-52.)

First Quality's central argument in support of its motion for summary judgment is that independent Claim 12 of the '939 Patent, and Claims 13, 19, and 29, which depend from it, are anticipated by International Publication No. WO 98/15248 ("Lindqvist"). In addition, First Quality argues that dependent Claim 30 is obvious in light of U.S. Patent Nos. 5,788,805 ("Hermann") and 4,739,910 ("Westphal"). First Quality also argues in the alternative that Claims 12, 13, 19, 29, and 30 of the '939 Patent are invalid as anticipated by U.S. Patent No. 6,776,316 (the '316 Tucking Patent), which is also owned by K-C.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no

facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A. Anticipation by Lindqvist**

Under 35 U.S.C. § 102(b), a patent is anticipated if it was "patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent." Anticipation analysis follows two steps: 1) claim construction and 2) a comparison of the construed claim to the prior art. *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). For a claim to be anticipated, the prior art reference must "describe all of the elements and limitations of the claim in a single reference, and enable one of skill in the field of the invention to make and use the claimed invention." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1372 (Fed. Cir. 2003) (citing *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1378-79 (Fed. Cir. 2001); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989), abrogated on other grounds by *eBay Inc. v. MercExchange, LLC*, 574 U.S. 388, 391 (2006)). If an independent claim is not anticipated by prior art, then the claims that depend from the independent claim cannot be anticipated as a matter of law. *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1256 n.4 (Fed. Cir. 1989) ("Because we conclude that claim 1 is not anticipated, claim 2, which is dependent on claim 1, need not be separately discussed."); *RCA Corp.*

4

*v. Applied Digital Data Sys., Inc.*, 730 F.2d 1440, 1446 (Fed. Cir. 1984) ("Since claim 3 of the Cole patent is dependent upon claim 2, which is not anticipated, claim 3 cannot be anticipated."). However, each claim of a patent is presumed valid. Thus, dependent claims are presumed valid even if the independent claim from which they depend is found to be invalid. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 24 (Fed. Cir. 2000). Anticipation is a question of fact, and the challenger of the patent's validity has the burden of proving anticipation by clear and convincing evidence. *See Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). The burden of proving invalidity is "especially difficult" where, as here, the prior art on which the defense rests was itself before the Patent Office during the prosecution of the patent at issue. *Glaxo Group*, 376 F.3d at 1348.

The application for the '939 Patent was filed on May 30, 2002. Lindqvist was published April 16, 1998, four years prior to the filing date of the '939 Patent. Therefore, Lindqvist is prior art under 35 U.S.C. § 102(b) as to the '939 Patent. Claim 12 of the '939 Patent reads:

> 12. A method for making a pre-fastened garment comprising an absorbent chassis having a front waist region, a back waist region and a crotch region extending longitudinally therebetween, a front side panel extending laterally outward from the front waist region, a back side panel extending laterally outward from the back waist region, the front side panel having a fastening component adapted for fastening engagement with a fastening component of the back side panel, said method comprising:
>
>> arranging the front and back side panels relative to each other such that the respective fastening components thereof are in at least partially opposed relationship with each other;
>>
>> engaging the fastening components with each other to define an engagement seam; and
>>
>> mechanically handling the garment to generate a shear stress at the engagement seam to promote increased engagement between the fastening

5

components while one of stretching at least one of the fastening components
and maintaining the fastening components in a generally relaxed condition.

('939 Patent col. 36 l. 59 to col. 37 l. 12.) The key limitation of Claim 12 is the requirement that "the mechanical handling of the garment "generate a shear stress at the engagement seam." First Quality claims that Lindqvist discloses the same limitation.

Lindqvist discloses a method for "maintaining a fastening tab (20) of a hook and loop fastener system in a storage position on an article, such as a disposable diaper (10)." (Butterworth Decl. Ex. 4 (Lindqvist Abstract), ECF No. 573-4.) Unlike training pants, disposable diapers are not pre-fastened but are fastened when placed on the child after purchase by the child's parent or caregiver. The child is laid on his or her back on top of the diaper, and the diaper is then folded between the child's legs. The sides are then brought together and fastened around the child's hips. To prevent the fastening tabs of such a diaper from fouling machinery as the diaper moves along the production line for ease of handling by the consumer, Lindqvist teaches a method for maintaining the fastening tabs of a diaper in a storage position with the tab folded over. Once folded over, the loop fastener contacts a material having hoop fasteners that hold it in place. The annotated version of Figure 3 of Lindqvist shown below is taken from K-C's brief and depicts a fastening tab of a diaper folded over in the storage position. (ECF No. 580, at 9.) As part of the method of maintaining the fastener system in the "storage position," Lindqvist discloses a process to improve the connection between the hook and loop fastening components. Lindqvist offers a solution where "the hook members . . . and



6

the surface of the article [containing the loop members] are subjected to a relative displacement in a direction substantially parallel to the surface of the article." (Lindqvist, ECF No. 573-4.)



To accomplish this, Lindqvist devises, in one embodiment shown here in Figure 9, also taken from K-C's brief (ECF No. 580, at 10), an apparatus that consists of a male roller 46 and female roller 48 through which the prefastened hook and loop seam is passed through, subjecting the prefastened seam to "relative displacement."[1] (Lindqvist p.12 lns. 4-23, p. 12 l. 34 to p.13 l. 10, ECF No. 573-4.) First Quality contends that the "relative displacement" in Lindqvist meets the shear stress limitation of the '939 Patent.

In a previous ruling on K-C's motion for a preliminary injunction, the Court found that First Quality was not likely to prevail on its claim that the '939 Patent was anticipated by Lindqvist. The Court gave two reasons for its conclusion. First, the Court found that whereas the '939 Patent taught promoting engagement of the fasteners by generating a shear stress at the engagement seam, Lindqvist used compression or bending force on the fastener to cause "a relative displacement" of the hook members "in a direction substantially parallel to the surface of the top sheet."

---

[1] Lindqvist also discloses a number of alternative designs of apparatuses for achieving the "relative displacement" of the fastening components when they are engaged. (*See* Lindqvist p. 14 lns. 21-24, p. 15 lns. 18-34 & figs. 12A-12J, ECF No. 573-4.)

7

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 714 F. Supp. 2d 919, 935 (E.D. Wis. 2010), affirmed in part and vacated in part, 431 Fed. Appx. 884 (Fed. Cir. June 1, 2011). Earlier in the decision, the Court had determined that the term "shear stress" meant a force "generally parallel to the face of the material and pulling in opposite directions." *Id.* at 927. Based on the different type of forces or stresses used, the Court concluded that Lindqvist did not anticipate the '939 Patent. *Id.* at 935. As a second reason, the Court noted that whereas the '939 Patent taught the generation of a shear force at the engagement seam to generate increased engagement between the fastening components, Lindqvist used compression force to maintain the fastening component in a storage position, where there is no need to promote increased engagement between fastening components. *Id.*

Following the *Markman* hearing, the Court adopted a narrower construction of the term "shear stress" and held that it meant "a force generally parallel to the face of the material," leaving out the limitation of "pulling in opposite directions." (ECF No. 334, at 21.) On the basis of this broader construction, the Federal Circuit concluded on the appeal from the Court's decision granting K-C's motion that the Court had "substantially enhanced First Quality's argument that the force generated by the mating of the rollers in Lindqvist qualifies as a "shear stress" as defined by the '939 patent." 431 Fed. Appx. at 892. In particular, the Federal Circuit noted that Lindqvist states: "the *relative displacement* of the hook members and the surface of the article *in a direction substantially parallel to* the surface of the article causes the hook members to 'jiggle' between the fibers and loops of the surface material and become snagged thereon." *Id.* (quoting Lindqvist p. 9 lns. 3-6) (emphasis in original). Without the limitation "pulling in opposite directions," the Federal Circuit held, "[t]he language in Lindqvist encroaches upon the definition of shear stress

8

provided by the district court in its January 20, 2011 claim construction order (i.e., 'force generated parallel to the face of the material')." *Id.* As for the second reason provided by the Court for its ruling, the Federal Circuit found that the Court had erred in focusing on the storage characteristics of the Lindqvist system, as opposed to "Lindqvist's explicit statement that subjecting the hook and loop system to a relative displacement 'significantly increased retention force between the hook members . . . and the topsheet." 431 Fed. Appx. At 892 (quoting Lindqvist p.9 lns. 6-12). The Federal Circuit therefore concluded that First Quality's argument that Lindqvist anticipated '939 Patent did not lack substantial merit and that this Court had abused its discretion in granting K-C a preliminary injunction on the '939 Patent. *Id.* at 892-3.

First Quality argues from the Federal Circuit's decision partially vacating this Court's decision granting K-C's motion for a preliminary injunction that the Federal Circuit has rejected K-C's argument that the '939 Patent is not anticipated by Lindqvist. But as K-C points out, the Federal Circuit only found that First Quality's invalidity defense based on Lindqvist did "not lack substantial merit." The Federal Circuit clearly made no finding of fact, since that is not that court's role. It is for this Court, at this stage of the proceedings, to determine whether the undisputed facts establish First Quality's invalidity defense as a matter of law. A careful review of Lindqvist and the evidence before the Court demonstrates that they do not.

According to the report of K-C's expert G.A.M. Butterworth, Lindqvist clearly depicts the use of a compression force, not a shear force, to maintain the fastening tabs in the storage position. "Lindqvist discloses a compression force, which is a pushing force into the material and which is distinct from a shear stress." (Butterworth Decl. ¶ 527, ECF No. 579.) The application of the compression force described in Lindqvist causes the relative displacement of the hooks on the fastener, but it is the displacement of the hooks that is parallel, not the pushing, compressive force

9

being applied that is parallel. By applying a compression force to the hook members, the hook members are caused "to 'jiggle' between the fibres and loops of the surface material and become snagged thereon." (Lindqvist p. 9 lns. 26-27, ECF No. 573-4.) The shear stress in Claim 12, by contrast, is caused by the generation of a force parallel to the surface of the material. Generally, a shear stress would be generated by a force parallel to the material pulling in opposite directions. The construction chosen by the Court in its claim construction ruling was intended to capture the language of the '939 Patent indicating that the stress force could also be generated through pulling or friction on one of the fastening components, as opposed to separate forces pulling in opposite directions. ('939 Patent col. 34 lns. 11-18.) But the construction chosen by the Court should not be understood as broad enough to include displacement of the hook members by a compression force. At the very least, a jury question is raised. For this reason, summary judgment cannot be granted in First Quality's favor on Claim 12.

It also follows then that whether Lindqvist anticipates Claims 13, 19, 29, and 30 is at best a jury question. This follows from the principle noted above that if an independent claim is not anticipated by prior art, then the claims that depend from the independent claim cannot be anticipated as a matter of law. *Corning Glass Works*, 868 F.2d at 1256 n.4. There is therefore no need to discuss First Quality's additional arguments with respect to these claims. In particular, there is no need to consider whether Claim 30 is obvious based on Lindqvist in light of Hermann and Westphal.

**B. The '316 Tucking Patent and Anticipation**

First Quality also argues that the '316 Tucking Patent anticipates Claim 30, as well as Claims 12, 13, 19, and 29 of the '939 Patent. If the '316 Patent is in fact prior art to the '939 Patent, it would seem that First Quality's argument has some merit.

10

The '316 Patent discloses a tucking system that appears virtually identical to the system claimed in the '939 Patent. In fact, as the side-by-side views of Figure 24 from the '939 Patent and Figure 6 of the '316 Patent shown below reveal, they appear to operate in the same way.



(First Quality Br. in Supp. of SJ 26, ECF 538.) K-C argues that the '316 Patent, assuming it is prior art, does not anticipate the '939 Patent because the '316 Patent says nothing about generating a shear stress at the engagement seam. But as First Quality points out, while the '316 Patent may not refer to a shear stress in the engagement seam, the fact that one of its embodiments is functionally identical to an embodiment of the '939 Patent leaves little doubt that it would generate such a stress. K-C's argument raises the question whether the discovery of a new benefit to an old invention can be the basis of a new patent. It would seem that the answer should be no. *See Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005) ("Thus, a prior art reference without express reference to a claim limitation may nonetheless anticipate by inherency."). A preliminary issue of fact makes it unnecessary to determine the issue at this time.

The preliminary question is whether the '316 Patent is prior art to the '939 Patent. Under 35 U.S.C. § 102(e), a person shall be entitled to a patent unless "the invention was described in . . . a

11

patent granted on an application for patent by another filed in the United States before the invention by the application for patent." A prior art reference can anticipate an invention under § 102(e) "only if the reference patent's effective filing date is before the date of invention." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1356 (Fed. Cir. 2010). The '316 Patent's effective filing date is September 28, 2001. Thus, if K-C conceived the claimed invention disclosed in the '939 Patent before the '316 Patent's filing date, September 28, 2001, and reduced the invention to practice, then the '939 Patent cannot be anticipated under § 102(e).

The date of invention is determined by ascertaining the date of conception. *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005) (citing 35 U.S.C. § 102(g)). "'[T]he date of conception of a prior inventor's invention is the date the inventor first appreciated the fact of what he made[]' . . . . In other words, conception requires that the inventor appreciate that which he invented." *Id.* (citation omitted). An idea must be sufficiently definite and permanent for conception. This occurs when "the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Due to the mental component of conception, corroboration is necessary to establish the date of conception. Thus, "objective evidence to corroborate an inventor's testimony concerning his understanding of the invention" is required. *Invitrogen*, 429 F.3d at 1065. "The issue of conception is a question of law based on underlying factual findings." *Spansion*, 629 F.3d at 1356.

To establish the date of conception, K-C has come forward with the declarations of Robert Popp and Tim Dollevoet and supporting documentary evidence from the time of invention. Both Popp and Dollevoet offer testimony that the conception for the shear stress invention occurred in May and June of 2001, prior to the filing date of the '316 Tucking Patent. Popp is one of the

12

inventors of the '939 Patent. ('939 Patent, ECF No. 573-2.) Dollevoet worked with Popp, as well as some of the other named inventors of the '939 Patent, during May and June of 2001. Dollevoet is also one of the named inventors of U.S. Patent No. 6,888,143, the subject of which relates to a method of inspecting the prefastened seam of the garment during production. (Dollevoet Decl. ¶4, ECF No. 583.) K-C highlights drawings contained in the lab notebook of Michael Protheroe, a co-inventor of both the '143 and '939 patents. The drawings are dated from May 29, 2001. (Popp Decl. ¶ 7, ECF No. 582.) The illustrations from the lab notebook show the design of the tensioning member that is disclosed in the '939 Patent and used to generate the shear stress. Popp explains that the tensioning member was used in conjunction with the inspection tool as a means for "spread[ing] out the side panels so that we could inspect them." (*Id.* ¶ 11.) Popp states that with this process of spreading out the side panels for inspection, his team of inventors realized that the "tensioning member could be used during manufacturing to generate a shear stress." (*Id.*) Popp also relates that testing of the tensioning member was done during May and June of 2001. (*Id.* ¶¶ 14-16.) The tucking method of the '939 Patent was also being tested during this time period. (*Id.* ¶ 20.) Dollevoet offers oral corroboration that Popp, Protheroe, and Mr. Vogt, another co-inventor of the '939 Patent, were working on the development of the tensioning member and tucking method used to generate a shear stress. (Dollevoet Decl. ¶¶ 3-4, 9, ECF No. 583.)

      First Quality argues in reply that the court should exclude this evidence of prior conception because K-C failed to disclose the evidence prior to the close of discovery. K-C argues in sur-reply, however, that it did disclose the documents and make the witnesses available to First Quality. First Quality's failure to follow up with the witnesses having knowledge of the facts, K-C contends is its own fault.

13

The record does not support First Quality's request that the evidence of earlier conception be excluded. And the evidence does raise a question of fact whether the '939 Patent has an earlier conception date than the application date of the '316 Patent. The documentary and oral testimony from Popp and Dollevoet present a material issue of fact whether the invention disclosed in the '939 Patent was conceived in May and June of 2001, prior to the filing date of the '316 Patent, and whether the inventors showed "reasonable diligence from [their] conception date through the filing of [their] patent application" to reduce the invention claimed to practice. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). Because there is a material issue of fact as to whether the '316 Tucking Patent qualifies as prior art, summary judgment that the '316 Patent anticipates Claims 12, 13, 19, 29, and 30 of the '939 Patent cannot be granted.

## CONCLUSION

For the reasons discussed First Quality's arguments as to the validity of the '939 Patent cannot be determined as a matter of law. The argument that Lindqvist anticipates Claim 12 at best raises a jury question. And a genuine issue of material fact also exists as to whether the '316 Patent qualifies as prior art under 35 U.S.C. § 102(e). First Quality's motion for summary judgment that the claims at issue are invalid is therefore **DENIED**.

**SO ORDERED** this  27th  day of November, 2012.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court