UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE, INC., and
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

  v.                                          Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

        Defendants.

---

**DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT
ON DETERMINATION CONCERNING PRIOR ART**

---

       Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (K-C) sued Defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC and First Quality Consumer Products, LLC (First Quality) for infringement of various K-C patents related to disposable absorbent training pants and the process used to manufacture and assemble these training pant products. Before me now is K-C's motion for summary judgment (ECF No. 600) on an issue relevant to several of the patents in suit. K-C seeks a determination that two machines allegedly in use in the United States more than a year before the date of application for several of K-C's patents do not constitute prior art under 35 U.S.C. § 102. For the reasons set forth in this opinion, K-C's motion for summary judgment will be denied.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) (citing *Anderson*, 477 U.S. at 252-53). Under the law governing patents, a patent enjoys a presumption of validity which can be overcome only through facts supported by clear and convincing evidence. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563, (Fed. Cir. 1997). Thus, in the context of this case, First Quality bears the burden to show by clear and convincing evidence that the machines on which its invalidity arguments rest are prior art. *SRAM Corp.*, 465 F.3d at 1357. K-C's motion for

2

summary judgment should therefore be granted only if First Quality's evidence is legally insufficient to meet this burden. *Celotex*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## ANALYSIS

**A. Prior Art and the Requirement of Corroborating Evidence**

Section 102 of Title 35 embodies the principle that "a person cannot patent what was already known to others." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). What was already known to others is what the law refers to as prior art. Under 35 U.S.C. § 102(a), an inventor shall be entitled to issuance of a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." Section 102(b) provides that an inventor shall be entitled to issuance of a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent." To be considered prior art, prior use or knowledge must have been public. *Woodland Trust*, 148 F.3d at 1370.

K-C's motion for summary judgment concerns two machines that First Quality contends constitute prior art as to three of the patents in suit. Specifically, First Quality contends that a machine used by Drypers Corporation to manufacture disposable training pants (the Drypers Machine) is prior art as to U.S. Patent No. 6,514,187 ('187 Patent) and U.S. Patent No. 6,776,316

3

('316 Patent). In addition, First Quality asserts that a machine called the Nuova Red Italiana TP 820 Machine (NRI Machine) or, alternatively, a video recording of the NRI Machine in operation, is prior art as to U.S. Patent No. 6,888,143 ('143 Patent). K-C contends that it is entitled to summary judgment holding that neither machine constitutes prior art as to the listed patents because First Quality does not have sufficient evidence to meet its burden to show that the machines were in public use at least one year prior to the respective application dates of the patents. The parties disagree as to the threshold amount of evidence needed to support such a finding. Their dispute is not so much over the burden of proof, but rather the quality and character of the evidence required. K-C argues that oral testimony as to the date of public use is insufficient and that documentary corroboration is essential; First Quality, on the other hand, contends that testimony from "disinterested witnesses" can provide the necessary corroboration and that documentary corroboration is not required. The parties also disagree over when a witness should be considered disinterested.

As the Federal Circuit has repeatedly observed, "the law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999). Over one hundred years ago the Supreme Court noted the danger of invalidating patents based on witness testimony alone:

> In view of the unsatisfactory character of testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not

4

> usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny.

*Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.* (the *Barbed-Wire Patent* case), 143 U.S. 275, 284-85 (1892); *see also Deering v. Winona Harvester Works*, 155 U.S. 286, 300-01 (1894) ("[O]ral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented is, in the nature of the case, open to grave suspicion.").

More recently, the Federal Circuit has noted that in modern times there exists an even stronger reason to require that alleged infringers offer something more than oral testimony to invalidate a lawfully issued patent: "the ubiquitous paper trail of virtually all commercial activity." *Woodland Trust*, 148 F.3d at 1373. "It is rare indeed that some physical record (e.g., a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist." *Id.*; *see also Finnigan*, 180 F.3d at 1366 ("Mere testimony concerning invalidating activities is received with further skepticism because such activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process.").

Because of this concern over the reliability of oral testimony, the general rule is there must be corroborating evidence to support a finding of invalidity. The courts have been less than clear, however, as to how the requirement for corroborating evidence is to be applied. *See* 1-3 CHISUM ON PATENTS § 3.05[2](c)[iii] ("[Federal Circuit's] decisions also apply the corroboration requirement, but they show some inconsistency as to its application."). For instance, is

5

corroboration required in order for the testimony of any witness to support a finding of invalidity, or just interested parties, such as the inventor? What form must the corroborating evidence take? Must it be documentary or physical evidence, or can the requirement be met by oral testimony of other witnesses? Must the corroborating evidence specifically support the key issue, or is it sufficient if it merely provides general support for the witness' testimony? The lack of clarity in the reported cases on these issues counsels caution in deciding a motion for summary judgment seeking a determination that certain machines do not constitute prior art under § 102.

As Judge Ellis of the Eastern District of Virginia has noted, much of the "confusion concerning the corroboration requirement stems from two arguably contradictory decisions." *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 553 (E.D. Va. 2010). The first is *Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172 (Fed. Cir.1999), where the Federal Circuit affirmed a jury verdict, based on the testimony of two putative non-party inventors, that the patent was invalid under 35 U.S.C. § 102(g). In *Thomson*, the defendant argued and the jury found that the patent at issue was invalid because it was anticipated by an unpatented device previously developed by a non-party. *Id.* at 1174. The plaintiff patent-holder argued that the district court had erred in denying its motion for judgment as a matter of law (JMOL) because the jury's finding of invalidity was based upon the testimony of two employees of the non-party company who had worked on the prior art that allegedly anticipated the patent. *Id.* The plaintiff argued that such evidence was insufficient as a matter of law to support a holding of invalidity under subsection 102(g) "because such testimonial evidence by inventors of their prior invention requires corroboration." *Id.* (emphasis removed).

6

In rejecting the plaintiff's argument, the *Thomson* court acknowledged the previous cases expressing skepticism over uncorroborated inventor testimony directed to establishing priority over an opponent's patent claim. But the court suggested that those were cases in which the inventor was "self-interested in the outcome of the trial and is thereby tempted to 'remember' facts favorable to his or her case." *Id.* at 1176. Neither the Federal Circuit, nor the Supreme Court, the *Thomson* court noted, had ever directly held that "the corroboration rule must be applied to testimony by non-party inventors that is directed to establishing their invention as anticipating the claims at issue." *Id.* Extending the rule requiring corroboration beyond inventor parties was unnecessary, the court suggested, because "[t]he clear and convincing standard of proof required to establish priority, along with the numerous methods in the Federal Rules of Civil Procedure and Evidence by which a party may test, challenge, impeach, and rebut oral testimony, normally protects patentees from erroneous findings of invalidity." *Id.* Noting that "the corroboration rule is needed only to counterbalance the self-interest of a testifying inventor against the patentee," *id.*, the court concluded that it did not apply to the testimony of non-inventors, or even that of inventors, assuming they were not interested parties: "We therefore hold that corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue." *Id.* Applying *Thomson*, which has not been overruled, it would seem that no corroboration is required here. None of the witnesses whose testimony First Quality has offered in support of its claim that the two machines constitute prior art are inventors, nor are any of them aligned with inventors.

7

As Judge Ellis observed, however, *Thomson* is difficult to reconcile with *Finnigan*, which was decided by a different panel less than six months later. In *Finnigan*, the Federal Circuit reversed a finding by the International Trade Commission that certain patent claims were invalid as anticipated because their subject matter was disclosed in a previously published article. Although the article did not expressly disclose one of the limitations of the claims, the Commission had relied on the author's testimony to fill the gap and concluded that because his use was sufficiently public, the claims at issue were invalid. *Finnigan*, 180 F.3d at 1360-61. In reversing the invalidity determination, the *Finnigan* court rejected the Commission's argument that the author's testimony did not require corroboration because he was not an interested party. Noting that in the *Barbed-Wire Patent* case the Supreme Court had rejected the uncorroborated testimony of some twenty-four apparently uninterested witnesses, the *Finnigan* court held that "[u]ninterested witnesses are also subject to the corroboration requirement." *Id* at 1367. "[T]he need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (e.g., because that party is the accused infringer) or is uninterested but testifying on behalf of an interested party." *Id.*

The *Finnigan* court acknowledged the holding in *Thomson* that "'corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue.'" *Id.* at 1368 (quoting *Thomson*, 166 F.3d at 1176). The *Finnigan* court noted, however, that *Thomson* "did not involve uncorroborated testimony of a single witness." *Id.* Instead, the evidence supporting anticipation included the live testimony of

8

two people who had worked on the project that was alleged to anticipate, an expert's report and portions of his deposition testimony, the expert's exhibits, and certain documents that the expert had reviewed. *Id.* (citing *Thomson*, 166 F3d at 1174.) Thus, the *Finnigan* court concluded that *Thomson* did not present the question of whether or not corroboration was required, but rather the sufficiency of the corroborating evidence presented, which the court described as "a distinct inquiry involving an assessment of the totality of the circumstances, including consideration of 'the interest of the corroborating witness in the subject matter of the suit.'" *Id.* at 1369 (quoting *Woodland Trust*, 148 F.3d at 1371). *Finnigan* thus read *Thomson* for the proposition that the level of interest of the witness testifying is an important consideration in determining the amount of corroboration required, not for the proposition that only interested witness's testimony requires corroboration. "In any event," the *Finnigan* court concluded, "corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Id.*

In light of *Finnigan* and other more recent decisions by the Federal Circuit, most courts have concluded that the corroboration requirement applies to the testimony of all witnesses, not just that of interested inventors and those with whom their interests are closely aligned. *Netscape Commc'ns*, 704 F. Supp. 2d at 554. But it does not follow that the required corroboration must always take the form of documentary or other physical evidence. It is true that "courts have consistently required documentary corroboration of oral testimony by interested parties presented to invalidate a patent." *Lacks Indust., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003). But documentary corroboration is not essential when the testimony offered is not that of an interested party. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004) ("Both physical evidence and oral testimony of a disinterested

9

party can serve to satisfy the corroboration requirement."); *see also Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001) ("Oral testimony of someone other than the alleged inventor may corroborate an inventor's testimony."); *Engate, Inc. v. Esquire Deposition Servs., L.L.C.*, 331 F. Supp. 2d 673, 685-86 (N.D. Ill. 2004) (rejecting argument that "testimonial evidence from multiple witnesses alone is never sufficient to invalidate a patent").

The Federal Circuit has set out a number of factors that should guide courts in determining whether corroborating evidence is sufficient:

> (1) the relationship between the corroborating witness and the alleged prior user,
> (2) the time period between the event and trial,
> (3) the interest of the corroborating witness in the subject matter in suit,
> (4) contradiction or impeachment of the witness' testimony,
> (5) the extent and details of the corroborating testimony,
> (6) the witness' familiarity with the subject matter of the patented invention and the prior use,
> (7) probability that a prior use could occur considering the state of the art at the time,
> (8) impact of the invention on the industry, and the commercial value of its practice.

*Woodland Trust*, 148 F.3d at 1371. Implicit in this list of factors is the notion that an inventor's testimony may be corroborated by other testimony, and thus that invalidity may be determined even in the absence of documentary evidence. *Netscape Commc'ns*, 704 F. Supp.2d at 554-55.

With these principles in mind, the Court now turns to the two machines at issue.

**B. NRI Machine**

Regarding the NRI Machine, First Quality relies on the testimony of John Tharpe and Bob Herrin to establish the basis for classification as prior art under 35 U.S.C. § 102. Tharpe and Herrin were involved in a collaboration between their company, R&L Engineering, and NRI to

10

develop the NRI Machine in the early 1990's. (Tharpe Report ¶¶ 114-19, ECF No. 703-1; Herrin Decl. ¶ 2, ECF No. 703-10.) Tharpe and Herrin purport to have personal knowledge about the development, commercialization, and promotion of the NRI Machine. (Tharpe Report ¶¶ 19, 114-31, ECF No. 703-1; Herrin Decl. ¶¶ 2-3, ECF No. 703-10.) In addition, Tharpe and Herrin assert that the NRI Machine was publicly displayed, via a videotape, at the INDEX Conference in Geneva, Switzerland in 1993. (Tharpe Report ¶¶ 114, 123-24, ECF No. 703-1; Herrin Decl. ¶¶ 45-49, ECF No. 703-10.) Tharpe asserts as well that the same videotape was shown at the IDEA Conference in Philadelphia, Pennsylvania in 1995. (Tharpe Report ¶¶ 117, 128, ECF No. 703-1.)

The videotape of the NRI Machine is not dated and does not include any narration. (First Quality Resp. SOF ¶ 13, ECF No. 726.) First Quality's primary argument that the videotape of the NRI Machine is prior art to the '143 Patent under § 102 is predicated on the factual evidence of the videotape being publicly displayed at the INDEX and IDEA trade shows. Other than Tharpe's testimony and the video itself, however, First Quality offers no evidence to support its claim that the video was shown or that the machine was used publicly in the United States within the critical time period. Tharpe's uncorroborated testimony is clearly insufficient to establish that fact.

But First Quality also argues that the video itself constitutes a printed publication and the fact that it was shown at the Geneva convention before the critical date is sufficient to invalidate the '143 patent under § 102(b). First Quality does offer some evidence in addition to Tharpe's testimony that the video was shown at the Geneva trade show. This additional evidence includes not only Herrin's testimony, but also:

1. Hotel Confirmation for Tharpe and Herrin related to the INDEX Conference. (Schmidt Decl. Ex. D, ECF. No. 703-4.)
2. Faxed letter, dated January 7, 1993, from NRI to its customers promoting NRI's

11

participation in the INDEX Conference. (*Id.*)
3. Copies of INDEX Conference brochure and floor-map. (*Id.* Ex. C, ECF No. 703-3.)
4. Photographs of Tharpe and NRI personnel at NRI's booth, which includes a video screen.[1] (*Id.* Ex. E, ECF No. 703-5.)
5. An original videotape copy of the NRI Machine promotional video allegedly shown at the INDEX Conference. (*Id.* Exs. B, E, F, ECF Nos. 703-2, 703-5, 703-6.)

First Quality correctly notes that where corroborating documentary evidence is present, the sufficiency of that evidence is evaluated under the "rule of reason test," which is a jury question. *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1368, 1372 (Fed. Cir. 2007). However, where there is an absence of corroborating documentary evidence, then the patent challenger's burden to establish prior art by clear and convincing evidence is insufficient as a matter of law. *Lacks*, 332 F.3d at 1350.

Although K-C argues that First Quality's evidence is insufficient as a matter of law, the Court is unable to agree. The mere fact that Tharpe is an expert for First Quality does not make him an interested party. *See Netscape Commc'ns*, 704 F. Supp. 2d at 556. Herrin has even less involvement. The record does not disclose sufficient facts for the Court to otherwise determine that either has an interest in the case sufficient to require documentary corroboration. Under these circumstances, I am unable to say that Herrin's testimony cannot corroborate Tharpe's. Moreover, First Quality is not relying solely on their oral testimony. First Quality also offers physical evidence in the form of the video and photos, and documentary evidence confirming the attendance by Tharpe and Herrin at the Geneva convention. It is true that First Quality's physical and documentary evidence does not specifically establish when the video was produced and shown, but

---

[1] The video screen that the still photographs show contains an image of some type of video being exhibited. First Quality has not argued that a comparison between the NRI Machine video and the still images on the video screens captured in the photographs can be used for corroboration purposes. After making a comparison, I cannot see any basis for corroboration.

12

unless Tharpe and Herrin would be considered interested parties, it does not appear that greater corroboration is required. *See TypeRight*, 374 F.3d at 1159; *Sandt*, 264 F.3d at 1351; *Engate*, 331 F. Supp. 2d at 685-86. In criminal cases, oral testimony of even one witness has been found sufficient to meet even the beyond a reasonable doubt standard, and absent a clear statement by the Federal Circuit or Supreme Court, I decline to rule First Quality's evidence insufficient as a matter of law to meet the clear and convincing standard, at least at this stage of the proceedings. Accordingly, K-C's motion for summary judgment that the NRI Machine does not constitute prior art will be denied.

**C. Drypers Machine**

The Drypers Corporation was previously involved in manufacturing and selling training pants and diapers. In early 1999, Drypers entered into a Purchase Order Agreement with Fameccanica.Data S.p.A. (Fameccanica) to design and build manufacturing equipment for a line of training pants. (Gardner Expert Report ¶ 92, ECF No. 703-11; Schmidt Decl. Ex. M, ECF No. 703-13.) The Drypers Machine was delivered to Drypers sometime in early 2000. (Gardner Expert Report ¶ 92, ECF No. 703-11; Schmidt Decl. Ex. M, ECF No. 703-13.) Prior to the 1999 agreement to design and build the Drypers Machine, on December 3, 1996, both Drypers and Fameccanica entered into a Mutual Confidential Disclosure Agreement (MCDA). (Flaherty Decl. Ex. J, ECF No. 606-10.) Under the MCDA, disclosure of confidential technical or business information to a "contractor, supplier, or customer" required binding the recipient of the information to confidentiality. (*Id.*) The MCDA was in force for a period of three years and the restrictions on disclosing confidential information extended for an additional two years. (*Id.*) The

13

confidentiality restrictions imposed by the MCDA lasted from December 3, 1996 to December 3, 2001. (*Id.*) The '187 Patent was filed on May 15, 2001 and the '316 Patent was filed on September 28, 2001. (Flaherty Decl. Exs. A & B, ECF Nos. 606-1, 606-2.) Therefore, to constitute prior art, the Drypers Machine must have been in public use before the filing dates of either the '187 Patent or the '316 Patent.

K-C argues that the Drypers Machine is not prior art because it was subject to the MCDA and was therefore secret. Secret use cannot qualify as public use under § 102(a) or (b). *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983). First Quality counters that the 1999 Purchase Order Agreement between Fameccanica and Drypers superceded the MCDA. Under the Purchase Order Agreement, Drypers was only prohibited from disclosure to competitors of Fameccanica, but not to other third parties, such as customers of Drypers. (Schmidt Decl. Ex. P, ECF No. 703-16.) The parties dispute whether the MCDA was superceded by the Purchase Order Agreement. K-C, however, contends that even if the MCDA was superceded, Drypers had an internal confidentiality policy in place, requiring all visitors to sign a non-disclosure agreement. (K-C Reply Br. in Supp. Mot. SJ on Prior Art at 7, ECF No. 769; Flaherty Decl. Ex. N, ECF No. 633-3.) Therefore, K-C contends, the Drypers Machine was not publicly used due to Drypers' own internal confidentiality policy.

First Quality claims, however, that regardless of what various documents may say about the policies or agreements that were in effect, Drypers in fact followed an open door policy with respect to its plants and machines. First Quality's argument is based on the testimony of Alan Clifford and Dan Gardner, two former employees of Drypers. Because Clifford and Gardner are offering testimony on behalf of First Quality, they are subject to the corroboration requirement.

14

*Finnigan*, 180 F.3d at 1367-68. Both Clifford and Gardner offer oral testimony of various tours around mid-2000 that were given to Drypers' customers, staff family members, and the general public. (Gardner Prelim. Inj. Hr'g Tr. 458:25-461:19, Mar. 26, 2010, ECF No. 148; Schmidt Decl. Ex. L, ECF No. 703-12.) Customers that were given tours included Wal-Mart and Kroger. Tours were also given to Ohio State University, the local Chamber of Commerce, and the Russian Rotary Club as well as to family members of staff at an Easter party. (Gardner Prelim. Inj. Hr'g Tr. 459:11-13, ECF No. 148; Schmidt Decl. Ex. L at 27:15-19, ECF No. 703-12.) According to Gardner, none of the tour participants were required to sign Drypers' non-disclosure agreement in accord with its internal confidentiality policy. (Gardner Prelim. Inj. Hr'g Tr. 460:18-20, ECF No. 148.) It is true that the only admissible evidence of these various tours is the oral testimony of Clifford and Gardner.[2] K-C argues that without any documentary evidence corroborating Clifford and Gardner's testimony about Dryper's public use of the Drypers Machine, by way of facility tours to Drypers' customers, staff family members, and the general public, First Quality's evidence is insufficient as a matter of law. *Lacks*, 332 F.3d at 1350. But for the same reasons cited in relation to the NRI Machine, K-C's motion seeking summary judgment will be denied.

Neither Gardner nor Clifford are inventors or interested parties to the action. Indeed, Clifford is retired and has no involvement in the case, as far as the record shows. The documentation offered by First Quality does corroborate the purchase of the machine by Drypers

---

[2] First Quality attempts to offer documentary corroboration of Gardner and Clifford's testimony of Dryper's "open-door policy" through a 1995 article published in the New York Times. (First Quality Br. in Opp'n to SJ on Prior Art at 16-17, ECF No. 725.) This evidence, however, is hearsay and cannot be used for the truth of the matter stated. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (stating that newspaper article is hearsay and such hearsay evidence "is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.").

15

and the installation in the plant under Gardner's supervision. Clifford corroborates Gardner's testimony that various groups were given tours of the machine. Given the lack of clarity in the law, I am unable to conclude as a matter of law at this stage of the proceedings that First Quality's evidence is legally insufficient. Accordingly, K-C's motion for summary judgment that the Drypers Machine is not prior art to the '187 Patent and the '316 Patent will be denied.

## CONCLUSION

In sum, while the evidence of public use is relatively sparse, the oral testimony offered by First Quality has some corroboration. The Court therefore declines to hold that the evidence is insufficient as a matter of law to meet First Quality's burden to show that the NRI and Drypers Machines constitute prior art under § 102. K-C's motion for summary judgment on the matter [600] is therefore **DENIED**.

Dated this __27th__ day of November, 2012.

        s/ William C. Griesbach
        William C. Griesbach, Chief Judge
        United States District Court