UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, INC.,
and KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

v.                                             Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

      Defendants.

**DECISION AND ORDER DENYING [601] SUMMARY JUDGMENT**

Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (K-C) sued Defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC (First Quality) for infringement of various K-C patents related to disposable absorbent training pants and the process used to manufacture and assemble these training pant products. Before me now is K-C's motion for summary judgment (ECF No. 601) that U.S. Patent Nos. 6,513,221 (the '221 Patent) and 6,776,316 (the '316 Patent) are not invalid as obvious in light of K-C's trade secret processes. For the following reasons, K-C's motion will be denied.

**LEGAL STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

Beginning in 1989, K-C manufactured and sold disposable training pants with permanently bonded seams, marketed under its original Huggies Pull-Ups® brand. (K-C Resp. SOF ¶ 1 at 1, ECF No. 746.) K-C sold its original Pull-Ups® training pants until K-C starting marketing a newer version of its Pull-Ups® training pants that featured refastenable side seams. (First Quality Resp. SOF ¶ 1 at 1, ECF No. 719.) K-C kept the processes used to manufacture its original Pull-Ups® training pants with permanently bonded side seams secret, with the exception of those processes K-C sought to patent. First Quality maintains that the trade secret processes used for manufacturing K-C's original Pull-Ups® training pants are prior art under 35 U.S.C. §§ 102 and 103 as to the '221 and '316 Patents. K-C counters that its trade secret processes do not qualify as prior art under § 102(b) because the secret processes were not in "public use" and the processes

2

were not "on sale." Therefore, K-C contends, First Quality cannot establish that the '221 or '316 Patents are invalid under § 103 as obvious in light of the secret processes.

First Quality bears the burden to show by clear and convincing evidence that K-C's secret processes used to manufacture its original Pull-Ups® training pants are prior art as to the '221 and '316 Patents. *See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003). But there is no material dispute between the parties that K-C sold its original Pull-Ups® training pants more than a year prior to the filing dates for both the '221 and '316 Patents[1] and that K-C's secret processes were used to manufacture the original Pull-Ups® training pants. (K-C Resp. SOF ¶ 4 at 3, ECF No. 746.) The dispute is over whether the sale of products made with K-C's trade secret processes can be used in First Quality's obviousness defense.

K-C's argument that its trade secret processes cannot be used in First Quality's obviousness defense is grounded on the plain language of the pertinent statutes. Section 103 states in relevant part:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a). Based on this language, K-C argues that the prior art used in an obviousness analysis consists of the statutory sources of publicly available information identified in Section 102.

---

[1] The '221 Patent was filed on May 15, 2001, and the '316 Patent was filed on September 28, 2001. (ECF Nos. 701-2, 749-1.) Given that K-C began manufacturing and selling its original Pull-Ups® training pants in 1989, it necessarily follows that the one-year prior art time limitation under § 102(b) is satisfied.

3

Section 102(b), which is the part of the statute upon which First Quality relies, includes as unpatentable prior art inventions that have been "in public use" or "on sale" in this country more than a year before the date of application for a patent. 35 U.S.C. § 102(b). K-C concedes that its trade secret processes have been in use for more than a year, but notes that they were not in public use during this time. Instead, they were kept secret. And the processes were not "on sale;" rather the products made by the processes were on sale. Thus, K-C argues, its trade secret processes do not constitute prior art.

K-C acknowledges that in *Metallizing Eng'g Co. Inc. v. Kenyon Bearing & Auto Parts Co.*, Judge Learned Hand held that a patent applicant could not benefit from the secret use of a process and then obtain a patent on the process after the grace period, which was then two years. 153 F.2d 516 (2d Cir.1946). To allow an applicant a patent on a process that he has been commercially exploiting in secret beyond the grace period, Judge Hand concluded, would be inconsistent with the fundamental purpose of patent law. "[I]t is a condition upon an inventor's right to a patent that he shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy, or legal monopoly." *Id.* at 520. Thus, where an inventor chooses secrecy, he forfeits his right to the legal monopoly that a patent affords. *Id.* K-C argues, however, that the holding of *Metallizing* is a "judicial construct," or a "non-statutory bar," and it does not address the issue of obviousness. (K-C Br. In Supp. 6, ECF No. 602.) As such, K-C argues, that holding does not control here.

In further support of its "non-statutory bar" argument, K-C references an article by F. Andrew Ubel. Ubel notes that "the *Metallizing* decision is a non-statutory bar." F. Andrew Ubel, *Who's on First?—The Trade Secret Prior User or a Subsequent Patentee*, 76 J. PAT. &

4

TRADEMARK OFF. SOC'Y 401, 416 n.48 (1994); *see also D.L. Auld Co. v. Chroma Graphics Co.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983) ("The 'forfeiture' theory expressed in Metallizing *parallels the statutory scheme* of 35 U.S.C. § 102(b), the intent of which is to preclude attempts by the inventor or his assignee to profit from commercial use of an invention for more than a year before an application for patent is filed." (emphasis added)). Thus, K-C argues, the cases holding that an inventor who utilizes a secret process to make a product and sells that product "forfeited" their patent protection are based on judge-made law and do not have a statutory basis under § 102.

K-C's argument has some merit. The statutory language on which it relies seems to support its position. But this Court is bound by the Federal Circuit's reading of the statutes, no matter what its own reading of the statutes might be. And even apart from *Metallizing*, the Federal Circuit has read § 102(b) so as to include a patentee's own secret processes used for commercial purposes beyond the grace period as prior art. Indeed, the Federal Circuit has expressly stated: "The public sale of goods produced by a process more than one year before a patent is filed places that process in the § 102(b) prior art." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1344 (Fed. Cir. 2007). Moreover, the Court has held that such "[p]rior art under the § 102(b) on-sale bar is also prior art for the purposes of obviousness under § 103." *Id.*

K-C attempts to distinguish *Dippin' Dots* by arguing that the process in that case was not secret but was practiced in public, and indeed, some of the language in the decision lends support to K-C's argument. *Id.* at 1341 ("Jones testified that at Festival Market he only practiced the first three steps of the claimed method, not the storing, bringing, or serving steps."). But if the process was used in public, as K-C contends, there would have been no need for the Court to focus on the product produced with the process, which it clearly did. To be sure, one would expect a more

5

complete discussion of the issue. But the Court's unequivocal statement that "[t]he public sale of goods produced by a process more than one year before a patent is filed places the process in the § 102(b) prior art," *id.* at 1344, is too clear for this Court to ignore.

First Quality's position also finds support in *Invitrogen Corp. v. Biocrest Manufacturing, L.P.*, 424 F.3d 1374, 1382 (Fed. Cir. 2005). In that case, Invitrogen sued Stratagene for infringement of its patent for a claimed process. *Invitrogen*, 424 F.3d at 1379. Invitrogen did not sell its claimed process or any products made from that process. *Id.* The claimed process was kept secret and the process was known only within the company. *Id.* The district court determined that Invitrogen's internal use of its claimed process for other related projects generated commercial benefits and thus constituted "public use" for purposes of § 102(b). On appeal, Invitrogen argued that its "secret internal use was not 'public use' under the applicable test, because it neither sold nor offered for sale the claimed process or any product derived from the process, nor did it otherwise place into the public domain either the process or any product derived from it." *Id.*

The Federal Circuit agreed with Invitrogen, announcing a series of principles that are equally relevant here. The Court held that an inventor's own work cannot be used to invalidate his own patent unless the inventor places his work on sale or in public use more than a year before filing for patent protection. *Id.* at 1381 (citing 35 U.S.C. § 102(b)); *see also In re Facius*, 408 F.2d 1396, 1406 (1969) ("[O]ne's own invention, whatever form of disclosure to the public, may not be prior art against oneself, absent a statutory bar"). However, a secret use may be public "within the meaning of [§ 102(b)] if the inventor is making commercial use of the invention under circumstances which preserve its secrecy." *TP Laboratories, Inc. v. Prof'l Positioners, Inc.*, 724

6

F.2d 965, 972 (Fed. Cir. 1984); *see also Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 390 (Fed. Cir. 1984) ("A commercial use is a public use even if it is kept secret.").

The Court in *Invitrogen* noted that the principle explained by *TP Laboratories* and *Kinzenbaw* was *dicta*, but went on to add that "[a] careful reading nonetheless shows that *Kinzenbaw* [and *TP Laboratories*] is consistent with the basic principle that a confidential use is not public under § 102(b) unless there is commercial exploitation." *Invitrogen*, 424 F.3d at 1381 n.\*. The basic principle is that "secrecy of use alone is not sufficient to show that existing knowledge has not been withdrawn from public use: commercial exploitation is also forbidden." *Id.* at 1382. The *Invitrogen* court continued, stating that "'[t]he ordinary use of a machine or the practice of a process in a factory in the usual course of producing articles for commercial purposes is a public use.'" *Id.* (quoting *Elec. Storage Battery Co. v. Shimadzu*, 307 U.S. 5, 20 (1939)). Unlike the facts of *Invitrogen*, where Invitrogen did not sell its process invention or any products made from that process and kept the invention entirely secret, K-C's extensive commercial exploitation of the claimed secret manufacturing processes to produce its original Pull-Ups® training pant directly implicates the statutory "public use" bar of § 102(b). The fact that *Invitrogen* concerned anticipation under § 102(b), as opposed to obviousness under § 103, does not alter the result, for it is the Court's construction of § 102(b) that is relevant.

In sum, because K-C's public use falls under § 102(b), First Quality may utilize K-C's secret manufacturing processes as prior art under § 103 for purposes of obviousness.[2]

---

[2] K-C argues that the underlying policy as expressed by Judge Hand in *Metallizing* has been "rejected" by Congress in the Leahy-Smith America Invents Act. (K-C Br. in Supp. 8-9, ECF No. 602.) This rejection by Congress of the principle expressed in *Metallizing*, K-C contends, is carried out in redefined definitions of prior art under the updated version of § 102. These arguments are inapposite as the updated version of § 102 does not become effective until 18 months after the Act's

7

Consequently, K-C's motion for summary judgment that the '221 and '316 Patents are not invalid as obvious in light of K-C's trade secret processes (ECF No. 601) is **DENIED**.

**SO ORDERED** this   27th   day of November, 2012.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

---

effective date, September 16, 2012.  Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(b)(1), (n), 125 Stat. 285, 293 (2011).