# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, INC. and
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

    v.                                      Case No. 09-C-0916

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

        Defendants.

**DECISION AND ORDER GRANTING K-C'S MOTIONS FOR SUMMARY
JUDGMENT ON FIRST QUALITY'S INEQUITABLE CONDUCT AND UNCLEAN
HANDS DEFENSES & K-C'S CLAIM FOR INFRINGEMENT OF '187 PATENT**

Plaintiffs Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC (K-C)

sued Defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First

Quality Consumer Products, LLC (First Quality) for infringement of various K-C patents related

to disposable training pants with refastenable side seams and the process used to manufacture and

assemble them. Among the patents K-C claims First Quality infringes is U.S. Patent No. 6,514,187

('187 Patent), which discloses a method of folding disposable training pants and similar garments

with fastening components as part of the manufacturing/assembly process. Among the defenses

asserted by First Quality was the claim that the '187 Patent was unenforceable because of K-C's

inequitable conduct and unclean hands. K-C has now moved for summary judgment on the ground

that First Quality's evidence is insufficient as a matter of law to support either defense. (ECF No.

607.) In a separate motion, K-C also seeks summary judgment on its claim that First Quality's

original manufacturing process infringes the '187 Patent. (ECF No. 608.) For the following reasons, K-C's motions will be granted.

## BACKGROUND

K-C accuses First Quality of infringing Claims 1 and 3-5 of its '187 Patent. First Quality denied that its process infringes, but First Quality's primary defense is that the claims are unenforceable because of K-C's inequitable conduct in the prosecution of the '187 Patent and its unclean hands in this litigation. In particular, First Quality claims that Claims 6, 10, and 12 of the '187 Patent are invalid as obvious under 35 U.S.C. §103 in view of a machine K-C had been using to manufacture its original Pull-Ups® brand disposable training pants ("the K-C Machine") in light of the prior art reference Bradley and the well-known refastenable training pants available at the time the application for the '187 Patent was filed. First Quality additionally maintains that Robert Popp, one of the claimed inventors of the '187 Patent, and Thomas Gage, a K-C patent attorney, knew that the K-C Machine was prior art and knew that the K-C Machine was material to the application for the '187 Patent. First Quality argues that they therefore had a duty to disclose the K-C Machine to the Patent Trademark Office (PTO). Because they failed to do so, First Quality contends that the '187 Patent cannot be enforced due to inequitable conduct.

**A. '187 Patent Prosecution History**

The '187 Patent was filed on May 15, 2001 and issued on February 4, 2003. The subject matter of the '187 Patent relates to K-C's process for folding a disposable refastenable training pant garment. The named inventors of the '187 Patent include Robert Popp, as well as Coenen, Csida, and Krupka. (Decl. of T. Wickham Schmidt, Ex 1 ('187 Patent), ECF No. 688-1.) Prior to

development of K-C's refastenable training pant, K-C developed and marketed a disposable

garment, featuring seams on the side panels that were permanently bonded. K-C developed the K-C

Machine to manufacture its training pant with permanently bonded seams. The refastenable side

seam feature of K-C's new training pant product, however, and the need to fasten the seams during

the manufacturing process required modifications in the manufacturing process. The K-C Machine

did not have the capacity to maintain the control of the side panels needed to keep them separate

and then bring the fastening components into alignment at the proper time so as to join them during

the high-speed manufacturing process. The '187 Patent claimed a novel method of accomplishing

this task by folding the refastenable training pants using vacuum rolls to form a folding nip,

followed by a separation member to control and maintain separation of the fastening components

until engagement.

During prosecution of the '187 Patent application, none of the claims were rejected or

amended. (First Quality Resp. SOF ¶ 7, ECF No. 730.) The patent examiner issued a "Notice of

Allowability" on October 28, 2002, stating that the '187 Patent claims were novel and nonobvious

on the grounds that the prior art did not disclose "the claimed method and apparatus for folding

pants," noting in particular the method use of "separation members." (Becker Decl., Ex. B at 109,

ECF No. 621-2.) Claims 1-5, 7, 8, and 13-25 of the '187 Patent all include a "separation member"

limitation. However, Claims 6 and 9-12 do not include the "separation member" limitation.

Instead, these claims recite the use of a "folding nip comprising first and second vacuum rolls."

('187 Patent, ECF No. 621-1.) The vacuum rolls are used to keep the side panels separate while the

crotch portion of the pant moved into the folding nip and until the "pant was downstream of the

folding nip." (Gardner Decl. ¶¶ 20, 23, ECF No. 267.)

3

It appears that Popp used the K-C Machine during development of the methods that were later memorialized in the '187 Patent. First Quality does not argue, nor is there a basis for the argument, that the K-C Machine anticipates any of the claims of the '187 Patent. However, First Quality has come forward with evidence establishing that 1) Popp knew about the K-C Machine and used it during development of the claimed process for the '187 Patent, 2) Popp knew that the machine constituted prior art, 3) Popp disclosed the machine to K-C's attorney, Gage, and 4) the K-C Machine was not disclosed to the USPTO during prosecution.

## B. Prior Art References

First Quality argues that the K-C Machine constitutes relevant prior art to the '187 Patent because Claims 6, 10, and 12 of the '187 Patent are obvious under 35 U.S.C. § 103 in light of the K-C Machine, U.S. Patent No. 3,870,292 (Bradley), and the well-known concept of refastenable training pants. (First Quality Br. in Opp'n to SJ 4, ECF No. 723.) The K-C Machine did not utilize vacuum rolls for the folding nip. However, the Bradley reference discloses the use of a "folding nip formed between a 'first folding roll 20' and a 'second folding-roll 27,' both of which are under vacuum." (Gardner Decl. ¶ 13 (citing Bradley Patent, col. 2 l. 37 to col. 3, l. 25, col. 5, lns. 4-15 & figs. 3-5), ECF No. 267.) Neither the K-C Machine nor the Bradley reference disclose a method to manufacture a refastenable article. But the parties do agree that the concept of refastenable training pants was known in 1999. (K-C Resp. SOF ¶ 61, ECF No. 765.) Furthermore, as noted in my decision regarding K-C's '067 Patent, refastenable training pants were obvious in view of the prior art. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, _ _ F. Supp 2d _ _, 2012 WL 4515117, at *14 (E.D. Wis. Sept. 29, 2012). Thus, not only was the concept of

4

refastenable pants known in 1999, but the refastenable training pant product was obvious in view of the prior art as well.

## STANDARD OF REVIEW

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### A. Inequitable Conduct

The standard of proof for the defense of inequitable conduct has been tightened by the Federal Circuit in the case of *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290

5

(Fed. Cir. 2011) (*en banc*) ("This court now tightens the standards for finding both intent and materiality"). In order to prevail on a defense of inequitable conduct, the accused infringer must demonstrate intent and materiality by clear and convincing evidence. *Id.* at 1287. The evidence offered to establish intent to deceive must be weighed independently of the court's analysis of materiality. *Id.* at 1290. Proof "that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* Finally, because relief based on inequitable conduct is equitable in nature, there is no right to a jury and "the trial court has the obligation to resolve the underlying facts of materiality and intent." *American Calcar, Inc. v. American Honda Motor Co., Inc.*, 651 F.3d 1318, 1334-35 (Fed. Cir. 2011).

In regard to the intent element for inequitable conduct, the accused infringer must prove that the patentee "acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Thus, evidence establishing a non-disclosure of a prior art reference to the PTO amounting to mere negligence or gross negligence under a "should have known" standard is insufficient to prove specific intent to deceive. *Id.* In particular, where, as here, the accused infringer attempts to prove inequitable conduct on the basis of a non-disclosure, the infringer must establish by clear and convincing evidence that "'the applicant *made a deliberate decision* to withhold a *known* material reference.'" *Id.* (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)) (emphasis in original). The accused infringer must then prove that the applicant for patent 1) knew of the prior art reference, 2) knew the reference was material, and 3) made a deliberate decision to withhold the reference from the PTO. *Id.* Proof of specific intent to deceive may be established by

6

indirect and circumstantial evidence; however, the inference of an intent to deceive must be the "single most reasonable inference able to be drawn from the evidence." *Star Scientific*, 537 F.3d at 1366. Where there are multiple reasonable inferences to be drawn from the evidence, a specific intent to deceive will not satisfy the clear and convincing burden of proof as a matter of law. *See Therasense*, 649 F.3d at 1290-91 (citing *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008)).

First Quality maintains that the oral testimony by Popp and Gage is sufficient to support a finding of a specific intent to deceive. First Quality points out that Popp stated that he had a duty "to provide my attorney any information that we had on – that we had on equipment to do folding." (Popp Dep. 277:7–13, ECF No. 724-1.) Popp knew about the K-C Machine at the time K-C submitted its application for the '187 Patent. In addition, First Quality highlights a portion of K-C's general manager Robert Thibault's testimony during the preliminary injunction hearing that supports a finding that Popp and his co-inventors used the K-C Machine to develop the '187 Patent. (TRO Hr'g Tr. 68:8–69:2, ECF No. 94.) Popp also testified that he submitted information of K-C's machines to Gage prior to K-C's filing of the application for the '187 Patent.[1] (TRO Hr'g Tr. 107:14–109:6, ECF No. 270.) Gage indicated as well that "it would have been [his] practice to have made it clear to the inventors that prior art includes prior machinery and processes used by Kimberly-Clark." (Gage Dep. 102:7–103:2, 121:3–14, ECF No. 724-2.) Finally, Gage stated that it was not his practice to withhold a prior art reference from the PTO on the basis that it was not material. (*Id.* 103:3–104:1, 106:17–108:1.)

---

[1] It is not clear whether Popp included information on the K-C Machine within the general information on K-C's machines that he disclosed to Gage.

7

From these portions of oral testimony, First Quality argues that there is sufficient evidence that K-C knew about the K-C Machine and knew that it was material because the machine was used in the development of the '187 Patent. Furthermore, since the K-C Machine was disclosed to Gage and Gage did not disclose the machine to the PTO, then the only reasonable inference that can be drawn is that Gage deliberately withheld the reference from the PTO. (First Quality Br. in Opp'n to SJ 15, ECF No. 723.)

First Quality's showing is far short of what is required under the tightened standards of *Therasense*. While there is no doubt that Popp knew of the K-C Machine, there is none that either Popp or Gage knew that it constituted prior art or that it was material, let alone that either withheld it with the intent to deceive the PTO. Obviously Popp knew of the K-C Machine, since he and his team apparently used it as a kind of starting point as they endeavored to design a machine capable of manufacturing training pants with refastenable seams. The fact that they may have started there, however, does not make it material prior art. Indeed, one of the many motions before the court addresses the legal question of whether the K-C Machine even constitutes prior art under § 102 in light of the fact that K-C maintained it as a trade secret. (ECF No. 601.) Although K-C did not prevail on its argument that the machine was not prior art, its argument to the contrary was not frivolous.

It is also doubtful that the K-C Machine meets the materiality requirement of *Therasense*. The K-C Machine clearly lacked the capacity to accomplish the very tasks that Popp and his colleagues saw as essential if K-C's desire to make a refastenable training pant was to be a commercial success. To establish inequitable conduct, First Quality must show "but for materiality," meaning that had the PTO been aware of the reference, it would have disallowed the

8

claims. *Therasense*, 649 F.3d at 1291. First Quality's own materiality argument is based on pre-*Therasense* cases that have only limited applicability. And its own expert's report (as opposed to an earlier declaration) contains no opinion that the pertinent claims of the '187 Patent would have been obvious in light of the K-C Machine and the prior art. (Compare Gardner Report ¶ 355, ECF No. 634-5 with Gardner Decl. ¶¶ 17-26, ECF No. 267.) Certainly, the mere fact that refastenable training pants were known in the prior art would have had little bearing on whether a process to manufacture and assemble them at commercial speeds would be obvious.

Regardless of whether the K-C Machine meets the materiality requirement, however, First Quality's evidence is wholly insufficient to establish an intent to deceive by Popp or Gage. For the reasons already noted, it is certainly plausible that neither would have viewed the K-C Machine as material prior art. They could have also concluded that the process used in the K-C Machine was adequately disclosed to the PTO with the reference to Van Gompel. Finally, it is possible that even if Popp intended to disclose it, Gage simply neglected to follow his standard practice of disclosure.

These alternative explanations do not rule out the possibility that Popp and/or Gage failed to disclose the K-C Machine with intent to deceive the PTO, but it is First Quality's burden to prove inequitable conduct by clear and convincing evidence. First Quality offers no evidence that even comes close to meeting this burden. The lack of recollection on the part of Popp and Gage is not surprising in light of the amount of time that has passed. As a result, we are only left with vague generalities about disclosure practices and a lack of specifics due to a dearth of recall about the disclosures made concerning the K-C Machine. The Federal Circuit has made clear, however, that possibilities and innuendo are not enough. Parties alleging inequitable conduct carry a heightened burden to prove inequitable conduct by clear and convincing evidence. Here, at most, First Quality

9

raises an inference that, had the machine been disclosed by Popp to Gage, Gage was negligent in failing to disclose the machine to the PTO. Without additional evidence establishing that Gage had a specific intent to deliberately deceive the PTO, however, First Quality cannot sustain its burden of proof beyond showing that Gage was arguably grossly negligent in not disclosing the K-C Machine to the PTO. *Therasense*, 649 F.3d at 1290 ("[F]inding that . . . [an] omission amounts to gross negligence or negligence . . . does not satisfy th[e] intent requirement." (citing *Kingsdown*, 863 F.2d at 876)). Because First Quality does not establish evidence sufficient to prove by clear and convincing evidence that K-C intended to deceive the PTO when it applied for the '187 Patent, First Quality's defense of inequitable conduct fails as a matter of law.[2]

**B.  Unclean Hands**

First Quality's argument in support of its defense of unclean hands is primarily grounded in an alleged systematic abuse of discovery by K-C to avoid the disclosure of the K-C Machine. (First Quality Br. in Opp'n to SJ 21 ("First Quality's unclean hands assertion is based on K-C's conduct in discovery, not its conduct at the [PTO]."), ECF No. 723.)  K-C responds that First Quality does not cite any case law where a court found an abuse of discovery a sufficient basis for an unclean hands defense. (K-C Reply Br. in Supp. of SJ 12, ECF No. 763.)  The Supreme Court trilogy of cases, on which the unclean hands doctrine is based, all focused on pre-litigation conduct by patentees aimed at defrauding the PTO and the courts. *See generally Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933) (manufacture and suppression of evidence); *Hazel-*

---

[2] Since First Quality cannot meet its burden of proof on the intent element, I do not reach the issue of whether the K-C Machine is but-for material. However, I assume *arguendo,* for the purposes of analysis of the intent element for inequitable conduct only, that the machine is material.

Case 1:09-cv-00916-WCG   Filed 11/27/12   Page 10 of 16   Document 811

*Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (manufacture and suppression of evidence); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) (suppression of evidence before PTO).

I noted before in an order denying K-C's motion to strike (ECF No. 213 at 2) that the Federal Circuit suggested that the doctrine of inequitable conduct is simply a narrower form of the unclean hands doctrine. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) ("Indeed, what we have termed 'inequitable conduct' is no more than the unclean hands doctrine applied to *particular conduct* before the PTO." (emphasis added)). "Remedies are available under the unclean hands doctrine if 'some *unconscionable act* of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'" *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1017 (N.D. Cal. 2004) (quoting *Keystone*, 290 U.S. at 245) (emphasis in original). The doctrine of unclean hands could arguably be established based on conduct limited to a fraud on the courts, but absent in front of the PTO. Unclean hands often is based on a finding of particularly egregious misconduct, such as suppression of evidence. *See Therasense*, 649 F.3d at 1287.

First Quality cannot establish that K-C engaged in particularly egregious misconduct amounting to a suppression of evidence of the K-C Machine. Rather, here it appears that First Quality is attempting to turn a discovery dispute into a basis for the drastic remedy of dismissal of the entire suit. *See id.* (noting that the remedy for unclean hands is the "dismissal of the instant suit"). In this case, K-C disclosed the existence of the K-C Machine prior to the close of fact discovery, which closed on June 17, 2011. First Quality argues that K-C engaged in "egregious misconduct" by not disclosing evidence that the K-C Machine was prior art sooner. K-C originally

11

disclosed drawings of the machine that were dated after May 16, 1999. (K-C Resp. SOF ¶ 106, ECF No. 765.) In other words, the drawings did not constitute prior art because they post-dated the filing date of the '187 Patent, which was May 15, 1999. K-C eventually disclosed, on September 30, 2010, drawings of the machine that predated the '187 Patent filing date. (*Id.* ¶ 109.) Belated disclosure of documents prior to the close of discovery can hardly be described as a systematic suppression of evidence amounting to particularly egregious misconduct that warrants a dismissal of the entire suit. Therefore, First Quality's assertion of unclean hands necessarily fails on the merits.

## C. Infringement of Claims 1, 3, 4, and 5 of the '187 Patent

An infringement analysis involves two steps: (1) construing the patent's claims and (2) comparing the claims to the accused device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). The application of the construed claims to the accused device is a question of fact. *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007). For there to be literal infringement, there must be a determination that "every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'" *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, then it does not infringe its dependent claims. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir.

12

1989). The plaintiff, K-C, bears the burden of proving infringement by a preponderance of the evidence. *Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997).

K-C's motion for summary judgment of infringement is limited to First Quality's original process, which was enjoined by this Court on May 20, 2010. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 714 F. Supp. 2d 919 (E.D. Wis. 2010), vacated, 431 Fed. Appx. 884, 895 (Fed. Cir. 2011) (vacating grant of preliminary injunction for Claims 1 and 3-5 of the '187 Patent).[3] K-C lists several reasons why its motion should be granted. First, K-C's expert Don Sheldon has submitted his opinion that First Quality's original process infringes on Claims 1 and 3-5 of the '187 Patent. (Sheldon Report ¶¶ 128-69, ECF No. 642.) Second, First Quality has not argued or submitted any evidence that its original process does not infringe on the asserted patent claims. Third, First Quality has not submitted any evidence rebutting Sheldon's opinion that the original process infringes the '187 Patent. Finally, K-C contends that First Quality's expert admitted that First Quality's original process meets all the disputed claim limitations of the '187 Patent. Thus, because First Quality has not presented any genuine issue of fact that its original process does not infringe on Claims 1 and 3-5 of the '187 Patent, K-C maintains that summary judgment must be granted in its favor.

First Quality's expert Dan Gardner indicated in his expert report that the original process did not infringe on Claims 1 and 3-5 because those claims are invalid. (Gardner Report ¶ 196, ECF No. 688-2.) But invalidity is a separate issue than infringement. Gardner also stated that Claims 6-7, 9-10, and 12 of the '187 Patent were not infringed by the original process. (*Id.* ¶¶ 197-98.) But

---

[3] First Quality later, after the Court enjoined it from using the original process, modified the original process. First Quality's modification is referred to herein as the "modified process."

13

Gardner offered no opinion regarding whether the original process infringed Claims 1 and 3-5 of the '187 Patent. (*See* First Quality Resp. SOF ¶ 5, ECF No. 695.) Indeed, Gardner agreed with Sheldon's report that in both of First Quality's original and modified process, the "vacuum rolls that form the folding nip are part of the Upper and Lower Triangular Vacuum Conveyors." (Gardner Report ¶ 104, ECF No. 688-2; *see also* Sheldon Report ¶ 116, ECF No. 642.)

First Quality argues that K-C has changed its theory of what constitutes the "first and second transport devices," a key limitation of Claims 1 and 3-5. In consequence, First Quality contends that a jury could now find the vacuum rolls that are part of the upper and lower triangular vacuum conveyors are not "operatively associated" with the devices that "K-C now contends are the 'first and second transport devices.'" (First Quality Br. in Opp'n to SJ 1, ECF No. 694.) But K-C has not changed its construction of the claims it accuses First Quality of infringing. It simply provided an explanation of how First Quality's modified process also infringes.

The primary difference between the original and modified process is that in the original process, separation plates were interposed between the triangular shaped vacuum conveyors whereas in the modified process, the separation plates were interposed past the triangular conveyers between the chassis conveyors. (Sheldon Report ¶ 120 ("First Quality's Modified Process used separation plates that were shorter than the separation plates used in the Original Process."), ECF No. 642.) Hence, K-C offered a theory as to why the modified process also infringed the '187 Patent claims. This, however, does not change K-C's theory as to why the original process is infringed. The original and modified process are not, in a literal sense, the same machine. K-C's infringement analysis will necessarily change with the modifications introduced in the new process as compared to the old process. In fact, First Quality readily acknowledges in its brief that the two processes are

14

"quite different." (First Quality Br. in Opp'n to SJ 7, ECF No. 694.) K-C's theory of infringement regarding First Quality's modified process is not relevant to K-C's theory and expert opinions regarding the original process.

While it is true that First Quality is not required to provide expert testimony that disproves non-infringement, First Quality has not come forward with any evidence or arguments (aside from K-C's shifting theories argument) to support its defense that Claims 1 and 3-5 are not infringed. K-C's expert Sheldon outlined in his report his opinion that First Quality's original process infringed Claims 1 and 3-5 of the '187 Patent (Sheldon Report ¶¶ 128-69, ECF No. 642), which is not disputed by First Quality's expert. First Quality only disputes whether the inclusion of the chassis conveyors with the upper and lower triangular vacuum conveyors of the original process meets the claim limitation of the "first and second transport devices." (*See* First Quality Resp. SOF ¶¶ 7-41, ECF No. 695.) However, K-C's expert Sheldon does not assert that the chassis conveyors constitute a part of the "first and second transport devices" in the original process, but rather makes this argument in support of his opinion regarding First Quality's modified process. (*See* Sheldon Report ¶¶ 128-69, ECF No. 642.)

For the foregoing reasons, the Court concludes that there is no genuine issue of fact and no need to go to trial on the issue of infringement in regard to First Quality's original process. K-C's motion for summary judgment that Claims 1 and 3-5 of the '187 Patent are infringed by First Quality's original process is granted.

## CONCLUSION

For the reasons stated above, K-C's motion for summary judgment (ECF No. 607) that First Quality's defenses of inequitable conduct and unclean hands fail as a matter of law is **GRANTED**.

In addition, K-C's motion for summary judgment (ECF No. 608) that Claims 1 and 3-5 of the '187 Patent are infringed by First Quality's original process is **GRANTED**.

 **SO ORDERED** this  27th  day of November, 2012.


                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court

16